FILED
CLERK, U.S. DISTRICT COURT
06/12/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: AP DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

BABAK BROUMAND,

Defendant.

CR No. 2:20-cr-00224-AB

I N D I C T M E N T

[18 U.S.C. § 371: Conspiracy to Commit Bribery of a Public Official; 18 U.S.C. § 201(b)(2)(C): Bribery of a Public Official; 18 U.S.C. § 1957(a): Monetary Transactions in Property Derived from Specified Unlawful Activity]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant BABAK BROUMAND was a Special Agent of the Federal Bureau of Investigation, an agency within the executive branch of the United States government.

2. Defendant BROUMAND became an FBI agent in January 1999 and was responsible for national security investigations. Defendant BROUMAND's responsibilities included recruiting human intelligence sources for the FBI. As an FBI agent, defendant BROUMAND had access to non-public law enforcement databases, which, pursuant to

government regulations, were only to be used to conduct legitimate law enforcement investigations. As a Special Agent with the FBI, defendant BROUMAND was a public official.

3. Love Bugs, LLC, was a lice-removal hair salon business started in 2007 by defendant BROUMAND and his wife, which operated in the Northern District of California.

4. Individual A was an individual engaged in criminal conduct and associated with an organized crime organization. Among other corporations and entities, Individual A had access to and/or control over bank accounts in the name of Andor'e and ARCA Capital.

5. These Introductory Allegations are incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

A. OBJECT OF CONSPIRACY

6. Beginning in about January 2015 and continuing to at least December 18, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND conspired with Individual A and others known and unknown to the Grand Jury to commit bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(2)(C).

B. MANNER AND MEANS OF THE CONSPIRACY

7. The object of the conspiracy was carried out as follows:

a. Individual A would offer and provide to defendant BROUMAND and defendant BROUMAND would accept and receive from Individual A cash, checks, private jet flights, a motorcycle, hotel stays, escorts, meals, and other items of value.

b. In return for the payments and other items of value, defendant BROUMAND would conduct and would agree to conduct law enforcement database inquiries and would use results of those inquiries to inform Individual A of whether a particular person or entity was under investigation by stating that Individual A should "stay away" from that person or that they were "ok."

c. In order to conceal the true nature of their corrupt relationship, defendant BROUMAND and Individual A would agree to make it falsely appear as if Individual A was working or attempting to work as an FBI source.

d. Defendant BROUMAND would contact other FBI Special Agents to make it falsely appear that Individual A was a source or potential source.

e. Defendant BROUMAND would write reports after the fact to make it falsely appear he had not improperly conducted law enforcement database inquiries.

f. By means of the above-described conduct, defendant BROUMAND received payments from Individual A totaling at least approximately $150,000, plus a 2015 Ducati Panigale Motorcycle and accessories valued at approximately $36,100.

C. OVERT ACTS

8. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant BROUMAND and co-conspirator Individual A committed, and caused others to commit, the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1: On January 8, 2015, defendant BROUMAND searched the names of individuals and entities that were then associated with Individual A, including "termendzhyan," "noil energy group," "pillar law," "sargsyan," "edgar sargsyan," "k.," "b.k.," "s.k.," and "sbk" holding in a law enforcement database.

Overt Act No. 2: On or after January 8, 2015, defendant BROUMAND told Individual A that Individual A had been under FBI investigation for credit card fraud.

Overt Act No. 3: On or about January 9, 2015, after speaking with Individual A the previous day, defendant BROUMAND searched and accessed the Termendzhyan FBI Los Angeles case file in a law enforcement database. The file indicated there was then an active federal criminal investigation of Levon Termendzhyan.

Overt Act No. 4: On or about January 9, 2015, defendant BROUMAND drafted an FBI electronic communication titled "Source

Reporting on Levon Termendzhyan" regarding Turkey purchasing oil from Noil Energy Group, which was Termendzhyan's company.

Overt Act No. 5: On or about January 12, 2015, defendant BROUMAND accessed the Termendzhyan FBI case file in a law enforcement database.

Overt Act No. 6: On or about January 26, 2015, defendant BROUMAND accessed the Termendzhyan FBI case file in a law enforcement database.

Overt Act No. 7: On January 30, 2015 defendant BROUMAND traveled to Los Angeles to meet with an FBI Special Agent and to meet with Individual A.

Overt Act No. 8: On February 17, 2015, defendant BROUMAND deposited $5,000 cash into the Love Bugs LLC bank account (Chase 8236) (the "Love Bugs account").

Overt Act No. 9: On April 27, 2015, defendant BROUMAND deposited $14,000 cash into a Wells Fargo bank account in his and his wife's name.

Overt Act No. 10: On or about April 29, 2015, Individual A purchased for defendant BROUMAND a 2015 Ducati Panigale motorcycle and accessories for $36,100.

Overt Act No. 11: On or about September 21, 2015, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

Overt Act No. 12: On or about September 24, 2015, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

Overt Act No. 13: On or about September 25, 2015, defendant BROUMAND deposited $9,000 in cash into the Love Bugs account.

<u>Overt Act No. 14:</u> On or about September 30, 2015, Individual A gave defendant BROUMAND a $30,000 cashier's check from Andor'e (#0081403081) made payable to "Love Bugs."

<u>Overt Act No. 15:</u> On or about October 21, 2015, defendant BROUMAND submitted to a mortgage company a false bill of sale, dated September 30, 2015, intending to falsely reflect that he sold a 1991 Sea Ray boat to Individual A for $30,000.

<u>Overt Act No. 16:</u> On or about December 7, 2015, defendant BROUMAND searched the name of an individual with the initials of C.P. in a law enforcement database.

<u>Overt Act No. 17:</u> On or after December 7, 2015, defendant BROUMAND told Individual A that C.P. "was okay," meaning that C.P. was not then under law enforcement investigation.

<u>Overt Act No. 18:</u> On or about December 8, 2015, defendant BROUMAND searched the names "solakyan" and "sam solakyan" in a law enforcement database.

<u>Overt Act No. 19:</u> On or after December 8, 2015, defendant BROUMAND told Individual A to "stay away" from Sam Solakyan and that he was "trouble," meaning that Solakyan was then under law enforcement investigation.

<u>Overt Act No. 20:</u> On or about January 28, 2016, defendant BROUMAND deposited $5,500 in cash into the Love Bugs account.

<u>Overt Act No. 21:</u> On or before February 27, 2016, defendant BROUMAND traveled to Los Angeles to meet with Individual A and gave Individual A an FBI parking placard to use for his own purposes. The FBI placard provided its user certain law enforcement privileges and was intended for legitimate law enforcement only.

Overt Act No. 22: On or after February 27, 2016, defendant BROUMAND and Individual A agreed that if their relationship was ever questioned by law enforcement, they would falsely say that Individual A was providing "intelligence" information to defendant BROUMAND.

Overt Act No. 23: On or after February 27, 2016, defendant BROUMAND falsely told his FBI supervisor that he was visiting with a friend who introduced him to Individual A and that he was using his friend to develop potential sources.

Overt Act No. 24: On or about February 29, 2016, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

Overt Act No. 25: On or about March 8, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

Overt Act No. 26: On or about March 17, 2016, defendant BROUMAND deposited $4,000 in cash into the Love Bugs account.

Overt Act No. 27: On or before March 21, 2016, defendant BROUMAND solicited a $30,000 check from Individual A, which he later received and caused to be deposited in his parents' bank account.

Overt Act No. 28: On or about April 18, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

Overt Act No. 29: On or about April 21, 2016, defendant BROUMAND caused a wire transfer of $29,300 from his parents' Bank of America account to the Love Bugs account.

Overt Act No. 30: On or about April 25, 2016, defendant BROUMAND intentionally omitted from his FBI Security Financial Disclosure Form for calendar year 2015 that he received the 2015 Ducati Panigale, a $30,000 cashier's check, and cash from Individual A.

Overt Act No. 31: On or about April 28, 2016, defendant BROUMAND and Individual A exchanged text messages about a "marriage certificate," which was a coded reference to a plan to falsely represent that Individual A was an FBI source.

Overt Act No. 32: On or about May 23, 2016, defendant BROUMAND searched the names "b.k.," "noil energy," "noil energy group," "y.," "y.s.," and "y.k." in a law enforcement database.

Overt Act No. 33: On or about May 24, 2016, defendant BROUMAND searched the names "noil energy," "felix Cisneros," "b.k.," and "b.s.k." in a law enforcement database.

Overt Act No. 34: On or about May 24, 2016, intending to cover up his recent improper searches, defendant BROUMAND drafted an electronic communication titled "Source Reporting on Levon Termendzhyan" regarding Turkey purchasing oil from Noil Energy Group.

Overt Act No. 35: On or about May 26, 2016, defendant BROUMAND spoke on the telephone with the FBI case agent overseeing the corruption investigation of Homeland Security Investigations Special Agent Felix Cisneros. During the phone call, defendant BROUMAND attempted to falsely convey that he had a legitimate FBI inquiry related to Cisneros.

Overt Act No. 36: On or about June 3, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

Overt Act No. 37: On or about June 24, 2015, defendant BROUMAND drafted an electronic communication regarding his interactions with Cisneros in order to make it falsely appear that he had a legitimate FBI inquiry related to Cisneros.

Overt Act No. 38: On or about December 3, 2016, defendant BROUMAND caused a check for $1,000 to be written to Individual A in

an attempt to make it falsely appear that Individual A loaned money to defendant BROUMAND.

Overt Act No. 39: On or about December 19, 2016, defendant BROUMAND caused a check for $1,000 to be written to Individual A in an attempt to make it falsely appear that Individual A loaned money to defendant BROUMAND.

Overt Act No. 40: On or about March 21, 2017, defendant BROUMAND reached out to FBI SA Steve Kusin in an attempt to assist Individual A in becoming an FBI source and conceal the true nature of their relationship.

Overt Act No. 41: On or about March 24, 2017, defendant BROUMAND intentionally omitted from his FBI Security Financial Disclosure Form for calendar year 2016 that he received a $30,000 check from Individual A and/or ARCA Capital.

Overt Act No. 42: On or about September 12, 2017, in order to cover up their bribery scheme, Individual A falsely told a federal agent that he gave a $20,000 to $30,000 check to defendant BROUMAND as a "loan" to buy a house "in the mountains."

Overt Act No. 43: On or about April 27, 2018, defendant BROUMAND falsely represented on his FBI Security Financial Disclosure Form for calendar year 2017 that the $30,000 check from Individual A was a "loan."

Overt Act No. 44: On or about April 30, 2018, defendant BROUMAND caused a check for $1,000 to be written to Individual A in a false attempt to make it appear that Individual A loaned money to defendant BROUMAND.

Overt Act No. 45: On or about December 18, 2018, Individual A falsely told federal agents that he did not ask defendant BROUMAND to

search law enforcement databases for him and that the 2015 Ducati Panigale was a gift, when, in fact, it was a bribe.

COUNT TWO

[18 U.S.C. § 201(b)(2)(C)]

On or about April 29, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a Ducati motorcycle and accessories, in return for being induced to do an act and omit to do an act in violation of his official duty. Specifically, defendant BROUMAND corruptly demanded and accepted a Ducati motorcycle and accessories, valued at approximately $36,000, from Individual A, an individual engaged in criminal conduct and associated with a criminal organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring. Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity, the duty to only use law enforcement databases for legitimate law enforcement activity, and the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNT THREE

[18 U.S.C. § 201(b)(2)(C)]

On or about September 30, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a $30,000 cashier's check, in return for being induced to do an act and omit to do an act in violation of his official duty. Specifically, defendant BROUMAND corruptly demanded and accepted a $30,000 cashier's check, made payable to "Love Bugs" from Individual A, an individual engaged in criminal conduct and associated with a criminal organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring. Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity, the duty to only use law enforcement databases for legitimate law enforcement activity, and the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNT FOUR

[18 U.S.C. § 201(b)(2)(C)]

On or about March 21, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a $30,000 check, in return for being induced to do an act and omit to do an act in violation of his official duty. Specifically, defendant BROUMAND corruptly demanded and accepted Check No. 1018, a $30,000 check, made payable to defendant BROUMAND's mother, from Individual A, an individual engaged in criminal conduct and associated with an organized crime organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring. Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity, the duty to only use law enforcement databases for legitimate law enforcement activity, and the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNTS FIVE and SIX

[18 U.S.C. §§ 1957(a), 2(b)]

On or about the following dates, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant BROUMAND, together with others known and unknown to the Grand Jury, knowing that the funds involved represented the proceeds of some form of unlawful activity, knowingly engaged in, attempted to engage in, and willfully caused others to engage in, the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from

//

//

specified unlawful activity, that is, bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(2)(C):

| **COUNT** | **DATE** | **TRANSACTION** |
| --- | --- | --- |
| FIVE | 9/30/2015 | Deposit of cashier's check #0081403081, purchased by Andor'e Inc; in the amount of $30,000, payable to Love Bugs, into a Chase Bank account, in the name of Love Bugs, at the JPMorgan Chase Beverly Hills Downtown Branch. |
| SIX | 3/21/2016 | Deposit of check no. 1018, in the amount of $30,000, from ARCA Capital, Inc., payable to defendant BROUMAND's mother, into a Bank of America account in her name at the Bank of America, Lake Elsinore, California Branch. |

A TRUE BILL

/S/

Foreperson

NICOLA T. HANNA
United States Attorney

Brandon Fox

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

RUTH C. PINKEL
Assistant United States Attorney
Public Corruption & Civil Rights Section