FILED
CLERK, U.S. DISTRICT COURT

06/30/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 20-224(A)-RGK |
|---|---|
| Plaintiff, | **FIRST SUPERSEDING INDICTMENT** |
| v. | |
| BABAK BROUMAND, | [18 U.S.C. § 371: Conspiracy to Commit Bribery of a Public Official; 18 U.S.C. § 201(b)(2)(C): Bribery of a Public Official; 18 U.S.C. § 1957(a): Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. §§ 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

1. Defendant BABAK BROUMAND was a Special Agent of the Federal Bureau of Investigation, an agency within the executive branch of the United States government.

2. Defendant BROUMAND became an FBI agent in January 1999 and was responsible for national security investigations. Defendant

BROUMAND's responsibilities included recruiting human intelligence sources for the FBI.  As an FBI agent, defendant BROUMAND had access to non-public law enforcement databases, which, pursuant to government regulations, were only to be used to conduct legitimate law enforcement investigations.  As a Special Agent with the FBI, defendant BROUMAND was a public official who swore an oath to faithfully discharge the duties of a federal law enforcement officer.

3.   Love Bugs, LLC, was a lice-removal hair salon business started in 2007 by defendant BROUMAND and his wife, which operated in the Northern District of California.

4.   Individual A was an individual engaged in criminal conduct and associated with a criminal organization.  The criminal organization included, among others, Levon Termendzhyan and then Homeland Security Investigations Special Agent Felix Cisneros.  Among other corporations and entities, Individual A had access to and/or control over bank accounts in the name of Andor'e and ARCA Capital.

5.   These Introductory Allegations are incorporated into each count of this First Superseding Indictment.

COUNT ONE

[18 U.S.C. § 371]

A.   OBJECT OF CONSPIRACY

6.   Beginning in about January 2015 and continuing to at least December 18, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, and others known and unknown to the Grand Jury, conspired with Individual A to commit bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(2)(C).

B.   MANNER AND MEANS OF THE CONSPIRACY

7.   The object of the conspiracy was carried out as follows:

a.   Individual A would offer and provide to defendant BROUMAND and defendant BROUMAND would accept and receive from Individual A cash, checks, private jet flights, a motorcycle, hotel stays, escorts, meals, and other items of value.

b.   In return for the payments and other items of value and in order to shield Individual A from law enforcement scrutiny or otherwise benefit Individual A and/or Individual A's associates, defendant BROUMAND would conduct and would agree to conduct law enforcement database inquiries and would use results of those inquiries to inform Individual A of whether a particular person or entity was under investigation by stating that Individual A should "stay away" from that person or that they were "ok."  Defendant BROUMAND also would conduct and agree to conduct law enforcement database inquiries, and other official acts, and would use the results to shield Individual A and defendant BROUMAND's illegal activity from law enforcement scrutiny.

      c.    In order to conceal the true nature of their corrupt relationship, defendant BROUMAND and Individual A would agree to make it falsely appear as if Individual A was working or attempting to work as an FBI source.

      d.    Defendant BROUMAND would contact other FBI Special Agents to make it falsely appear that Individual A was a source or potential source, which was intended to help conceal Individual A and defendant BROUMAND's illegal activity and shield Individual A from law enforcement scrutiny.

      e.    Defendant BROUMAND would write reports after the fact to make it falsely appear he had not improperly conducted law enforcement database inquiries.

      f.    By means of the above-described conduct and in exchange for the above-described official acts, defendant BROUMAND received payments from Individual A totaling at least approximately $150,000, plus a 2015 Ducati Panigale Motorcycle and accessories valued at approximately $36,100.

C.    <u>OVERT ACTS</u>

    8.    On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant BROUMAND and co-conspirator Individual A committed, and caused others to commit, the following overt acts, among others, within the Central District of California, and elsewhere:

    <u>Overt Act No. 1</u>:    On January 8, 2015, defendant BROUMAND searched the names of individuals and entities that were then associated with Individual A, including "termendzhyan," "noil energy group," "pillar law," "sargsyan," "edgar sargsyan," "k.," "b.k.," "s.k.," and "sbk holding" in a law enforcement database.

4

<u>Overt Act No. 2</u>: On January 8, 2015 defendant BROUMAND sent an email to another FBI employee requesting information as to whether certain named people were FBI sources, which caused the other FBI employee to search the names of Individual A and "L.K.," "B.K." and "B.S.K." in a law enforcement database.

<u>Overt Act No. 3</u>: On or after January 8, 2015, defendant BROUMAND told Individual A that Individual A had been under FBI investigation for credit card fraud.

<u>Overt Act No. 4</u>: On January 9, 2015, after speaking with Individual A the previous day, defendant BROUMAND searched and accessed the Termendzhyan FBI Los Angeles case file in a law enforcement database. The file indicated there was then an active federal criminal investigation of Levon Termendzhyan.

<u>Overt Act No. 5</u>: On January 9, 2015, defendant BROUMAND contacted an LA-based FBI Special Agent, Steve Kusin, suggesting he had information about Levon Termendzhyan that would be useful to SA Kusin.

<u>Overt Act No. 6</u>: On January 9, 2015, defendant BROUMAND drafted an FBI electronic communication titled "Source Reporting on Levon Termendzhyan" regarding Turkey purchasing oil from Noil Energy Group, which was Termendzhyan's company.

<u>Overt Act No. 7</u>: On January 12, 2015, defendant BROUMAND accessed the Termendzhyan FBI case file in a law enforcement database.

<u>Overt Act No. 8</u>: On January 15, 2015, defendant BROUMAND obtained information on "L.K." from a Department of Homeland Security Task Force Officer assigned to the FBI in San Francisco.

  Overt Act No. 9:   On January 26, 2015, defendant BROUMAND accessed the Termendzhyan FBI case file in a law enforcement database.

  Overt Act No. 10:  On January 30, 2015, defendant BROUMAND traveled to Los Angeles to meet FBI SA Kusin and to meet with Individual A.

  Overt Act No. 11:  On or about January 30, 2015, Individual A paid for defendant BROUMAND to spend two nights at a luxury hotel in Beverly Hills.

  Overt Act No. 12:  On February 17, 2015, defendant BROUMAND deposited $5,000 cash into the Love Bugs LLC bank account (Chase 8236) (the "Love Bugs account").

  Overt Act No. 13:  On April 27, 2015, defendant BROUMAND deposited $14,000 cash into a Wells Fargo bank account in his and his wife's name.

  Overt Act No. 14:  On April 29, 2015, Individual A purchased for defendant BROUMAND a 2015 Ducati Panigale motorcycle and accessories for $36,100.

  Overt Act No. 15:  On September 21, 2015, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

  Overt Act No. 16:  On September 24, 2015, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

  Overt Act No. 17:  On September 25, 2015, defendant BROUMAND deposited $9,000 in cash into the Love Bugs account.

  Overt Act No. 18:  On September 30, 2015, Individual A gave defendant BROUMAND a $30,000 cashier's check from Andor'e (#0081403081) made payable to "Love Bugs."

Overt Act No. 19:  On September 30, 2015, Individual A paid for defendant BROUMAND to stay one night in a luxury hotel in Beverly Hills.

Overt Act No. 20:  On October 14, 2015, defendant BROUMAND searched Individual A's name in a law enforcement database.

Overt Act No. 21:  On or about October 21, 2015, defendant BROUMAND submitted to a mortgage company a false bill of sale, dated September 30, 2015, intending to falsely reflect that he sold a 1991 Sea Ray boat to Individual A for $30,000.

Overt Act No. 22:  On November 10, 2015, defendant BROUMAND searched Individual A's name in a law enforcement database.

Overt Act No. 23:  On December 7, 2015, defendant BROUMAND searched the name of an individual with the initials of C.P. in a law enforcement database.

Overt Act No. 24:  On or after December 7, 2015, defendant BROUMAND told Individual A that C.P. "was okay," meaning that C.P. was not then under law enforcement investigation.

Overt Act No. 25:  On December 8, 2015, defendant BROUMAND searched the names "solakyan" and "sam solakyan" in a law enforcement database.

Overt Act No. 26:  On December 8, 2015, defendant BROUMAND told Individual A to "stay away" from Sam Solakyan and that he was "trouble," meaning that Solakyan was then under law enforcement investigation.

Overt Act No. 27:  On December 23, 2015, defendant BROUMAND searched variations of the name of Individual A's associate "sbk," "k," and "bk" in a law enforcement database.

<u>Overt Act No. 28</u>:   On January 28, 2016, defendant BROUMAND deposited $5,500 in cash into the Love Bugs account.

<u>Overt Act No. 29</u>:   On February 10, 2016, Individual A sent defendant BROUMAND the name and date of birth of "A.M.," and defendant BROUMAND replied, "Got it."

<u>Overt Act No. 30</u>:   On February 11, 2016, defendant BROUMAND searched variations of "A.M." in a law enforcement database.

<u>Overt Act No. 31</u>:   On February 24 and 25, 2016, defendant BROUMAND, in an effort to protect Individual A from law enforcement scrutiny and in exchange for $10,000 from Individual A, attempted to hire a private investigator and falsely represented to the private investigator that he was doing so on behalf of the FBI as part of a legitimate law enforcement investigation.

<u>Overt Act No. 32</u>:   On or before February 27, 2016, defendant BROUMAND traveled to Los Angeles to meet with Individual A and gave Individual A an FBI parking placard to use for his own purposes.  The FBI placard provided its user certain law enforcement privileges and was intended for legitimate law enforcement only.

<u>Overt Act No. 33</u>:   On or after February 27, 2016, after Individual A was stopped by the Burbank Police Department for a traffic violation and found with defendant BROUMAND's FBI parking placard, defendant BROUMAND and Individual A agreed that if their relationship was ever questioned by law enforcement, they would falsely say that Individual A was providing "intelligence" information to defendant BROUMAND.

<u>Overt Act No. 34</u>:   On or after February 27, 2016, defendant BROUMAND falsely told his FBI supervisor that he was visiting with a

friend in Los Angeles who introduced him to Individual A and that he was using his friend to develop potential sources.

<u>Overt Act No. 35</u>:  On February 29, 2016, defendant BROUMAND deposited $8,000 in cash into the Love Bugs account.

<u>Overt Act No. 36</u>:  On March 3, 2016, defendant BROUMAND sent a text message to Individual A stating that defendant BROUMAND was "in trouble," which Individual A understood to mean that defendant BROUMAND was being investigated by the FBI because he gave his FBI parking placard to Individual A.

<u>Overt Act No. 37</u>:  On March 8, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

<u>Overt Act No. 38</u>:  On March 17, 2016, defendant BROUMAND deposited $4,000 in cash into the Love Bugs account.

<u>Overt Act No. 39</u>:  On or before March 21, 2016, defendant BROUMAND solicited a $30,000 check from Individual A, which he later received and caused to be deposited in his parents' bank account.

<u>Overt Act No. 40</u>:  On April 14, 2016, Individual A sent a text message to defendant BROUMAND with the name and birthdate of Individual A's associate, H.N., on whose home law enforcement served a search warrant that day, and told defendant BROUMAND "your moral support is priceless."

<u>Overt Act No. 41</u>:  On April 18, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

<u>Overt Act No. 42</u>:  On April 21, 2016, defendant BROUMAND sent a text message to Individual A ensuring him that "You are alright. Stay safe."

<u>Overt Act No. 43</u>:  On April 21, 2016, defendant BROUMAND caused a wire transfer of $29,300 from his parents' Bank of America account to the Love Bugs account.

<u>Overt Act No. 44</u>:  On April 25, 2016, defendant BROUMAND intentionally omitted from his FBI Security Financial Disclosure Form for calendar year 2015 that he received the 2015 Ducati Panigale, a $30,000 cashier's check, and cash from Individual A.

<u>Overt Act No. 45</u>:  On April 28, 2016, defendant BROUMAND and Individual A exchanged text messages about a "marriage certificate," which was a coded reference to a plan to falsely represent that Individual A was an FBI source.

<u>Overt Act No. 46</u>:  On May 23, 2016, defendant BROUMAND searched the names "b.k.," "noil energy," "noil energy group," "y.," "y.s.," and "y.k." in a law enforcement database.

<u>Overt Act No. 47</u>:  On May 24, 2016, defendant BROUMAND searched the names "noil energy," "felix Cisneros," "b.k.," and "b.s.k." in a law enforcement database.

<u>Overt Act No. 48</u>:  On May 24, 2016, intending to cover up his recent improper law enforcement database searches, defendant BROUMAND drafted an electronic communication titled "Source Reporting on Levon Termendzhyan" regarding Turkey purchasing oil from Noil Energy Group.

<u>Overt Act No. 49</u>:  On May 26, 2016, defendant BROUMAND spoke on the telephone with the FBI case agent overseeing the corruption investigation of Homeland Security Investigations Special Agent Felix Cisneros.  During the phone call, defendant BROUMAND attempted to falsely convey that he had a legitimate FBI inquiry related to SA Cisneros.

<u>Overt Act No. 50</u>:  On June 3, 2016, defendant BROUMAND deposited $5,000 in cash into the Love Bugs account.

<u>Overt Act No. 51</u>:  On June 3, 2016, defendant BROUMAND searched the FBI electronic case files for Levon Termendzhyan and Felix Cisneros.

<u>Overt Act No. 52</u>:  On June 8, 2016, defendant BROUMAND searched the FBI electronic case file for Felix Cisneros.

<u>Overt Act No. 53</u>:  On June 9, 2016, defendant BROUMAND forwarded a January 2015 email to his supervisor falsely suggesting he was working sources in Los Angeles.

<u>Overt Act No. 54</u>:  On June 15, 2016, defendant BROUMAND searched the FBI electronic case file for Felix Cisneros.

<u>Overt Act No. 55</u>:  On June 24, 2016, defendant BROUMAND searched the FBI electronic case file for Felix Cisneros.

<u>Overt Act No. 56</u>:  On June 24, 2015, defendant BROUMAND drafted an electronic communication regarding his interactions with Cisneros in order to make it falsely appear that he had a legitimate FBI inquiry related to SA Cisneros.

<u>Overt Act No. 57</u>:  On December 3, 2016, defendant BROUMAND caused a check for $1,000 to be written to Individual A in an attempt to make it falsely appear that Individual A loaned money to defendant BROUMAND.

<u>Overt Act No. 58</u>:  On December 19, 2016, defendant BROUMAND caused a check for $1,000 to be written to Individual A in an attempt to make it falsely appear that Individual A loaned money to defendant BROUMAND.

<u>Overt Act No. 59</u>:  On March 21, 2017, defendant BROUMAND reached out to SA Kusin in an attempt to assist Individual A in

becoming an FBI source and conceal the true nature of their relationship.

<u>Overt Act No. 60</u>:   On March 24, 2017, defendant BROUMAND intentionally omitted from his FBI Security Financial Disclosure Form for calendar year 2016 that he received a $30,000 check from Individual A and/or ARCA Capital.

<u>Overt Act No. 61</u>:   On September 12, 2017, in order to cover up their bribery scheme, Individual A falsely told a federal agent that he gave a $20,000 to $30,000 check to defendant BROUMAND as a "loan" to buy a house "in the mountains."

<u>Overt Act No. 62</u>:   On April 27, 2018, defendant BROUMAND falsely represented on his FBI Security Financial Disclosure Form for calendar year 2017 that the $30,000 check from Individual A was a "loan."

<u>Overt Act No. 63</u>:   On April 30, 2018, defendant BROUMAND caused a check for $1,000 to be written to Individual A in a false attempt to make it appear that Individual A loaned money to defendant BROUMAND.

<u>Overt Act No. 64</u>:   On December 18, 2018, Individual A falsely told federal agents that he did not ask defendant BROUMAND to search law enforcement databases for him and that the 2015 Ducati Panigale was a gift, when, in fact, it was a bribe.

COUNT TWO

[18 U.S.C. § 201(b)(2)(C)]

On or about April 29, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a Ducati motorcycle and accessories, in return for being induced to do an act and omit to do an act in violation of his official duty.  Specifically, defendant BROUMAND corruptly demanded and accepted a Ducati motorcycle and accessories, valued at approximately $36,000, from Individual A, an individual engaged in criminal conduct and associated with a criminal organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring.  Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including: (1) the duty to faithfully discharge the duties of a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity; (2) the duty to only use law enforcement databases for legitimate law enforcement activity; and (3) the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNT THREE

[18 U.S.C. § 201(b)(2)(C)]

On or about September 30, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a $30,000 cashier's check, in return for being induced to do an act and omit to do an act in violation of his official duty. Specifically, defendant BROUMAND corruptly demanded and accepted a $30,000 cashier's check, made payable to "Love Bugs" from Individual A, an individual engaged in criminal conduct and associated with a criminal organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring. Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including: (1) the duty to faithfully discharge the duties of a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity; (2) the duty to only use law enforcement databases for legitimate law enforcement activity; and (3) the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNT FOUR

[18 U.S.C. § 201(b)(2)(C)]

On or about March 21, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROUMAND, a public official, namely, a FBI Special Agent responsible for national security investigations, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value, namely, a $30,000 check, in return for being induced to do an act and omit to do an act in violation of his official duty.  Specifically, defendant BROUMAND corruptly demanded and accepted Check No. 1018, a $30,000 check, made payable to defendant BROUMAND's mother, from Individual A, an individual engaged in criminal conduct and associated with an organized crime organization, in exchange for defendant BROUMAND querying law enforcement databases and sharing the results with Individual A, in order to help Individual A and Individual A's associates avoid prosecution and law enforcement monitoring.  Such conduct violated defendant BROUMAND's duties and responsibilities as a federal law enforcement officer, including: (1) the duty to faithfully discharge the duties of a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity; (2) the duty to only use law enforcement databases for legitimate law enforcement activity; and (3) the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring.

COUNTS FIVE and SIX

[18 U.S.C. §§ 1957(a), 2(b)]

On or about the following dates, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendant BROUMAND, together with others known and unknown to the Grand Jury, knowing that the funds involved represented the proceeds of some form of unlawful activity, knowingly engaged in, attempted to engage in, and willfully caused others to engage in, the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(2)(C):

| COUNT | DATE | TRANSACTION |
| --- | --- | --- |
| FIVE | 9/30/2015 | Deposit of cashier's check #0081403081, purchased by Andor'e Inc; in the amount of $30,000, payable to Love Bugs, into a Chase Bank account, in the name of Love Bugs, at the JPMorgan Chase Beverly Hills Downtown Branch. |
| SIX | 3/21/2016 | Deposit of check no. 1018, in the amount of $30,000, from ARCA Capital, Inc., payable to defendant BROUMAND's mother, into a Bank of America account in her name at the Bank of America, Lake Elsinore, California Branch. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Four of this First Superseding Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses including but not limited to real property located in the County of Placer, State of California, APN 085-260-034-000; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

17

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in either of Counts Five or Six of this First Superseding Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property including but not limited to real property located in the County of Placer, State of California, APN 085-260-034-000; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be

ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/S/
Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

RUTH C. PINKEL
Assistant United States Attorney
Acting Deputy Chief, Public Corruption & Civil Rights Section