STEVEN F. GRUEL, ESQ.
California Bar No. 213148
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: 415-533-6973
Facsimile: 415-449-3622
Email: attystevengruel@sbcglobal.net

Attorney for Babak Broumand

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR-20-224-RGK |
|---|---|
| Plaintiff, | |
| v. | **REVISED DEFENDANT BABAK BROUMAND'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; or IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND CONTINUING THE TRIAL DATE;** |
| BABAK BROUMAND, | |
| Defendant. | |
| | **MEMORANDUM OF POINTS & AUTHORITIES; and THE SUPPORTING DECLARATION OF STEVEN F. GRUEL** |
| | **HONORABLE R. GARY KLAUSNER** |
| | ROYBAL FEDERAL BUILDING: Courtroom #850 on December 27, 2021 @ 1:30 p.m. |

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

1

# TABLE OF CONTENTS

Description                                                                                      Page

TABLE OF AUTHORITIES…………………………………………….…………….……3

MEMORANDUM OF POINTS AND AUTHORITIES…………………….…………..5

I.   Summary of Motion………………………………………………………....5

II.  Summary of Relevant Facts……………………………………….………6

   A.  Summary Regarding the Prosecution……………………………….……6

   B.  Summary Regarding Discovery…………………………….…………...7

   C.  Audio Recordings of Individual A's Interviews
     Reveal Missing Discovery……………………………………………….8

III. LAW AND ARGUMENT………………………………………………..…9

   A.  The Due Process Clause and The Due Process Protection
     Act Support Dismissing the First Superseding Indictment…………...9

   B.  Motion Compelling Discovery and Continuing
     The Trial Date………………………………………………………..11

     1.Rule 16 Discovery Obligations……………………………………..11

     2. Brady and Giglio Material…………………………………………13

IV. SPECIFIED DISCOVERY REQUESTED AND
   BASIS FOR PRODUCTION…………………………………………………15

V.  REQUEST TO CONTINE TRIAL DATE……………………………………19

VI. CONCLUSION …………………………………………………………19

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

2

1

TABLE OF AUTHORITIES

2

<u>DESCRIPTION</u>                                                                                     <u>PAGE</u>

3

<u>Brady v. Maryland</u>,
    373 U.S. 83 (1963)………………….……………………………………………14, 15

5

<u>McNabb v. United States</u>,
    318 U.S. 332 (1943)…………………………………………………………10

6

<u>United States v. Hasting</u>,
    461 U.S. 499 (1983)…………………………………………………………..10

8

<u>United States v. Bryan</u>,
    868 F.2d 1032 (9th Cir. 1989)……………………………………………..12, 14

9

<u>United States v. Muniz-Jaquez</u>,
    718 F.3d 1180 (9th Cir. 2013)……………………………………………12

11

<u>United States v. Olsen</u>,
    704 F.3d 1172 (9th Cir. 2013)……………………………………………14

<u>United States v. Price</u>,
    566 F.3d 900 (9th Cir. 2009)……………………………………………14

14

<u>United States v. Restrepo</u>,
    930 F.2d 705 (9th Cir. 1991)……………………………………..…10

<u>United States v. Santiago</u>,
    46 F.3d 885 (9th Cir. 1995)……………………………………………14

<u>United States v. Stever</u>,
    603 F.3d 747 (9th Cir.
2010)………………………………………………………11

<u>United States v. Stuckman</u>,
    611 F.3d 560 (9th Cir. 2010)……………………………………………10

<u>United States v. Trevino</u>,
    556 F.2d 1265 (5th Cir. 1977)…………………………………………..13

<u>United States v. Bergonzi</u>,
216 F.R.D. 487, 501 (N.D. Cal. 2003)……………………………………11

<u>United States v. Thomas</u>,
    545 F. Supp. 2d 1018 (N.D. Cal. 2008……………………………………12

25

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING
INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

TABLE OF AUTHORITIES (continued)

DESCRIPTION                                                                        PAGE

United States v. W. R. Grace & Co.,
401 F. Supp. 2d 1069 (D. Mont. 2005)………………………………………………12, 13

Rules

Fed. R. Crim. P.  16(a)(1)(E)……………………………………………………..11, 12, 14

Fed. R. Crim. P.16(a)(1)(E)(i) and (ii)……………………………………………12, 14

Other Authority

Central District of California
General Order 21-2……………………………….………………………………...…10

United States Attorney Manual…………………………………………………………15

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Summary of Motion

On September 27, 2021, the parties appeared before the Court to discuss a stipulation seeking to continue a previously set trial date. Along with several serious family health matters related to COVID-19, including the deaths of defense counsel's Mother and Mother-in-Law, the parties agreed that the voluminous case discovery consisting of 10 rolling discovery productions producing audio tapes, video tapes, and documents totaling 84,746, warranted a 4 month trial continuance. The Court disagreed.

Instead, although the Court expressed sympathy to defense counsel's recent family health matters, it disagreed that the voluminous discovery alone warranted a 4-month trial continuance. Notably, upon hearing from the parties, the Court opined that the case possibly should not have been filed without the prosecution's discovery fully prepared in lieu of a system of a rolling piecemeal approach. The Court discussed a dismissal of the case so that the concerns and objectives of the Speedy Trial Act could be followed.  After further input from the parties, the Court granted a trial continuance to January 25, 2022.  (Dkt. # 58 – Court Minutes).

Since the September 27, 2021, hearing, the government has produced additional discovery: (a) on October 6, 2021, Productions # 11 and #12 were provided (Bates Numbers 84,747 – 97,423; and last week on November 24, 2021, Production # 13, (Bates Numbers 97-424 – 105,721).  In addition to these recently produced 20,974 pages of discovery, the government has represented that a 14th Production is forthcoming.

Along with this continued ongoing river of discovery, defense trial preparation revealed relevant items which have not yet been produced. Some of these items have been previously requested and all fall within the scope of the government's discovery obligations. As discussed below, the government's failure to produce this specific discovery runs contrary to Rule 16, *Brady*,

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

5

*Giglio* and the Jencks Act.  These failures fall within the Court's expressed discovery concerns further inviting a dismissal as a remedy, which, by the way, is specifically mentioned in this District's General Order 21-2 for a violation of the Due Process Protections Act.  In light of the posture of the case and ongoing discovery, the defense accordingly moves for dismissal.

Alternatively, should a dismissal not be granted, the defense respectfully seeks the Court's Order compelling production of the specific discovery described herein as well as granting a continuance of the trial date so as to allow more time to effectively and meaningfully prepare for trial.[1]

## II.  **Summary of Relevant Facts**[2]

### A.  Summary Regarding the Prosecution

Babak Broumand served as an FBI Special Agent from 1999 to 2019.  Mr. Broumand was responsible for national security investigations and, consequently, was involved in acquiring intelligence as well as recruiting people ("assets") to serve as intelligence sources.

In late 2014, Mr. Broumand began a relationship with Individual A.  The government claims that Individual A gave Mr. Broumand things of value in exchange for information acquired from Mr. Broumand's improper law enforcement database inquires.  Although the government alleges several database inquires by Mr. Broumand in Count One's list of overt acts, nothing has been produced in discovery supporting these particular searches.

The Office of Inspector General (OIG) and the FBI first began to investigate Broumand's relationship with Individual A as early as 2016. This OIG investigation was initiated because Mr. Broumand left an FBI parking placard with Individual A which, although kept in Individual A's

---

[1]   As seen in recent Stipulations and Court Orders referencing the Classified Information Procedures Act (CIPA), a Classified Information Officer has been appointed and an Additional Protective Order has been filed (Dkt.'s #61, #66, #78-79).  Additional filings involving CIPA in this case will be addressed later in accordance with CIPA.

[2]   These facts are based upon the Declaration of Steven F. Gruel with exhibits filed herewith.

*DEFENDANT BABAK BROUMAND'S* <u>*REVISED*</u> *NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

glove box, was found by or shown to the Burbank Police during a routine traffic stop for no license plates.

On December 5, 2018, the investigation overtly displayed a greater scope when 3 FBI search warrants of Broumand's home and businesses were executed.  Sixteen months later, on April 24, 2020, Mr. Broumand was arrested on a criminal complaint alleging conspiracy to engage in acts of bribery.  (Dkt. # 1).   On June 30, 2021, the First Superseding Indictment (FSI) was filed. (Dkt. # 49).  The government claims that in 2015 and 2016 Individual A bribed Mr. Broumand with things of value so that the latter would illegally access law enforcement databases to provide information to the former.   As part of his criminal life, Individual A bribed a Glendale police officer named John Balian and a Homeland Security agent named Felix Cisneros.

Individual A has become a government witness to minimize his prison time.  Predictably, his interviews regarding claims of bribing Mr. Broumand have been vague, often contradictory and unsupportive to the government's charges.  Beyond the government's claims of database inquires mentioned in its charging documents, no discovery has been produced establishing any inquires by Mr. Broumand.  Thus, Individual A's credibility is naturally the core of the government's assertions. In fact, FBI agent Torbic in footnote 1 of his affidavit supporting the criminal complaint, summarized a general insight into Individual A's lack of credibility. *Gruel Declaration, Exhibit A*.

   B.  <u>Summary Regarding Discovery</u>

On May 27, 2020, in its First Discovery Letter, the defense requested all *Brady, Giglio*, Federal Rule 16 and Jencks Act material. Since then, the parties have worked together to provide a stream of discovery produced by the government.  To date, there have been 13 productions totaling 105,721 Bates Numbered materials.  The most recent production was a few days ago on November

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

7

24, 2021.  More discovery in the form of a 14th Production is forthcoming.[3]  Notwithstanding government's general cooperation in the discovery process the defense has specific requests which the government has yet to produce or objects to production.  Therefore, in the absence of a dismissal of the case, the defense files this Motion listing the specific discovery it seeks for effective trial preparation and defense of the charges.

      C.  <u>Audio Recordings of Individual A Interviews Reveal Missing Relevant Discovery</u>

      Individual A is the government's sole witness supporting the bribery charges.  By any measure, Individual A is not credible – he was involved in organized crime, identity theft, credit card fraud, possibly an involvement in arson, bribery and illegal drugs. Individual A apparently made millions of dollars from his criminal activity. Not surprisingly, Individual A's story to law enforcement changed numerous times. Defense counsel has listened to audio recordings of Individual A's interviews. Several AUSAs and investigators (state and federal) are identified as present at those interviews.  It is clear that the defense has not been provided all of the Individual A's interviews or the complete background of his criminal activity.  In fact, in the first recorded interview (dated December 18, 2018), one of the AUSAs (believed to be Jeff Mitchell) mentioned that there have been at least 2 other interviews of Individual A.

      Moreover, it is mentioned in that and another recorded interview that Individual A's law firm was searched as well as the locations of Individual A's crime partner, H. N.  When Individual A is often confronted for being less than truthful, interviewing federal prosecutors or agents invoke the terms of an August 23, 2018 plea agreement as requiring truthful cooperation. Yet, no such plea agreement, much less disclosure of the fathom prosecution leading to this arrangement, has been provided to the defense.  The only plea agreement pertaining to Individual A that the defense has

---

[3]   The massive volume of discovery with the anticipation of even more discovery to be produced was noted by the Court in denying the defense request for a Bill of Particulars. (Dkt. # 83).

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

8

seen is one dated April 28, 2020. The recorded interviews further reveal that Individual A was apparently investigated by the Los Angeles Sheriff's Department (possibly lead by a Detective Pritchard who had custody of Individual A's cell phone), but nothing about this is mentioned or disclosed in the prosecution's discovery. In short, there remains a large gap of highly relevant *Brady*, *Giligo* and Jencks material which the prosecution clearly is aware but has elected not to produce to the defense.  This Due Process failure violates the District's General Order 21-02 and invites the remedies, including dismissal, stated therein.

Additionally, defense access to relevant FBI databases so as to inspect and review the inquires allegedly performed and reviewed by Mr. Broumand has been flatly denied by the prosecution. Access to inspect this database evidence is material in preparing the defense as well as refuting the evidence which likely will be admitted as a significant part of the government's case-in-chief.  Without question, Rule 16(a)(1)(E)(i) and (ii), the defense has a right to access and inspect this critical evidence.[4]  Security concerns, if any, can easily be meet with additional protective orders and the parties' stipulation.

### III.   **LAW AND ARGUMENT**

A.   The Due Process Clause and the Due Process Protections Act
       Support Dismissing the First Superseding Indictment

On September 27, 2021, the Court noted that a dismissal of the government's charges could serve as a "remedy" given the voluminous ongoing discovery production so as to avoid violating the intent of the Speedy Trial Act.  Assuming that the government does not intend to dismiss the FSI, it is nonetheless clear that the Court has the power to do so. Under the Due Process Clause and this Court's supervisory power, the defense maintains that the posture of the case, together with the government's ongoing discovery production and failure to produce discovery relevant to the

---

[4]   Sometimes the government objects to defense discovery requests as overly broad. To address that objection, the defense will seek leave from the Court to file an *ex parte* pleading under seal stating the defense theory of the case.

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

defending the charges, warrants exercising the Court's power to order a dismissal.[5]  In fact, this District's General Order 21-2, filed according to the 2020 Due Process Protections Act, includes "dismissing charges" in an effort to supervise *Brady* violations.

Supervisory powers are a means by which the federal courts fulfill their role in the criminal justice system: "Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States*, 318 U.S. 332, 340 (1943). A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Stuckman*, 611 F.3d 560, 574 (9th Cir. 2010) (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)).  Such an exercise of its supervisory power protects the integrity of the federal courts and prevents the courts from "making . . . themselves accomplices in the willful disobedience of the law." *McNabb v. United States*, 318 U.S. 332.  (1943).

The supervisory power of the federal courts rests upon the assumption that the federal courts represent the appropriate tribunals to exercise the overall responsibility for developing and supervising the implementation of the rules of federal procedure.

In this case, the government began its investigation in 2016; it did search warrants in 2018; and then waited to arrest Mr. Broumand in 2020. While the defense appreciates receiving the government's discovery, albeit in 13 segments, the last being a production a few days ago, more discovery is anticipated.  Plus, some critical discovery is either missing or the government refuses

---

[5]  The Ninth Circuit reviews a district court's decision regarding a motion to dismiss an indictment on due process grounds de novo. *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991). Rulings on motions to dismiss an indictment under the court's supervisory powers are reviewed for abuse of discretion. Id. Factual findings upon which the decision was based are reviewed for clear error. Id.

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

to disclose it. Mr. Broumand should have a fair opportunity to defend himself. Put another way, the government had plenty of time to have this case fully set to go before arresting Mr. Broumand.  As previously observed by the Court, dismissal is appropriate given the facts noted at the September 27, 2021 hearing.

   B.  Motions Compelling Discovery & Continuing the Trial Date

   If the Court does not dismiss the charges, it should then order the production of the specific discovery requested below. Production of this material will ensure a fair trial.  Furthermore, to make meaningful use of this discovery, and the over 20,000 pages received since October 6, 2021 and November 24, 2021, and with more discovery forthcoming, the defense requests that the trial date be continued.[6]  The following law supports granting the specific discovery requests:

   1.  Rule 16 Discovery Obligations

   Rule 16(a)(1)(E) "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). The rule requires the production, upon the defendant's request, of documents within the government's possession, custody, or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The standard for materiality is not burdensome; evidence—whether inculpatory or exculpatory—is "material" for purposes of Rule 16 if it is "helpful" to crafting a defense. *Stever*, 603 F.3d at 752 (internal quotation marks omitted); see also *United States v. Bergonzi*, 216 F.R.D. 487, 501 (N.D. Cal. 2003) ("The materiality requirement [of Rule 16], however, is not a 'heavy burden' . . . ."). A defendant need only make a "threshold showing of materiality," which entails "a presentation of facts which would tend to show" that the government possesses helpful information. *Stever*, 603 F.3d at 752 (internal quotation marks omitted). "Rule 16 is thus broader than *Brady*," encompassing not only exculpatory or impeaching information but any documents that are "relevant to developing a

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

11

possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013); see also

*United States v. Thomas*, 545 F. Supp. 2d 1018, 1025 (N.D. Cal. 2008) (granting Rule 16 discovery

of material "relevant" to anticipated defense argument).

Rule 16(a)(1)(E) sweeps broadly beyond materials in the prosecutor's physical possession to

include documents maintained by other government agencies if the prosecutor has knowledge of,

and access to, the documents sought. *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989);

see also *Stever*, 603 F.3d at 752 ("Information is in the possession of the government if the

prosecutor has knowledge of and access to the documents sought by the defendant." (internal

quotation marks omitted)). At a minimum, a prosecutor is "deemed to have knowledge of and

access to anything in the possession, custody or control of any federal agency participating in the

same investigation of the defendant." *Bryan*, 868 F.2d at 1036. But, as the Ninth Circuit has held,

agency involvement is a sufficient but not necessary factor in determining a prosecutor's

possession, custody, or control over an agency's documents. See *United States v. Santiago*, 46 F.3d

885, 893-94 (9th Cir. 1995) (holding that prosecutor had possession of documents maintained by

Bureau of Prisons despite district court's finding that the agency had not participated in the

"particular investigation" culminating in the indictment). The Ninth Circuit thus has expressly

rejected the proposition often urged by the government Rule 16 obligations are limited to members

of the "prosecution team." See *United States v. W. R. Grace & Co.*, 401 F. Supp. 2d 1069, 1078 (D.

Mont. 2005) (noting that the "'prosecution team' concept . . . is a product of case law from other

circuits" that is incompatible with Ninth Circuit law). A prosecutor's knowledge of, and access to,

agency documents can be shown in several ways.

As noted above, knowledge of, and access to, agency files is assumed if the agency was

involved in more than a minor way with the government's investigation. See, e.g., *Bryan*, 868 F.2d

---

[6]   According to the parties' September 20, 2021 stipulation, this continuance would be the 4th permitted by the Court.

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

12

at 1036 (holding IRS documents discoverable in mail fraud prosecution involving false tax returns); see also *United States v. Salyer*, 271 F.R.D. 148, 156 (E.D. Cal. 2010) (contrasting agencies that provide "significant amounts of information to the prosecutor," over whose documents the prosecutor will be deemed to have access, with agencies from which the prosecutor has "obtained a stray document or two," over whose documents he may lack access). But knowledge and access may also be demonstrated by the fact that the government previously obtained information from an agency for use in its case. In *Santiago*, the Ninth Circuit found that the prosecutor "certainly" knew about and could access the requested prison file on an inmate witness because the prosecutor had been able to obtain the defendant's prison file from the Bureau of Prisons. See 46 F.3d at 894. Similarly, in *W. R. Grace* the court held that the government's production to the defense of documents from a federal agency that were favorable to the prosecution demonstrated its knowledge of, and access to, additional, related documents sought by the defense. See 401 F. Supp. 2d at 1085; accord *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977) ("Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial; such evidence is plainly within his Rule 16 'control.'").

In this case, there exists an undisclosed investigation(s), undisclosed search warrants, criminal charges, a plea agreement dated August 23, 2018, and several interviews of Individual A which have not been produced.  The Due Process Protections Act was enacted to prevent nondisclosure of this impeachment and exculpatory material.

   2. *Brady and Gigilio Material*

The Due Process Clause of the Fifth Amendment requires disclosure of evidence in the government's possession, custody, or control that is favorable to the accused and material to either

(Dkt. # 56). This number of continuances is a product of the voluminous rolling discovery seen in the case.

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

13

guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is favorable "either because it is exculpatory, or because it is impeaching." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (internal quotation marks omitted). Before trial, assessing the materiality of potential *Brady* evidence "necessarily is speculative on so many matters that simply are unknown and unknowable until trial begins." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). For this reason, the Ninth Circuit has indicated that, in the pre-trial context, "the proper test" for materiality "should be an evaluation of whether the evidence is favorable to the defense" and that any doubts "should be resolved in favor of the defendant and full disclosure made." *Price*, 566 F.3d at 913 n.14 (internal quotation marks omitted); see also *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013 (citing *Safavian* for this proposition). In this way, the materiality test for *Brady* and Rule 16 collapse in the pre-trial context.

The test for whether the government has "possession, custody, or control" over agency materials for *Brady* purposes is the same one that applies in the Rule 16 context—that is, the government must disclose any *Brady* material housed at government agencies of which it has knowledge and to which it has access. See *Bryan*, 868 F.2d at 1073; *W.R. Grace,* 401 F. Supp. 2d at 1078; see also *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995) ("Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does."), overruled on other grounds by *Valerio v. Crawford*, 306 F.3d 742, 764 (9th Cir. 2002) (*en banc*). Any other rule "would undermine *Brady* by" permitting the prosecutor selectively to comb agency files for inculpatory materials while leaving exculpatory or impeachment evidence behind and out of the defense's reach. *Zuno-Arce*, 44 F.3d at 1427. The potential for that type of abuse is particularly acute in complex prosecutions borne of prior regulatory inquiries by federal or state agencies. See *United States v. Wood,* 57 F.3d 733, 737 (9th Cir. 1995). In *Wood*, the Ninth Circuit remanded a conviction for conspiracy to defraud the FDA

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

14

based on the government's suppression of exculpatory material compiled and maintained by the FDA. See id. (holding that, "[f]or *Brady* purposes, the FDA and prosecutor were one" because the agency had "consulted with the prosecutor in the steps leading to [the] prosecution" for violation of a regulatory scheme that it oversaw). The court explained that the "government cannot with its right hand say it has nothing while its left hand holds what is of value," especially where an "agency interested in the prosecution" maintained files containing exculpatory information. Id

In short, the United States Attorney Manual has recognized that the *Brady-Giglio* policy requires prosecutors to disclose exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); U.S.A.M. 9-5.001(B). Because this policy exists to defend the constitutional guarantee to a fair trial for criminal defendants, this information must be disclosed regardless of whether the defendant requests it.  Id.  In fact, the United States' Attorney Manual states, "this policy encourages prosecutors to err on the side of disclosure…."  U.S.A.M. 9-5.001(F).

Here, the defense has directly pointed to several examples of *Brady* and *Giglio* material which the prosecution is fully aware but has yet to disclose. Therefore, the defense respectfully requests an Order directing the government to immediately produce these materials.

IV.   SPECIFIC DISCOVERY REQUESTED & BASIS FOR PRODUCTION

As far back as May 27, 2020, the defense requested discovery of all Rule 16, *Brady*, G*iglio* and Jencks material.  *Gruel Declaration, Exhibit C.* The defense will be seeking leave of the Court to file under seal an *ex parte* Theory of the Defense which will further show the relevance of these requested materials. Predicated on the above law marking the government's obligations, the defense accordingly moves for immediate disclosure of the following:

*DEFENDANT BABAK BROUMAND'S REVISED NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

15

1.   **Requested Discovery**: All of Individual A's interviews with law enforcement (state and federal) and all of his statements as memorialized in reports, notes or recordings. These interviews seem to start in 2016 and include interviews with OIG, HSI, possibly the LA Sheriff Department, and all interviews with the FBI and AUSAs. Agent Torbic generally summarized some of Individual A's interviews in footnote 1 of the complaint (Dkt. #1). *Gruel Declaration, Exhibit A.*

**Law Supporting Production**: *Brady*, *Giglio*, Jencks Material; Due Process Procedures Act (General Order 21-2).  This is impeachment material.

2.   **Requested Discovery**: All search warrants (state or federal) executed regarding Individual A and his various locations or the locations owned by others, including but not limited to H. N., involving illegal activity which Individual A participated.  This includes Individual A's law firm, the marijuana cultivation sites in his warehouses, and locations pertaining to his credit card and bank fraud schemes.

**Law Supporting Production:** *Brady*, *Giglio*, Jencks Material; Due Process Procedures Act (General Ordre 21-2)**.**  These search warrants are discoverable under Rule 16 as material to the defense of the case and according to *Brady / Gigio* as impeachment material.

3.   **Requested Discovery** All charging (or agreements not to charge) documents (state or federal) and pleadings involving Individual A including, but not limited to charges relating to the August 23, 2018 plea agreement mentioned by AUSA Jeff Mitchell in the recorded interviews of Individual A.  This request includes production of all and complete investigative files involving Individual A including but not limited to his credit card / bank fraud schemes, his marijuana cultivations, bribery, campaign finance fraud, his participation in organized crime, drug sales, arson, tax violations, identity theft, immigration fraud, and all other known criminal investigations of Individual A's criminal conduct (including that

*DEFENDANT BABAK BROUMAND'S* <u>*REVISED*</u> *NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

16

summarized by agent Torbic in footnote one of his declaration for the criminal complaint. This request includes copies of the investigative files pertaining to the federal charges filed in the Information and plea agreement against Individual A pending before this Court.

**Law Supporting Production**: Brady, Giglio, Jencks Material; Due Process Procedures Act (General Order 21-2). These investigative files are discoverable under Rule 16 as material to the defense of the case and according to Brady / Gigio as impeachment material.

4. **Requested Discovery:** Defense access to inspect and review law enforcement database(s) to determine the content and login information for the databases searches allegedly queried by Mr. Broumand for Individual A as claimed in the First Superseding Indictment.

**Law Supporting Production**: Rule 16(a)(1)(E)(i) and (ii); Relevant Fed.R.Evid. 401. Although this is critical evidence and an element of the offense which must proven beyond a reasonable doubt, the government has refused this request. With the filed Protective Orders there can be no concerns of improper disclosure of the contents of defense counsel's review. This request is also supported under *Brady* and *Giglio* in that Individual A's claimed that the Ducati was given to Mr. Broumand in exchange for the database inquiry pertaining a member of the Qatar Royal Family, yet no such database inquiry exists.

5. **Requested Discovery**: All reports, documents, and recordings of all interviews as well as the criminal records pertaining to the individuals (B.B. and C.F.)  mentioned in the government's notice of 404(b) evidence. The defense also requests disclosure whether B.B. or C. F. are or have been government "sources" or "informants."

**Law Supporting Production**: *Brady*, *Giglio*, Jencks Material; Due Process Procedures Act (General Order 21-2).

6. **Requested Discovery**: Copies of Individual A's personal and company state and federal tax returns; this request includes Individual A's numerous companies and / or straw companies

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

17

(corporation, d/b/a/ or LLC) owned or operated by Individual A from 2012 to 2018.  This request disclosure of any federal or state tax investigations or prosecutions regarding Individual A or his companies as well as any agreements not to prosecute Individual A or his companies.

**Law Supporting Production**: *Brady*, *Giglio*, Jencks Material; Due Process Procedures Act (General Order 21-2).

**7.   Requested Discovery**: All FBI and any law enforcement agency reports, investigations, documents, emails, correspondence, memoranda, operations regarding efforts to identify, locate or obtain from Africa purportedly belonging to Mummar Gaddafi as mentioned in the government's 404(b) notice.

**Law Supporting Production**: *Brady*, *Giglio*, Jencks Material; Due Process Procedures Act (General Order 21-2).

**8.   Requested Discovery**: Defense access to inspect and review law enforcement database(s) to determine the content and login information for the databases searches allegedly queried by John Balian and Felix Cisneros for Individual A.

**Law Supporting Production**: Rule 16(a)(1)(E)(i) and (ii); Relevant Fed.R.Evid. 401.   the government has refused this request. Individual A was allegedly bribing Glendale Police Officer John Balian and Felix Cisneros for database information during the time period of this case.  Reviewing the database inquires by these individuals may show that Individual A received information from them that he now says was from Mr. Broumand. The discovery has shown Individual A to be contradictory, vague and evasive in his interviews with law enforcement. Accordingly, this is relevant *Brady* and *Giglio* impeachment material.

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

18

9. **Requested Discovery**: Disclosure of any government expert witness intended to testify at trial as well as the written summary of any testimony in full accordance with the Federal Rule.

   **Law Supporting Production**: Federal Rule of Criminal Procedure 16(a)(1)(G).

10. **Requested Discovery:** Disclosure of the names and job titles of all state and federal law enforcement officers or agents known to have associated with Individual A in a personal or professional relationship.

    **Law Supporting Production**: *Brady* and *Giglio* material.

11. **Requested Discovery**: Disclosure of FBI emails from January 1, 2012 to December 31, 2018 pertaining to: (a) Babak Broumand's UNET and Red Side (unclassified) emails; (b) emails concerning Babak Broumand from or to (1) Robert Bone, (2) Diana Race, (3) Michael Torbic, (4) Brian Adkins, and (5) Joe Rock. The government has produced some, but not all, of these UNET emails, and the prosecution has represented that the FBI is still continuing its review of its emails and awaiting the results for the release of discoverable emails through the FBI.

    **Law Supporting Production**: *Brady* and *Giglio* material.

## V.  **REQUEST TO CONTINUE THE TRIAL DATE**

Mr. Broumand was indicted in this case on June 12, 2020. (Dkt. #26). The government's discovery totals over 105,000 Bates Numbers and climbing. To guarantee Mr. Broumand's Constitutional Right to Counsel, additional time is needed to effectively prepare for trial. Mr. Broumand respectively requests that the trial date be continued to allow for this effective trial preparation.

## VI.     **CONCLUSION**

For the foregoing reasons, Mr. Broumand respectively seeks the relief requested herein.

*DEFENDANT BABAK BROUMAND'S <u>REVISED</u> NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

19

1

Respectfully submitted,

2

Dated: November 29, 2021

By: /s/ Steven F. Gruel_____

3

STEVEN F. GRUEL, ESQ.

Attorney for **BABAK BROUMAND**

4

5

6

7

8

9

10

11

12

13

*14*

15

16

17

18

19

20

21

22

23

24

25

*DEFENDANT BABAK BROUMAND'S* <u>*REVISED*</u> *NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND TO CONTINUE THE TRIAL DATE*

20

1                         **<u>DECLARATION OF STEVEN F. GRUEL</u>**

2         I, Steven F. Gruel, under penalty of perjury, declare and state as follows:

3       1.   I am an attorney licensed to practice law in California.  I have practiced law since 1985.

4 From 1987 to 2005, I served with the United States Justice Department.  From 1989 to 2005, I

5 served as an Assistant United States Attorney in the Criminal Division of the United States

6 Attorney's Office in the Northern District of California (USAO).  My tenure at the USAO included

7 serving as Chief of the Major Crimes Section and Acting Chief of the Organized Crime Strike

8 Force.

9       2.   I represent defendant Babak Broumand in the above captioned matter. Mr. Broumand served

10 as an FBI Special Agent from 1999 to 2019. His responsibilities included developing sources for

11 intelligence and gathering intelligence in the counter-terrorism section of the FBI.

12       3.   Attached hereto as Exhibit A is a true and correct copy of the first 3 pages of the filed

13 criminal complaint in this case. (Dkt. # 1).  FBI Special Agent Michael Torbic in footnote 1

*14* provided a general summary of Individual A (referred to a CW 1 in the complaint) criminal activity

15 and cooperation with law enforcement.

16       4.   Attached as Exhibit B is a true and correct copy of the Central District of California March

17 8, 2021, General Order 21-02 regarding the Federal Rule of Criminal Procedure 5(F) and The Due

18 Process Protections Act assuring that "In all criminal proceedings, the prosecutor is ordered to

19 comply with the disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its

20 progeny."  The General Order specifically states that "In all criminal proceedings, the prosecutor is

21 ordered to comply with the disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963),

22 and its progeny and is reminded of the possible consequences of not doing so, including exclusion

23 of evidence, adverse jury instructions, dismissal of charges, contempt, referral to a disciplinary

24 authority, and sanctions."

25                        *Declaration of Steven F. Gruel*

5.   Since Mr. Broumand's arrest on April 24, 2020, on a criminal complaint, the government has produced discovery in a rolling manner in 13 productions. The government's discovery totals 105,721 Bates Numbered pages.  The last production was 5 days ago on November 24, 2021. Since the September 27, 2021 Court hearing, 2 discovery productions occurred totaling 20,974. The government has represented that more discovery is forthcoming.

6.   Attached hereto as Exhibit C is a true and correct copy of my May 27, 2020 First Discovery Letter to the prosecution in this case.  This letter and all the attached letters have Individual A's name redacted in this filing.

7.   Attached as Exhibit D is a true and correct copy of my November 24, 2020 letter (with redactions of Individual's A's identity) entitled *Request for Follow-up Discovery*.  The letter relied upon the Due Process Protections Act of 2020 as further support for discovery.

8.   Attached hereto as Exhibit E is a true and correct copy of the first 3 pages (because pages 4 to 6 may include references to classified information and hence not produced here) of my March 15, 2021,discovery Letter specifically requesting ongoing disclosures by the government.

9.   Attached as Exhibit F is a true and correct copy of my March 24, 2021 letter which directly Seeks Brady and Giglio material regarding federal charges filed in the Central District against Individual A.

10. Attached hereto as Exhibit G is a true and correct copy my March 29, 2021 discovery letter seeking emails pertaining to Babak Broumand.

11. Although the prosecution has been cooperative in working with defense counsel regarding discovery, upon my review of the certain. it is clear that relevant discovery which exists has not been provided. I have listened to audio recordings of interviews of Individual A who is cooperating with the prosecution.  The first recording was made on December 18, 2018 (just 13 days after law enforcement executed 3 search warrants on locations associated with Mr. Broumand).  I heard

*Declaration of Steven F. Gruel*

several AUSAs and law enforcement agents on the recordings. Among other things, I learned that Individual A's law office was searched; that he signed a cooperation plea agreement dated August 23, 2018; that he was involved in several marijuana cultivations; that he was involved with someone engaged in arson; that he was involved with organized crime; and that he and H. N. were involved in a credit card bank fraud scheme which may have resulted in search warrants and criminal charges. I learned that Individual A was interviewed several times by law enforcement before the December 18, 2018 recorded interview. In fact, one of the AUSAs, possibly Jeff Mitchell, confronted Individual A regarding his lack of candor and mentioned the August 23, 2018 plea agreement as requiring complete and truthful answers.

12. I have requested and not received the information summarized in the above motion and this Declaration.  I believe this to be *Brady* and *Giglio* material relevant to impeaching Individual A. Moreover, the information is clearly known by and in the possession of the prosecution team given that they are the confronting Individual A with these materials.

13. The government claims that Mr. Broumand improperly accessed law enforcement databases and then provided Individual A with information from those inquires. The discovery does not include any information establishing or describing the any alleged log in by Mr. Broumand or the information he allegedly reviewed.  This discovery request is relevant in not only disputing the government's charges, but directly relevant to an element of the offense – that is Mr. Broumand violated a duty in exchange for a thing of value.

14. Individual A bribed federal HSI agent Felix Cisneros and Glendale Police Officer John Balian around the same time he knew Mr. Broumand.  It is believed that Individual A participated in bribing Cisneros and Balian to conduct law enforcement data base inquires for information. It is relevant to Mr. Broumand's defense to know when these 2 law enforcement officers conducted any illegal database inquires and what Individual A learned from those inquires.

*Declaration of Steven F. Gruel*

1  I declare under penalty of perjury under the laws of the United States that the foregoing is true and

2  correct, and that this declaration is executed this 29th day of November 2021, in San Francisco,

3  California.

4                                        /Steven F. Gruel
                                         STEVEN F. GRUEL
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25