TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Acting Deputy Chief, Public Corruption and Civil Rights Section
MICHAEL MORSE (Cal Bar No. 291763)
Assistant United States Attorney
General Crimes Section
    1500/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6077/7367
    Facsimile: (213) 894-0141
    E-mail:   ruth.pinkel@usdoj.gov
                Michael.Morse@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00224(A)-RGK |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT; OR IN THE ALTERNATIVE, AN ORDER COMPELLING DISCOVERY AND CONTINUING TRIAL DATE (DKT. 88); DECLARATION OF RUTH C. PINKEL; EXHIBITS |
| v. | |
| BABAK BROUMAND, | |
| Defendant. | |
| | Date: December 27, 2021 |
| | Time: 1:30 p.m. |
| | Location: Courtroom 850 Roybal Federal Building |
| | [UNDER SEAL DECLARATION AND EXHIBITS FILEDS SEPARATELY] |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel and Michael Morse, hereby files its opposition to "Defendant's Motion

To Dismiss First Superseding Indictment; Or In The Alternative, An Order Compelling Discovery And Continuing Trial Date" (Dkt. 88).

    This opposition is based upon the attached memorandum of points and authorities, the Declaration of Ruth C. Pinkel, including under seal portions concurrently filed under seal, and attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 6, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

   /s/ Ruth C. Pinkel
RUTH C. PINKEL
MICHAEL MORSE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Eight weeks before trial, while constantly expanding his discovery demands, including discovery first requested in this motion (Items 5, 6, and 10), overlooking discovery already produced, and discovery the government said it will provide (Ex. 1 (letter) at 3, 6-7), defendant demands dismissal or continuance. Defendant's motion is meritless and wastes this Court's resources.

Although he complains of "an ongoing river of discovery" (mot. at 5), the quantity of discovery produced bears a direct relationship to defendant's continual, and continually changing demands. Defendant's ever increasing demands are surely a tactic aimed at both a desire to make the government "go away" and to manufacture a discovery dispute. Discovery letters attached to the motion provide a perfect representative sample of just a two-week span in March 2021, when his requests ballooned from 17 civil discovery-type interrogatory and/or document requests to 67. (See Ex E-G; see also Ex. 1 (Nov. 8, 2021 letter response to defense regarding 20 additional requests).)

While objecting to these demands, and without waiving objections, the government has nonetheless attempted to accommodate defendant in a reasonable manner. For example, in the government's production of over 105,000 pages thus far, defendant has received full discovery of information from the companion Cisneros case (CR 21-51(A)-RGK) and other matters outlined in the Pinkel Declaration.[1]

---

[1] Page numbers are increasing because telephone, casino, and financial records, many related to Cisneros, are produced via long spreadsheets, with multiple tabs. Each tab must be converted to pdf in a time-consuming process for bates numbering/proof of production.

(Pinkel Dec. ¶¶ 5-6.)  There are not large gaps in Brady, Giglio, or Jencks discovery left to produce.  While the directly relevant reports have been produced, the government said it would produce more, which are primarily on collateral matters, thus not technically Jencks. (Ex. 1, response to Items 4-5, 13-14.)  Other specific issues are addressed in Section III, below.

With respect to his March 29, 2021 request for internal communications of large numbers of FBI agents (to which he later added names of Southern California FBI agents he met in 2012) (Ex. G, at 3-5), the government objected to this overbroad, irrelevant request, but nonetheless, in good faith, made great efforts to comply, albeit with the proviso only discoverable information would be produced.  Perhaps not surprising to defendant who may have wished it to be so, this effort has taken considerable time.  The process began with many agents recruited to review documents, which were later culled, reviewed repeatedly, and then put through a multi-level FBI internal approval process.  (Pinkel Dec. ¶ 4.)  Nonetheless, this process is almost complete and will not result in a large number of discoverable documents.

Nor is it true that the government has had years to investigate this case and prepare discovery.  (Mot. at 10-11.)  The grand jury investigation only began in August 2018, with DOJ-OIG and IRS. (Pinkel Dec. ¶ 2.)  The FBI joined the investigation in October 2018; search warrants were executed on defendant's home and two business locations only two months later.[2]  (Dkt. 1 n.5.)  Defendant's Northern District arrest occurred just fifteen months later, after

---

[2] Two teams of FBI agents traveled from Los Angeles and IRS Agents traveled from Modesto for the warrant execution.

2

extensive investigation, two months into widespread pandemic lockdowns.

**II.  LEGAL STANDARD**

    **A.  Local Rule Meet and Confer Requirements**

Defendant failed to comply with the local rule meet and confer requirements.  See Local Civ. Rule 7-3; Local Crim. Rule 57-1 (requiring a meeting, "preferably in person," to "thoroughly" discuss the substance of any motion and any potential resolution "at least" seven days prior to filing the motion).  Instead, on the afternoon, of November 30, he emailed the government to say he would be filing a "discovery motion."  Not only did defendant fail to comply with the letter and the spirt of the Local Rules, but at least three of his "Specific Discovery Requested," were requested for the very first time in the motion.

    **B.  Discovery**

"There is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  There are three sources of the government's discovery obligations in a criminal case.  First, Federal Rule of Criminal Procedure 16 ("Rule 16") establishes guidelines for pretrial production by the government of certain limited materials.  Second, under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including Giglio v. United States, 405 U.S. 150 (1972), the government must turn over to the defense evidence in its possession that is exculpatory or favorable to the defendant.  Finally, under 18 U.S.C. § 3500 (the "Jencks Act") and Federal Rule of Criminal Procedure 26.2 ("Rule 26.2"), both parties must disclose prior statements by witnesses after the witness has testified.  None

of these sources authorize "fishing expeditions" or sweeping discovery requests. See United States v. Bagley, 473 U.S. 667, 675 (1985).

Defendant bears the burden to make a threshold showing of materiality and show why the requested material is logically helpful to the defense. United States v. Lucas, 841 F.3d 796, 804 (9th Cir. 2016) ("prima facie" showing of materiality required; "neither a general description of the information sought nor conclusory allegations of materiality suffice" (internal quotation marks and citation omitted)); United States v. Muniz-Jaquez, 718 F.3d 1180, 1183-84 (defendant must establish how the information is helpful for developing a defense) (citing United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010), and United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990)).

In establishing materiality, the defendant must do more than specify the items he is seeking, since materiality is "not satisfied by a mere conclusory allegation that the requested information is material to preparation of the defense." United States v. Cadet, 727 F.2d 1453, 1466 (9th Cir. 1984) (quoting United States v. Conder, 423 F.2d 904, 910 (6th Cir. 1970)) (defendant's discovery request that sought documents the government did not intend to use at trial was too far ranging and potentially burdensome); see also United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013) ("general descriptions of information sought and conclusory allegations of materiality are insufficient"). Even if the defendant has never seen the requested documents, a concrete showing of materiality is still required. United States v. Ross, 511 F.2d 757, 763-64 (5th Cir. 1975). To make that concrete showing of materiality, a defendant

must demonstrate that the evidence would "alter the quantum of proof" in the defense's favor. United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976).

"[M]aterial to preparing the defense" in the Rule 16 context "means the defendant's response to the Government's case-in-chief." United States v. Armstrong, 517 U.S. 456, 462-63 (1996) (defendant not entitled to Rule 16 discovery to support his pretrial motion to dismiss based on selective prosecution). The plain language of Rule 16 makes clear that the term "defense" does not include "any claim that is a 'sword,' challenging the prosecution's conduct of the case," but rather "encompasses only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." Id. at 462. The Ninth Circuit has additionally held that general descriptions and conclusory arguments are insufficient to show materiality. Marshall, 532 F.2d at 1285. In Brady, the Supreme Court expanded the materiality requirement by requiring the disclosure of evidence that is material to guilt or innocence. Brady, 373 U.S. 83. A Brady claim cannot be based on "mere speculation." Wood v. Bartholomew, 516 U.S. 1, 6 (1995).

Significantly, there is no constitutional requirement for "the prosecution to make a complete accounting to the defense of all evidence in its possession." United States v. Baxter, 492 F.2d 150, 173 (9th Cir. 1973) (citing Moore v. Illinois, 408 U.S. 786 (1972)). Neither is there a right of the accused to rummage through government files. United States v. Williams, 580 F.2d 578, 585 (D.C. Cir. 1978).

**III. ARGUMENT**

    **A.   Defendant Received Extensive Discovery Regarding Individual A (Specific Items 1-3)**

        1.   <u>The Government Has Obtained and Produced Substantial Discovery</u>

As set forth in prior oppositions, the government has obtained and produced substantial discovery to the defense. (Pinkel Dec. ¶¶ 4-6.) While the bulk of Jencks statements, and Brady/Giglio have been produced, the government said it would produce additional items within its knowledge and possession. (Ex. 1, response to Items 4-5, 13-14.)

His claims to the contrary, defendant has a wealth of impeaching evidence, which he implicitly recognizes with his laundry list of Individual A's misdeeds. (Mot. at 16.) While defendant's list may be indicative of questions or topic areas inquired of with Individual A, it does not mean that investigations exist for each topic.

The August 2018 plea agreement, with this office, was supplanted by a much less favorable plea agreement, with increased exposure. It will be of little value to defendant, but the government nonetheless will produce it.

        2.   <u>Defendant Long Ago Received Discovery of the Cell Phone Seized by Detective Pritchard</u>

One year ago, defendant received full notice and discovery of the FBI's obtaining and searching contents of the cell phone seized by Detective Pritchard. (Ex. 3 (referring to Det. Pritchard.))

    **B.   Defendant Received Discovery About the Muammar Gaddafi Money (404(b) Evidence), the Existence of Which He Revealed to Individual A When Requesting the Use of Individual A's Private Jet (Item 7 & 5)**

Five days after the Court denied his motion to compel Rule 404(b) evidence (Dkt. 81), defendant sought another bite at the apple

6

over 404(b) evidence already produced. Defendant seeks discovery about efforts to locate or obtain from Africa money purportedly belonging to Muammar Gaddafi. (Item 7.) Not only was this the subject of a prior motion, but the government produced to defendant four months ago the information it had, including his own written reports. (Ex. 3 (discovery index).)

The Gadaffi information evolved into yet another side hustle (personal) to defendant's work as an FBI agent. Defendant's "investigation" was "shut down" by his supervisor, but defendant told Individual A, whose private jet defendant proposed to use to retrieve the money and split it with Individual A. (Dkt. 1; Ex. 4 ¶¶ 71-73 (Complaint) and (interview report FBI Supervisor.)

In another instance of defendant first requesting information via this motion, he demands many items, including interview reports and "criminal records," regarding BB and CF, individuals with whom defendant engaged in 404(b) conduct. (Item 5.) Defendant has failed to set forth any materiality for this request. Moreover, the government does not intend to call defendant's associates as trial witnesses; the government expects to prove the non-Gadaffi 404(b) evidence through defendant's own text messages and emails, thus the requested information is not relevant.

### C. Defense Counsel Cannot Access Confidential Government Databases (Items 4 & 8)

Defendant has established no basis for his counsel's personal access to and inspection of confidential law enforcement databases. (Mot at 17-18; Items 4, 8.) When defense counsel asked for personal access to inspect government databases via email on October 27, the government explained that it should not be a "surprise" to him that

7

he could not.  (Ex. 1 at 1 (Nov 8, 2021 letter.)  The government directed counsel to discovery where database audits had been produced (id. at 2-3; citing bates 75,981-76,261), and stated it was awaiting the release from the FBI of additional data regarding Broumand's improper database searches, which just arrived.[3]  (Id. at 7.)

A request for a personal inspection of law enforcement databases is without authority, and must be denied.  At trial, any argument defense counsel chooses to make about the databases search results, would at best go to weight rather than admissibility.

### D. Defendant Never Previously Asked for Individual A's Personal and Corporate Tax Returns and In Any Event Is Not Entitled to Them (Item 6)

With no prior request, no authority, no effort to demonstrate materiality to developing an actual defense as trial, defendant demands the personal and corporate tax returns of Individual A. (Mot. at 17; Item 6.)  The request should be denied.

As a former federal prosecutor, defense counsel most assuredly would know tax records fall into a very special category, especially in this situation.  Defense counsel's fishing expedition is prohibited both by 26 U.S.C. § 6103, et seq., and the rules of discovery.  Unlike other documents, tax returns are generally shielded from discovery pursuant to the confidentiality protections enacted by Congress in Section 6103.  Beyond that, the general rules of discovery apply.  Information is only discoverable to the extent it falls within the ambit of Rule 16, Brady/Giglio, or the Jencks Act and Rule 26.2.  Particularly in light of the congressional mandate in Section 6103, the government cannot obtain and disclose an

---

[3] The information was received at the U.S. Attorney's Office on December 6 for discovery processing.

individual's tax returns unless defendant satisfies his burden of demonstrating materiality and a court orders the production. Moreover, a criminal prosecutor can only obtain tax returns under limited circumstances, not present here, as part of a tax investigation of that person, or pursuant to an ex parte application, neither of which applies to Individual A in this case.

### E. Defendant Cannot Demand A List of Names and Job Titles of Law Enforcement Who Associated with Individual A (Item 10)

Defendant demands for the first time in this motion "[d]isclosure of the names and job titles of all state and federal law enforcement officer or agents know to have associated with Individual A in a personal or professional relationship." (Mot at 10; Item 10.) Aside from his failure to meet and confer, the government's discovery discloses names of which the government is aware. No rule requires the government in a criminal case to list out for defendant, as if in response to a civil Interrogatory, information available in the discovery. This request should be denied.

### F. Request for Expert Witness Disclosure is Premature and Improper (Item 9)

Defendant cites no authority requiring the government to provide this information a full eight weeks before trial. The government is still preparing for trial. When a determination is made about expert testimony, defendant will be given timely notice.

### G. Defendant Has Never Established Materiality Nor His Entitlement to All Emails Since 2012 for Himself and Five Other FBI Agents (Item 11)

While conceding the government has produced internal FBI emails and represented that more were awaiting approval and release from the FBI (Mot. at 19), defendant contends this entitles him to move to

9

dismiss the indictment or compel discovery. Defendant has requested vast amounts of largely irrelevant, non-discoverable information including all of his own internal communications since 2012, and for a host of FBI agents, who are either investigating him (Torbic, Rock), whose corruption case against Cisneros he obstructed (Adkins; Cisneros I) or the FBI Los Angeles Counter-Intelligence supervisors circa 2012 (Race and Bone). The government has repeatedly objected to this overbroad request which seeks information that is not discoverable, but has also said repeatedly that it will provide discoverable information. (Ex. 1 at 3.) There is no basis to compel.

**IV.  DISMISSING THE INDICTMENT, COMPELLING DISCOVERY OR CONTINUING THE TRIAL ARE UNWARRANTED**

Defendant's claims of a "large gap of highly relevant Brady, Giglio, and Jencks" falls flat. The government has and will continue to comply with its discovery obligations. Dismissal of the Indictment is unwarranted. Similarly, the motion to compel discovery and continue the trial, is a thinly-veiled attempt to manufacture discovery disputes to cause delay, and should be denied.