STEVEN F. GRUEL (SBN213148)
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Phone: 415-533-6973
Email: attystevengruel@sbcglobal.net
www.gruellaw.com
Attorney for BABAK BROUMAND

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | Case Number: CR-20-224-RGK |
| Plaintiff, | ) ) ) | |
| | ) ) ) ) ) ) ) ) ) ) ) ) ) | **DEFENDANT BABAK BROUMAND'S DISCOVERY MOTION AND <u>MEMORANDUM IN SUPPORT</u> REQUESTING (1) SCHEDULING CIPA DISCOVERY HEARING; and DISCOVERY OF: (2) OTHER INVESTIGATIONS OF BABAK BROUMAND; (3) UNDISCLOSED *BRADY* MATERIAL; and (4) MISCELLANEOUS ITEMS** |
| | ) ) | – and – |
| | ) ) ) | **SUPPORTING DECLARATION OF STEVEN F. GRUEL** |
| | ) ) ) | **HONORABLE R. GARY KLAUSNER** |
| v. | ) ) ) | **HEARING DATE: August 8, 2022<br>TIME: 9:00 a.m.** |
| BABAK BROUMAND, | ) ) | |
| Defendant. | ) ) ) | |
| ―――――――――――――――――― | ) | |

*DEFENDANT BABAK BROUMAND DISCOVERY MOTION*

1

Defendant, BABAK BROUMAND, by and through his counsel, Steven F. Gruel, hereby respectfully submits this DEFENDANT BABAK BROUMAND'S DISCOVERY MOTION AND MEMORANDUM IN SUPPORT FOR DISCOVERY PERTAINING TO: (1) SCHEDULING CIPA DISCOVERY HEARING; and (2) OTHER INVESTIGATIONS OF BABAK BROUMAND; (3) UNDISCLOSED *BRADY* MATERIAL; and MISCELLANEOUS ITEMS.

## I. **DEFENSE DISCOVERY MOTION**

### A. **Summary of Relevant Facts**[1]

Discovery in this case is nearly 500,000 Bates Numbered materials consisting of reports, interviews, records, documents, audio recordings and photographs. The government's discovery has been produced over time in 23 separate productions stretching to the last production on May 5, 2022. Mr. Broumand's first discovery motion was before the Court on January 7, 2022, and could only pertain to the discovery, or lack thereof, as it existed at that time. Dkt. #104. The focus of this discovery motion is a follow-up to the stream of discovery production up to May 5, 2022.[2]

To be clear, because of potential classified information requested therein, this discovery motion was first filed on April 15, 2022 in accordance with the procedures under the Court's protective orders and CIPA. Dkt. #122. In that pleading, the defense requested that the discovery motion be heard on May 9, 2022 at the scheduled CIPA hearing. The May 9, 2022, CIPA hearing, however, did not take up that pending discovery request. Nonetheless, the prosecution informed defense counsel that any non-classified information should not be part of that discovery motion filed under CIPA.

---

[1] These facts are from the record of proceedings in this case as well as direct references to the Bates Numbers from the government's discovery.

[2] For example, the following discovery productions occurred on the following dates: December 28, 2021 Production #16 (Bates Numbers 476,545 – 477,327); and February 9, 2022 Production #17 (Bates numbers 477, 328 – 478,403). On May 5, 2022, the prosecution provided several discovery production up to and including Production #23 covering Bates Numbers 478,404 to 491,113).
.

Thus, this instant motion involves *only* those portions of the April 15, 2022 motion not involving classified information. The discovery motion for classified information remains pending and the defense respectfully requests that it be heard along with CIPA Section 6 hearing which has yet to be scheduled. Dkt. # 133. Furthermore, while the parties have made efforts to identify and resolve defense discovery follow-up requests, this has resulted in a continued stalemate. The defense respectfully submits this discovery motion.

In brief, the following specific items of follow-up discovery are relevant to the defense against the charges in the First Superseding Indictment (FSI). There should be no dispute that all the following requests are not only relevant under Evidence Rule 401, but also must be produced as *Brady* Material. Any volunteer production by the government of these materials before the August 8, 2022, hearing will obviate the need to litigate that discovery request.

II.  **SPECIFIC DISCOVERY REQUESTS**

**A.   Defense Request that the April 15, 2022 CIPA Discovery Motion
        Be Set For Hearing Along With The CIPA Section 6 Hearing**

As we know, the government claims that former FBI national security division Special Agent Babak Broumand's 2015 - 2016 intelligence gathering from "Individual A" was a bribery scheme. In numerous law enforcement interviews spanning several years up to mid-2019, Individual A always explained to agents and prosecutors that his relationship with Mr. Broumand was one of friendship; and, since he knew Mr. Broumand was an FBI agent responsible for gathering national security intelligence, he would routinely provide Mr. Broumand with names and information. Broumand, as was his practice, would in turn "run" these names and information in the FBI database. Furthermore, as was his practice, Broumand would then share some of Individual A's information with other FBI agents and the intelligence community.

Individual A then abruptly changed his story about Mr. Broumand. After years of interviews, this relationship suddenly altered into a bribery scheme. On the word of Individual A, a convicted organized crime associate, con-man and disgraced attorney, the prosecution alleges

that the names and information provided by Individual A to Mr. Broumand was a scheme to protect Individual A.  The prosecution contends that Mr. Broumand's database inquiries and official communications with the intelligence community were elaborate efforts to conceal the true nature of the relationship.   Without question, the prosecution has squarely placed Mr. Broumand's methods and practice, certainly as it relates to his previous official communications and database inquiries, into question.

On April 15, 2022, the defense filed his pending CIPA-related discovery requests.  Dkt #122.  Because the case has proceeded to a CIPA Section 6 proceedings, the defense respectfully requests that his discovery request for classified information outlined in that April 15, 2022 defense CIPA discovery motion be heard on the date eventually set by the Court for the CIPA Section 6 hearing.

**B.  Specific Non-Classified Requests Related To Other Investigations of Babak Broumand**

Among the 500,000 items of discovery, the defense learned that there was at least one (1) prior official declination of a prosecution request of Babak Broumand for allegations stemming from this case; (2) at least another active FBI Operation called "*Border Skirmish*" targeting Babak Broumand; and (3) the possible use of secret investigative techniques employed under the Foreign Intelligence Surveillance Act (FISA) against Broumand.  Defense follow-up discovery requests relating to these salient revelations remain denied by the government.

    **1.  Request for the Previous Declination to Prosecute From The United States Attorney's Office in The Northern District of California**

Buried deep in the discovery was a single comment from a disgruntled Los Angeles FBI Agent that a previous prosecution referral pertaining to Babak Broumand regarding aspects of this case was declined by federal prosecutors in the Northern District of California.  On September 11, 2018, FBI case agent Michael Torbic received a copy of a "referral" written by FBI SA Brian

Adkins. BN 477242.  SA Adkins was a witness in the recent Felix Cisneros trial and a likely witness in this case.  Adkins wrote in his 2018 referral that he learned that Department of Justice – Office of Inspector General presented a prosecution memo concerning Babak Broumand to the United States Attorney's Office (USAO) for the Northern District of California and it was declined for prosecution. Adkins complained that the USAO declined to prosecute because the amount of an unreported $30,000 loan from Individual A to Broumand was considered too small an amount. BN 477079.

Upset with the San Francisco federal prosecutors' sound decision not to charge the case, Adkins further gripped that it "shocked the conscience" that Broumand was also promoted as the San Francisco FBI office coordinator of confidential human sources (CHS).  Adkins disparaged Mr. Broumand by claiming in writing that as the new San Francisco FBI coordinator for sources in Francisco, Broumand now placed them [human sources] at risk. BN 477080.  Adkins' inflammatory "referral" displays an extreme deep-rooted bias, hatred and jealousy of Mr. Broumand. This is basic cross-examination material of a witness which should be provided to the defense so as to effectively examine agent Adkins.

The defense seeks copies of the relevant prosecution declination prepared by the USAO in the Northern District of California.  Interestingly enough, after the $30,000 loan by Individual A to Broumand was declined for prosecution by federal prosecutors in the Northern District of California, Individual A changed his description of the loan to a "bribe."  Not only is this a glaring contradiction, but the formal declination to prosecute likely served as the reason Individual A was then compelled to now change the loan to Mr. Broumand into a "bribe."  Armed with the new version of the $30,000 "bribe," the prosecution charged Mr. Broumand with overt Act 18, Count 3, Count 5 and a Forfeiture Allegation in the First Superseding Indictment.  To get around the San

Francisco federal prosecutors' decision not to prosecute Mr. Broumand, Individual A needed to change the $30,000 to Broumand from a loan to a "bribe;" next, the Los Angeles FBI needed to look elsewhere and re-present the case to prosecutors in Los Angeles, not San Francisco.

In sum, Adkins's derogatory remarks in direct response to a previous federal prosecutor's decision not to prosecute Mr. Broumand for his relationship with Individual A scratches the surface of what further may exist with this official prosecution declination.  At a minimum, the defense should have access to review this previous declination to determine what other *Brady* material is contained therein which the prosecution has not properly shared with the defense.

### 2. Request for All Documents Relating to Operation "Border Skirmish" – An Undisclosed Investigation of Babak Broumand

Another enigma surfaced buried in 500,000 pages of government materials.  The defense uncovered that the government had two (2), possibly three (3) investigations regarding Babak Broumand. The Los Angeles federally indicted case is called "Bad Apple."  However, painstaking review of the mountain of discovery revealed yet another FBI investigation regarding Mr. Broumand entitled operation "*Border Skirmish.*" The lead agent in *Border Skirmish* appears to be Los Angeles FBI intelligence supervisory agent Diana Peternell Race.  The defense first learned, in a much later production, that on July 28, 2020, SA Race emailed LA FBI SA Samuel Whitman to interview other FBI agents about Broumand.  BN 477123.

The discovery further reveals that SA Race too has a deep-rooted bias against Broumand dating as far back as 2012 regarding an in-house FBI dispute between the Los Angeles and San Francisco field offices.  In fact, when interviewed on October 19, 2016, by federal investigators about Broumand, Race told interviewing agents that she believed Broumand acted improperly regarding confidential informants in 2012 in the Los Angeles FBI office area. Race was upset that there were no repercussions for Broumand and claimed that it had been "swept under the carpet."

The mystery surrounding SA Race's long-standing fixation and rogue investigation of Mr. Broumand is further complicated in that she, according to her LinkedIn page, is 10-year supervisor focusing on national security, counterintelligence and counterproliferation. The defense requests as *Brady* material all reports and materials pertaining to Operation *Border Skirmish*. In fact, given SA Race's background, it is extremely likely that *Border Skirmish* involved a FISA technique.

### 3. Requests For Any FISA Surveillance Techniques Used Against Broumand

Generally speaking, the Foreign Intelligence Surveillance Act (FISA) allows for procedures to gather or intercept information without the normal safeguards used in Title III wiretaps or search warrants. Because of Broumand's sensitive national security position with the FBI, together with the fact that counterintelligence supervisory agent Diana Race had an active counterintelligence investigation called "*Border Skirmish*" opened in 2020 with Broumand as the target, it appears plausible that some sort of FISA investigative technique, such as wiretaps, may have been used against Broumand.

Indeed, while the events of the government's prosecution occurred in 2015 to 2016, the discovery indicates that an investigation was occurring well beyond the dates of Broumand's database inquiries. In fact, well after the Broumand's dealings with Individual A, the government watched Broumand at three locations with pole cameras for nearly half a year (from October 30, 2018 to March 21, 2019). BN 23801 – 23802. In fact, the government even watched Broumand for nearly 3 months *after* he retired from the FBI. Additionally, the FBI surveilled Broumand and his family numerous times in Tahoe in October and November 2018.

These above investigative steps may have been spurred by several groundless allegations by Individual A regarding Broumand and national security. For instance, without anything more, Individual A claimed on October 4, 2019, that Broumand once said he had the ability to remove

Iranians from the terrorist watchlist. BN 69535. He also claimed that Broumand once suggested starting a company that sold intelligence gathered as an FBI national security agent. BN 69524.

In an effort to foreclose the concern of an unwarranted FISA targeting of Broumand, the defense invited the prosecution to simply represent that no such targeting occurred. The government elected not to make such a representation. Instead, the prosecution stated that no FISA Notice was warranted in this case. Gruel Declaration, paragraph 3. The government's "tight-lipped" response was crafted apparently to merely convey that no prosecution evidence in this criminal case is derived from a FISA technique. However, if a FISA method was used against Broumand, the defense has the right to at least review the documents supporting the application and the results therefrom. If a FISA wiretap was used against Mr. Broumand, he would be entitled to the statements of the defendant under Rule 16(a)(1)(A) – *Defendant's Written or Recorded Statement*. Broumand again makes that request for disclosure of all of his statements.

**C. Requests Related to Other *Brady* Material Regarding Individual A**

Because of Individual A's long-time involvement in organized crime, there is wide scope *Brady* material encompassing numerous state and federal investigations and prosecutions. Many times, although law enforcement was aware of Individual A's vast criminal activity, he escaped prosecution. For example, not only was he involved with Armenian Organized Crime, but he had an active and uncharged role with the Mexican Mafia.

       1. **Request Regarding Individual A's Role With A Mexican Mafia Leader**:

In June, 2016 a violent street gang associated with the Mexican Mafia was indicted by the Los Angeles United States Attorney. *See Gruel Declaration; June 14, 2016 Press Release attached as Exhibit 1*. The lead defendant in this 35-count indictment naming 51 gang defendants was a Mexican Mafia "shotcaller" named Jose Loza a/k/a "Cartune." The 147-page RICO

indictment including allegations of drug trafficking, extortion, violence, murder and the attempted murder of a detective with the Whittier Police Department. Here, in the discovery, the defense learned that while "Cartune," the Mexican Mafia "shotcaller" was in custody on the RICO charges, Individual A repeatedly visited him in custody. On October 15, 2019, Individual A first admitted to law enforcement that when visiting in jail he would pass on messages from Cartune. The FBI 302 report about this relevant criminal activity was completely concealed and "**REDACTED**" by the FBI.  Overlooked was that the accompanying FBI proffer audio recording had not been erased in this section.  Not only was Individual A not charged for passing along information for an incarcerated organized crime federal inmate which constitutes *Brady* material, but the FBI deliberately redacted this evidence in the written discovery to the defense. Therefore, the defense requests all prison / jail recordings and logs of Individual A's meetings with Jose Loza a/k/a Cartune; any recordings of conversations between them; and all law enforcement investigative materials pertaining Individual A's visits with Loza.

### 2. Request Access to Sealed Brady Documents Filed in Individual A's Federal Case

The government is prosecuting Individual A in a case before this Court.  While he pled guilty over 2 years ago, he remains unsentenced.  His sentencing date has been postponed several times.  The PACER docket sheet for this case shows numerous under seal filings by the government. The defense requests access to these underseal filings in accordance with *Brady* and for trial cross-examination.

### D. REQUESTED MISCELLENEOUS ITEMS

The following materials are either requested under Rule 16, Brady, or are materials the government agreed but have yet to provide:

1. Several months ago, the government agreed to provide clarification of several terms or

phrases submitted by the defense which are seen in the FBI audit of Mr. Broumand's access to the FBI database called Sentinel. The defense appreciates this gesture but the government has yet to provide the clarification;

2. Any recordings and transcripts of Babak Broumand's jail telephone calls while in pretrial detention in this case;

3. Photocopies of the Babak Broumand's FBI authorized credentials and California Drivers License in Broumand's alias names;

4. Reports of any government or FBI "source assessments" of Individual A as it pertains to his veracity and credibility;

5. A complete copy of the San Francisco FBI audit of Babak Broumand's source files as directed by SAC Jack Bennett. BN 477092 – 477093;

6. Individual A's phone records for 2017 to 2020;

7. Any reports regarding retired LA Sheriff Detective John Pritchard informing law enforcement that he was contacted by a defense investigator;

8. Please furnish unredacted copies of the following reports so that the defense can fully comprehend the following reports marked as Bates Numbers: BN 11182 – 11187; BN 11197 – 11199; BN 11212 – 11213; and BN 11210 – 11211;

9. All interviews of FBI ASAS Robert Bone described in BN 477226, 477082-083.

Respectfully Submitted,

Dated: July 6, 2022         /s/_STEVEN GRUEL____
                            Steven F. Gruel, Esquire
                            Attorney For Babak Broumand

## SUPPORTING DECLARATTION OF STEVEN F. GRUEL

I, Steven F. Gruel, under penalty of perjury, declare and state as follows:

1. I represent defendant Babak Broumand in the above captioned matter. Mr. Broumand served as an FBI Special Agent and was responsible for gathering information regarding national security from 1999 to 2019.

2. The facts contained in this motion for discovery are based upon either my personal knowledge or from my review of the government's discovery in this case. The Bates Numbers referenced within the motion are the numbers from the government's discovery in this case.

3. I have reason to believe that FISA may have been used by the government as a method to investigate Babak Broumand. It appears that the government targeted and watched Broumand well after he retired from the FBI in early January 2019. The discovery indicates that Individual A may have told the FBI that Broumand was a national security threat in offering to take people off of a "watch list" and offering to sell intelligence information. This "information" may have been used by the government as a predicate for a FISA application. I asked the government for discovery relating to any FISA investigation of Mr. Broumand. I was told, in essence, that no FISA Notice was given to the defense or necessary because there was no government evidence in this case which was derived pursuant to FISA. My request for denial or acknowledgement of a FISA investigation targeting Babak Broumand remains unanswered.

4. Bates Numbers USAO 00069540 to 00069542 is a FBI 302 of a proffer statement by Indiviudal A wherein he admits passing on messages for a Mexican Mafia leader named Jose Losa a/k/a Cartune has been redacted. Also, on the last page of the FBI 302, Individual A mentions several Secret Service agents and LAPD officers who worked for Levon Termendzhyan as well as that Termendzhyan claimed he had people working for him in the United States Embassy in Istanbul.

6. Bates Numbers USAO 00477077 to 00477080 which is a Referral composed by LA FBI agent Brian Adkins. At Bates Number 00477079, Adkins mentions that a previous prosecution referral associated with this case was considered and declined by the United States Attorney for the Northern District of California.

7. Bates Number 00477123 which is an FBI email from agent Diana Race to agent Samuel Whitman. The subject section states: "some people to interview for BORDER SKIRMISH – UNCLASSIFIED/FOUO." It is my belief that BORDER SKIRMISH involved another FBI investigation of Babak Broumand, possibly employing FISA investigative techniques, which has not been provided in discovery.

8. Attached As Exhibit 1 is a true and correct copy of a June 14, 2016, Press Release from the United States Attorney's Office in Los Angeles. The Press Release pertains to a RICO indictment against the Mexican Mafia and a street gang.

 I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration is executed this 6th day of July 2022, in San Francisco, California.

          /Steven F. Gruel
          STEVEN F. GRUEL