STEVEN F. GRUEL, ESQ.
California Bar No. 213148
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Telephone: 415-533-6973
Email: attystevengruel@sbcglobal.net

Attorney for **Babak Broumand**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>v.<br><br>BABAK BROUMAND,<br><br>　　　　Defendant. | Case No. 2:20-cr-00224-RGK<br><br>**DEFENDANT BABAK BROUMAND'S MEMORANDUM OF LAW ON IMPEACHMENT WITH LAW ENFORCEMENT REPORTS, NOTES, AND AUDIO RECORDINGS**<br><br>**HONORABLE R. GARY KLAUSNER**<br><br>Trial Date: August 30, 2022 @ 10:00 a.m. |

　　The Defendant, Babak Broumand, by and through his counsel of record, Steven F. Gruel, hereby submits this DEFENDANT BABAK BROUMAND'S MEMORANDUM OF LAW ON

*DEFENDANT BABAK BROUMAND'S MEMORANDUM OF LAW ON*
*IMPEACHMENT WITH LAW ENFORCEMENT REPORTS, NOTES, AND AUDIO RECORDINGS*

1

IMPEACHMENT WITH LAW ENFORCEMENT REPORTS, NOTES, AND AUDIO RECORDINGS.

### DEFENDANT'S MEMORANDUM OF LAW

**A. Statement of Facts**

The government has charged Babak Broumand in a First Superseding Indictment (FSI) with one conspiracy count (18 U.S.C. § 371); two substantive counts of bribery (18 U.S.C. § 201(b)(2)(C); and 2 counts of money laundering (18 U.S.C. § 1957(a)). The core of the government's theory is that Individual A gave FBI Special Agent Babak Broumand, a 20-year decorated agent with the FBI counter intelligence section responsible for National Security investigations, "things of value" in exchange for law enforcement information.  The government claims that Individual A would provide names and topics to SA Broumand who, in turn, would violate his official duties by searching the information in the official FBI database to then "protect" Individual A.  A motorcycle, cash, two checks, and other things of value were purportedly exchanged for the "protection." Mr. Broumand denies the allegations. He will testify as to the legitimate reasons, in accordance with his official duties, for his database searches. He will testify as to his relationship with Individual A.

In fact, Individual A corroborates Mr. Broumand.  In numerous law enforcement interviews spanning several years since early 2017, Individual A repeatedly explained to agents and prosecutors that his relationship with Mr. Broumand was one of friendship. Because he knew Mr. Broumand was an FBI agent responsible for gathering national security intelligence, he would provide Mr. Broumand with names and information.  Broumand, as was his practice, would in turn "run" these names and information in the FBI database. Furthermore, as was his practice, Broumand would then share some of Individual A's information with other FBI agents and many other agencies – the very thing the government purports in its FSI were part of the bribery scheme.

However, in late September 2019, Individual A, changed his tune about Mr. Broumand. After years of interviews to the contrary, Individual A abruptly transformed their relationship into a bribery scheme. Motivated by self-interest, Individual A, a convicted organized crime associate, con-man and disgraced attorney, now claimed that the names and information he provided to Mr. Broumand was actually an elaborate bribery scheme to "protect" Individual A.

Therefore, it is no surprise that Individual A's prior statements will be a major component of the trial. As seen from the government's discovery, Individual A's prior statements were memorialized by law enforcement in either notes, reports or audio recordings. As discussed below, all may be used in the impeachment of Individual A at trial.[1]

**B. The Law**

A witness's prior inconsistent statements are not admissible as substantive evidence unless they were made under oath at a proceeding. See Fed. R. Evid. 801(d)(1)(A). However, the witness's prior inconsistent statements are admissible as impeachment evidence regardless of such formalities. When admitted for impeachment, prior inconsistent statements are governed by Rule 613. It states:

> (a) Showing or Disclosing the Statement During Examination. When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.
>
> (b) Extrinsic Evidence of a Prior Inconsistent Statement. Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

---

[1] There should be no issue as to the foundation or authenticity of the Individual A's proffer recordings. The December 18, 2018 proffer interview, for example, included the presence of both the lead prosecutor and FBI case agent in this prosecution.

Fed. R. Evid. 613.

Again, such statements cannot be excluded as hearsay because they are being introduced for a non-hearsay purpose. See *United States v. Gilbert*, 57 F.3d 709, 712 (9th Cir. 1995); see also 3 Mueller & Kirkpatrick, Federal Evidence § 6.99 (3d ed. 2007) ("Even if the hearsay doctrine blocks use of such statements as proof of what they assert, still they may be used to impeach . . . ."). Moreover, "'[a]ny form of statement is acceptable' for impeachment by prior inconsistent statement." *United States v. Catalan-Roman*, 585 F.3d 453, 465 (1st Cir. 2009) (quoting 1 McCormick on Evidence § 34 at n.5 (6th ed. 2006)). The Ninth Circuit and other circuits have recognized that FBI 302s, for example, may be admitted for impeachment. *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (reversing a conviction in part for failure to disclose FBI 302s, and noting that "the FBI 302 reports would . . .likely be either admissible or capable of being used for impeachment."); see also *United States v. Faulkenberry,* 614 F.3d 573, 590 (6th Cir. 2010) ("The government impeached that testimony on cross, using the FBI-302 reports."); Catalan-Roman, 585 F.3d at 464 n.11 ("[T]he defendants were permitted to call him to the stand and, for purposes of impeachment, they entered the 302 report of the interview into evidence."); *United States v. Hedgepeth*, 418 F.3d 411, 422 (4th Cir. 1995) ("The prosecution then impeached Hedgepeth's credibility with her statements to the FBI agents at her post-arrest interview, as recorded in their 302 reports . . . .").

Even if the reports themselves are not themselves admissible, they unquestionably may be used for impeachment. As the text of Rule 613 itself contemplates, the impeaching party may show a prior inconsistent statement to the witness in order to give the witness "an opportunity to explain or deny." The Rule as written was intended to abolish the ancient common law rule that an impeaching party "must first show [the statement] to the witness." Fed. R. Evid. 613 adv.

*DEFENDANT BABAK BROUMAND'S MEMORANDUM OF LAW ON IMPEACHMENT WITH LAW ENFORCEMENT REPORTS, NOTES, AND AUDIO RECORDINGS*

4

comm. notes (emphasis added). Under the modern rule, an impeaching party is not required to show the statement to the witness, but it may show the statement to the witness so long as the other provisions of the rule are satisfied.

      Here, Individual A's "story" has become a "moving target." He has said many different things, to many different people, many different times. Impeachment of Individual A permits the use of reports, notes, and audio recordings to show the numerous inconsistent versions to the Jury.

Respectfully submitted,

Dated: August 14, 2022    By: /s/ Steven F. Gruel
STEVEN F. GRUEL, ESQ.
Attorney for **BABAK BROUMAND**