STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Sections
    1500/1100/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6077/7367/0304
    Facsimile:  (213) 894-0141
    E-mail:   ruth.pinkel@usdoj.gov
            michael.morse@usdoj.gov
            juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00224(A)-RGK |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION IN LIMINE (No. 1-16) TO EXCLUDE GOVERNMENT EVIDENCE; EXHIBITS |
| v. | |
| BABAK BROUMAND, | Trial Date:  September 13, 2022 |
| Defendant. | Location:  Courtroom 850 Royal Federal Building |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel Michael J. Morse, and Juan M. Rodriguez, hereby files its opposition to "Defendant's Motion In Limine (#1 to #16) To Exclude Government's Proposed Evidence As Inadmissible Hearsay; Irrelevant; Unduly Prejudicial; Misleading; Confusing; Inflammatory And Non-Probative

1  Under Evidence Rules 401-403, 404(B); 801(C) And 1006." (Dkt. 173

2  ("Mot.").)

3      This opposition is based upon the attached memorandum of points

4  and authorities, the attached exhibits, the files and records in this

5  case, and such further evidence and argument as the Court may permit.

6   Dated: September 7, 2022          Respectfully submitted,

7                                     STEPHANIE S. CHRISTENSEN
                                      Acting United States Attorney
8
                                      SCOTT M. GARRINGER
9                                     Assistant United States Attorney
                                      Chief, Criminal Division
10

11                                      /s/ Ruth C. Pinkel
                                      RUTH C. PINKEL
12                                    MICHAEL J. MORSE
                                      JUAN M. RODRIGUEZ
13                                    Assistant United States Attorneys

14                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**Table of Contents**

**TABLE OF AUTHORITIES**...........................................................v

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION AND SUMMARY.......................................1

II.   RELEVANT LEGAL STANDARDS.......................................1

    A.   Co-Conspirator Statements...................................1

    B.   Rule 403....................................................3

    C.   Inextricably Intertwined Evidence and Rule 404(b)
        Evidence....................................................4

    D.   Rule 1006...................................................5

III. ARGUMENT........................................................6

    A.   MIL # 1 – Defendant's Motion to Exclude Co-Conspirator
        Statements Made by John Balian, Felix Cisneros, and
        Levon Termendzhyan.........................................6

        1.   Evidence That Defendant Was Involved in a
            Conspiracy to Shield E.S. from Law Enforcement
            Detection..........................................7

        2.   Statements of Co-conspirators the Government Will
            Seek to Introduce at Trial.........................10

    B.   MIL # 2- Evidence Seen in FBI Database Regarding
        Termendzhyan...............................................12

    C.   MIL # 3-Escort Services for Defendant......................12

    D.   MIL # 4-SA Carlos Feliciano Testimony......................14

    E.   MIL # 5-Testimony of Sentinel Technical Lead Ryan
        Cohan......................................................15

    F.   MIL # 6-Testimony of FBI Forensic Accountant Joan
        O'Dowd.....................................................15

    G.   MIL # 7-Defendant's Hiring of Private Investigator to
        Surveil Termendzhyan (Overt Act 31).......................15

    H.   MIL # 8-Defendant's Offer to Remove People from the
        "No Fly List"..............................................16

    I.   MIL # 9-404(b) Notice, Defendant's Hunt for Gaddafi
        Money......................................................17

J.   MIL # 10-12 Defendant's FBI Security Financial
     Disclosure Forms (Overt Acts 44, 60, and 62).............18

K.   MIL # 13-15-Defendant's Statements to Financial
     Institutions...........................................19

L.   MIL # 16 Defendant's Tax Returns.........................20

IV.  CONCLUSION..................................................20

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

                                                                            Page(s)

Cases

Bourjaily v. United States,
  483 U.S. 171 (1987)....................................................1, 2

United States v. Aramula-Ruiz,
  987 F.2d 599 (9th Cir. 1993) .............................................2

Barsky v. United States,
  339 F.2d 180 (9th Cir. 1964) .............................................6

United States v. Meyers,
  847 F.2d 1408 (9th Cir. 1988)............................................5

Michelson v. United States,
  335 U.S. 469 (1948) ....................................................13

S.M. v. J.K.,
  262 F.3d 914 (9th Cir. 2001) ...........................................13

United States v. Schmit,
  881 F.2d 608 (9th Cir. 1989) ..........................................2, 3

Sendejas v. United States,
  428 F.2d 1040 (9th Cir. 1970) .........................................2, 11

United States v. Ayers,
  924 F.2d 1468 (9th Cir. 1991) ...........................................5

United States v. Bailey,
  696 F.3d 794 (9th Cir. 2012) ............................................4

United States v. Daly,
  974 F.2d 1215 (9th Cir. 1992) ...........................................4

United States v. Graciano-Cabanilla,
  113 Fed. App'x 761 (9th Cir. 2004) ......................................3

United States v. Guyton,
  36 F.3d 655 (7th Cir. 1994) ...........................................2, 18

United States v. Hankey,
  203 F.3d 1160 (9th Cir. 2000) .........................................4, 13

United States v. Knigge,
   832 F.2d 1100 (9th Cir. 1987)........................................1

United States v. Lemire,
   720 F.2d 1327 (D.C. Cir. 1983)......................................5

United States v. Lloyd,
   807 F.3d 1128 (9th Cir. 2015)...................................3, 11

United States v. Mills,
   704 F.2d 1553 (11th Cir. 1983)......................................4

United States v. Nazemian,
   948 F.2d 522 (9th Cir. 1991)........................................2

United States v. Payne,
   437 F.3d 540 (6th Cir. 2006)........................................2

United States v. Rizk,
   660 F.3d 1125 (9th Cir. 2011)...................................3, 5

United States v. Sayakhom,
   186 F.3d 928 (9th Cir. 1999)........................................4

United States v. Scales,
   594 F.2d 558 (6th Cir. 1979)........................................5

United States v. Smith,
   893 F.2d 1573 (9th Cir. 1990)...................................1, 3

United States v. Valles-Valencia,
   811 F.2d 1232 (9th Cir. 1987).......................................3

United States v. Vizcarra-Martinez,
   66 F.3d 1006 (9th Cir. 1995)........................................4

United States v. Vo,
   413 F.3d 1010 (9th Cir. 2005).......................................5

United States v. Williams,
   989 F.2d 1061 (9th Cir. 1993)......................................17

United States v. Yarbrough,
   852 F.2d 1522 (9th Cir. 1988).......................................2

Rules

Fed. R. Evid. 801(d)(2)(E)............................................ 1

Fed. R. Evid. 1006................................................... 5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION AND SUMMARY**

3

Defendant BABAK BROUMAND ("defendant") moves <u>in limine</u> to

4 seemingly exclude every shred of evidence the government has under

5 the guise of being hearsay, irrelevant, unduly prejudicial,

6 misleading, confusing, inflammatory, and non-probative.  As set forth

7 below, defendant's motions <u>in limine</u> are without merit and should be

8 denied.

9

In the interests of brevity, the government incorporates by

10 reference its factual recitations in prior motions and the

11 Government's Trial Memorandum.

12

**II.   RELEVANT LEGAL STANDARDS**

13

**A.   Co-Conspirator Statements**

14

A statement made by one co-conspirator or co-schemer during the

15 course and in furtherance of the conspiracy or scheme may be used

16 against another conspirator or co-schemer because such statements are

17 not hearsay. Fed. R. Evid. 801(d)(2)(E); <u>Bourjaily v. United States</u>,

18 483 U.S. 171, 183 (1987).  A statement admitted under Rule

19 801(d)(2)(E) does not violate the Confrontation Clause, and no

20 independent inquiry into reliability is needed. <u>Bourjaily</u>, 483 U.S.

21 at 183-84; <u>United States v. Knigge</u>, 832 F.2d 1100, 1107 (9th Cir.

22 1987), amended, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E)

23 requires a foundation that: (1) the declaration was made during the

24 life of the conspiracy; (2) the declaration was made in furtherance

25 of the conspiracy; and (3) there is, including the co-conspirator's

26 declaration itself, sufficient proof of the existence of the

27 conspiracy and defendant's connection to it.  <u>Bourjaily</u>, 483 U.S. at

28 173, 181; <u>United States v. Smith</u>, 893 F.2d 1573, 1578 (9th Cir.

1990).  These foundational requirements must be established by a preponderance of the evidence.  <u>Bourjaily</u>, 483 U.S. at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989).  To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  <u>United States v. Aramula-Ruiz</u>, 987 F.2d 599, 607-08 (9th Cir. 1993).

To be "in furtherance," the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy.  <u>United States v. Yarbrough</u>, 852 F.2d 1522, 1535 (9th Cir. 1988).  Examples of admissible co-conspirator statements include, among other things: "statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities."  <u>United States v. Nazemian</u>, 948 F.2d 522, 529 (9th Cir. 1991) (citations omitted).  Likewise, "[s]tatements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)."  <u>See</u> <u>United States v. Payne</u>, 437 F.3d 540, 546 (6th Cir. 2006).  And though the statement must be in furtherance of a conspiracy, it need not be the exclusive, or even primary, purpose of the declaration.  <u>See</u> <u>United States v. Guyton</u>, 36 F.3d 655, 659 (7th Cir. 1994).

Additionally, a co-conspirator statement need not be made in the presence of the defendant, or even made to another conspirator, to be admissible.  <u>See</u> <u>Sendejas v. United States</u>, 428 F.2d 1040, 1045 (9th

2

Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."); <u>United States v. Lloyd</u>, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E).").

Nor, for that matter, must the statement be communicated to another person at all to qualify as a co-conspirator statement.  <u>See</u>, <u>e.g.</u>, <u>United States v. Schmit</u>, 881 F.2d 608, 613 (9th Cir. 1989) ("Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated."); <u>United States v. Smith</u>, 893 F.2d 1573 (9th Cir. 1990) (calendar/drug ledger was admissible as coconspirator statement where government established that ledger was made during course and in furtherance of conspiracy, and identity of author of ledger was reasonably certain); <u>United States v. Valles-Valencia</u>, 811 F.2d 1232, 1237 (9th Cir. 1987) (same); <u>United States v. Graciano-Cabanilla</u>, 113 Fed. App'x 761, 762 (9th Cir. 2004) (pay-owe ledger seized from alleged co-conspirator was admissible as non-hearsay co-conspirator's statement).

## B.   Rule 403

This court has "broad discretion to admit potentially prejudicial evidence under Rule 403," such that relevant evidence may be excluded only if its probative value is "substantially outweighed" by a danger of, as relevant here, unfair prejudice.  <u>United States v. Rizk</u>, 660 F.3d 1125, 1132 (9th Cir. 2011).  Relevant evidence may be

3

excluded under 403 only if its probative value is substantially outweighed by one or more of the articulated dangers or considerations.  "This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value."  United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).  It favors admissibility.

Indeed, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."  Id. at 1172 (quoting United States v. Mills, 704 F.2d 1553, 1559 (11th Cir. 1983).)

### C.   Inextricably Intertwined Evidence and Rule 404(b) Evidence

If evidence of prior conduct is inextricably intertwined with the charged offense, then said evidence "is not subject to exclusion under Rule 404(b)."  United States v. Sayakhom, 186 F.3d 928, 937-38 (9th Cir. 1999).  Evidence of a defendant's other acts is admissible "when it [is] necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995).  A jury cannot be "expected to make its decision in a void" and remain unaware of the "time, place, and circumstances of the acts which form the basis of the charge."  United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (internal quotations omitted).

"Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  United States v.

4

1    _Bailey_, 696 F.3d 794, 799 (9th Cir. 2012) (quotation omitted).  The

2    Ninth Circuit has repeatedly held that the Rule is one of

3    "inclusion," permitting evidence of other relevant crimes or acts

4    "except where it tends to prove _only_ criminal disposition."  _United_

5    _States v. Ayers_, 924 F.2d 1468, 1472-73 (9th Cir. 1991).  Evidence of

6    other acts may be admitted under Rule 404(b) if: "(1) the evidence

7    tends to prove a material point; (2) the prior act is not too remote

8    in time; (3) the evidence is sufficient to support a finding that the

9    defendant committed the other act; and (4) (in cases where knowledge

10   and intent are at issue) the act is similar to the offense charged."

11   _United States v. Vo_, 413 F.3d 1010, 1018 (9th Cir. 2005).

12        **D.   Rule 1006**

13        Charts and summaries of evidence are governed by Federal Rule of

14   Evidence 1006, which permits the introduction of charts, summaries,

15   or calculations of voluminous writings, recordings, or photographs

16   which cannot conveniently be examined in court.  _See_ Fed. R. Evid.

17   1006.  Accordingly, a summary chart may be admitted as substantive

18   evidence when the proponent establishes that the underlying documents

19   upon which the summary is based are voluminous, admissible, and

20   available for inspection.  _Id._; _see also United States v. Rizk_, 660

21   F.3d at 1125, 1130—31 (9th Cir. 2011).  All that is required for the

22   rule to apply is that the underlying writings be voluminous and that

23   in-court examination not be convenient.  _United States v. Scales_, 594

24   F.2d 558, 562 (6th Cir. 1979).  Although the materials underlying the

25   summary must be "admissible," they need not themselves be "admitted"

26   into evidence.  _United States v. Meyers_, 847 F.2d, 1408, 1412 (9th

27   Cir. 1988.)

28

1    Finally, summary charts need not contain the defendant's version

2    of events. <u>See</u> <u>United States v. Lemire</u>, 720 F.2d 1327, 1349 (D.C.

3    Cir. 1983); <u>Barsky v. United States</u>, 339 F.2d 180, 181 (9th Cir.

4    1964) (rejecting defendant's argument that summary should be excluded

5    because it did not contain his version of the case; accepting that

6    argument "would be to hold that if a defendant had an alibi, no

7    matter how improbable, then no expert could prepare a summary of the

8    evidence tending to prove guilt").

9    **III.  ARGUMENT**

10       **A.    MIL # 1 – Defendant's Motion to Exclude Co-Conspirator
             Statements Made by John Balian, Felix Cisneros, and Levon
11           Termendzhyan**

12       Defendant conveniently seeks to characterize statements by John

13   Balian, Felix Cisneros, and Levon Termendzhyan[1] as "impermissible

14   hearsay" by alleging that defendant "had nothing to do with their

15   conspiracy."  (Mot. at 6.)

16       The government will present ample evidence to establish a

17   threshold conspiracy involving E.S., John Balian, Felix Cisneros, and

18   defendant, among others.  In short, the defendant reaped the same

19   benefits, and had the same criminal goals as E.S., John Balian, and

20   Felix Cisneros.  That is, to protect E.S. from law enforcement

21   detection.  Further, after becoming suspicious that then Homeland

22   Security Investigations ("HSI") agent Felix Cisneros was under

23   federal investigation for corruption charges, defendant Broumand

24   affirmatively meddled in that investigation in an effort to cover up

25   and distance himself from his co-conspirators.  Defendant Broumand

26   falsely attempted to distance himself and disavow knowledge and

27   _____

28       [1] To be clear, the government will not seek to introduce any
     statements of Levon Termendzhyan as a co-conspirator.

association with Cisneros and Balian precisely because he knew both men were corruptly assisting E.S., as defendant Broumand was.  Thus, he cannot now seek to exclude relevant evidence that would expose his efforts to distance himself from his co-conspirators.

### 1.   Evidence That Defendant Was Involved in a Conspiracy to Shield E.S. from Law Enforcement Detection

As the Court is well aware, in May 2022, Felix Cisneros was convicted of bribery related charges in United States v. Cisneros, 21-51-RGK ("Cisneros II[2]") (Dkt. 92.)  Specifically, Cisneros was convicted of accepting bribes from E.S.  As proven at trial, in exchange for cash, checks, private jet flights (including to Las Vegas), hotel stays, meals, and other items of value, Cisneros provided various services and official acts for E.S.  For example, Cisneros regularly looked up information in confidential law enforcement databases for E.S.  That information ranged from determining whether individuals were under investigation to altering law enforcement records.  E.S.'s orders to Cisneros were often funneled through John Balian, another corrupt law enforcement officer then working as a detective for the Glendale Police Department.  Balian, too, engaged in criminal activities with E.S., accepted gifts and other items of value from E.S., including cash, private jet flights (including to Las Vegas), hotel stays, meals and a leased BMW.  Balian regularly looked up information in confidential law enforcement databases for E.S. in order to shield E.S. from law enforcement detection.

---

[2] Cisneros was first indicted and convicted by jury in U.S. v. Cisneros, 17-CR-229(A)-CAS ("Cisneros I").

1     At trial in Cisneros II, E.S. testified that his relationship

2  with defendant Broumand was "the same pretty much as Felix

3  [Cisneros]." (Cisneros II trial transcript, April 27, 2022, Pg. 47,

4  ln. 18-25.) E.S. went on, saying he and defendant Broumand "had a

5  relationship. I was paying him as well to do stuff similar like

6  [Cisneros] did, searching law enforcement databases for me, and

7  protecting me from investigations, since I was involved in illegal

8  activities." (Id.; Pg. 48 ln. 1-23.) E.S. further testified that in

9  January 2016, Balian, Cisneros, the defendant and others traveled on

10  E.S.'s private jet to Las Vegas. (Id.) During this trip, E.S. "paid

11  for everybody," because they "were law enforcement people." The

12  government also introduced a photograph of Cisneros, Balian, and

13  defendant Broumand sitting at a restaurant table together, which E.S.

14  testified was taken in Las Vegas during their January 2016 trip.

15  (See Cisneros II trial exhibit 207.)

16     E.S. testified that in April of 2016, an individual with whom

17  E.S. had criminal dealings, H.N., was arrested. Concerned that he

18  may be implicated in a criminal investigation of H.N., E.S.

19  "immediately reached out to [his] law enforcement people." E.S.

20  testified that he "called Felix [Cisneros], and Babak [Broumand] the

21  same day. Felix [Cisneros] with Homeland Security, and Babak

22  [Broumand] with the FBI." (Id. at Pg. 73, ln. 10-22.) Evidence at

23  trial also showed that E.S. reached out to then Glendale Police

24  Department detective John Balian the same day, almost simultaneously

25  with his contact of Felix Cisneros and defendant Babak Broumand.

26  (Id. at Pg. 74-76; See also Cisneros II trial exhibits 208, 210 (text

27  message communications between E.S. and Felix Cisneros, and between

28

1    E.S. and John Balian, providing personal identifying information

2    ("PII") of H.N. to both).

3         E.S. further testified that in May 2016, he organized an event

4    at Beverly Hills private cigar lounge, the Grand Havana Room, to

5    celebrate his passing of the California Bar.  (Id. at Pg. 59-60.)

6    The government introduced trial exhibit 3, which was a photograph

7    showing defendant Broumand, John Balian, and Felix Cisneros, again

8    sitting together at a dinner table, next to each other, as E.S.'s

9    guests.  (See Ex. 1 (May 2016 photo).)

10        The government expects evidence at defendant Broumand's trial

11   will show that, after attending E.S.'s bar passage event at the Grand

12   Havana Room, the defendant was worried that Cisneros was under

13   investigation.  The evidence will show that Broumand ran Cisneros in

14   a confidential FBI database, learned Cisneros was in fact under

15   federal investigation for corruption related conduct in Cisneros I,

16   and affirmatively reached out to the case agent handling the Cisneros

17   investigation as a ruse to explain why he (defendant Broumand) had

18   queried Cisneros in an FBI database.  Defendant Broumand told the

19   Cisneros I investigation case agent that defendant attended a party

20   where Cisneros was present (the bar passage party), and had a "sixth

21   sense" about Cisneros.  Thus, defendant claimed, the defendant ran

22   Cisneros in an FBI database.  After being instructed to write a

23   report regarding his interactions with Cisneros, the defendant wrote

24   an FBI report, falsely claiming he had only met Cisneros twice, both

25   times at the Grand Havana Room.  Defendant wrote in his report that

26   Cisneros arrived and departed the dinner party with "an unknown

27   police officer from Glendale Police Department." (Ex. 2 (FBI Report

28   re May 19, 2016, party).)  Defendant went on to describe Glendale

9

detective John Balian's physical characteristics, without mentioning Balian's name, falsely making it appear as though defendant Broumand did not know Balian, despite defendant having sat next to Balian for the entire event, and having shared a private jet flight with Balian and Cisneros just months earlier.  (See Ex. 3 (Jan 2016 Photo).) Nowhere in defendant Broumand's FBI report are these details mentioned.

### 2.   Statements of Co-conspirators the Government Will Seek to Introduce at Trial

The government intends to introduce text message evidence showing E.S. sent H.N.'s PII to defendant Broumand, Felix Cisneros, and John Balian almost simultaneously upon learning of H.N.'s arrest. The government will also show call records that demonstrate E.S. was immediately in contact with all three men.  E.S. will explain his reason for reaching out to all three men, all of whom were receiving financial benefits from E.S., and all of whom were providing protection to E.S.  The government will also introduce text message conversations between John Balian, Felix Cisneros, and E.S. regarding the H.N. arrest and investigation, to provide context and corroboration to E.S.'s testimony regarding Cisneros, Balian and defendant Broumand.  This evidence is extremely probative to show the corrupt nature of E.S. and defendant Broumand's relationship. Without context, and the benefit of seeing E.S.'s communications with his team of corrupt law enforcement officers, the jury will be left to speculate as to the reason E.S. sent defendant Broumand H.N.'s PII, and will have no context for the call records between E.S. and defendant Broumand.  The evidence will show that all three men were engaged in a conspiracy to protect E.S. from law enforcement

detection generally, and specifically, scrutiny that could have followed from H.N.'s arrest.  Thus, the statements of John Balian, Felix Cisneros, E.S. and the defendant are relevant and admissible as statements by co-conspirators.

The evidence will also show that in March of 2017, immediately following the arrest of Felix Cisneros for corruption related conduct in Cisneros I, a flurry of phone records and other communications between E.S., John Balian, Felix Cisneros, and defendant Broumand ensued.  The content of these communications is extremely probative to show that defendant Broumand was engaged in a conspiracy with John Balian, Felix Cisneros and E.S., to protect E.S. from law enforcement detection.  Upon learning of Cisneros' arrest, all members of the conspiracy took coordinated actions to protect E.S. (and themselves) from the Cisneros I investigation and any potential criminal exposure that could result.

And it is of no moment that defendant Broumand was not involved in all conversations had by co-conspirators that were in furtherance of the conspiracy.  A co-conspirator statement need not be made in the presence of the defendant, or even made to another conspirator, to be admissible.  See Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."); United States v. Lloyd, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E).").

The government will thus lay the proper foundation to admit various co-conspirator statements at trial.

**B.   MIL # 2- Evidence Seen in FBI Database Regarding Termendzhyan**

Defendant improperly seeks to exclude evidence of the Levon Termendzhyan investigation as impermissible hearsay and pursuant to the Sixth Amendment Confrontation Clause because "the defense has never been afforded an opportunity to review the FBI database files." First, defense counsel does not even attempt to – because he cannot – explain how the entire contents of an FBI file of an investigation unrelated to defendant is discoverable in this case.  As the government has repeatedly argued in response to other motions, the salient fact is that defendant knew there was an FBI investigation— incredibly valuable information for E.S., who was Termendzhyan's CFO— and reached out to the FBI case agent to make it appear defendant had a legitimate interest.  These facts, coupled with his repeated database searches of the Termendzhyan and the file are the operative facts, not the contents of those files.

Secondly, defendant incorrectly asserts that the contents of FBI files are categorically hearsay without regard to whether a witness has firsthand knowledge (e.g., whether a witness knew that the FBI had an investigation into Levon Termendzhyan).  Lastly, with regard to defendant's Sixth Amendment claim, the government does not intend to introduce into evidence any information which it has not produced in discovery.

**C.   MIL # 3-Escort Services for Defendant**

Contrary to defendant's position, the escort services E.S. arranged for defendant are directly relevant to the charges.  Indeed,

it is part of the stream of benefits, and an item of value, the government alleges E.S. provided to defendant.  (FSI ¶ 7.)  This directly refutes defendant's assertion that it "sheds little or no light on any fact of consequence in this case, and it serves only to taint the jury's general attitude toward the defendant," as well as "not help to resolve any of the legitimate factual disputes at trial."  (Mot. at 9.)

Unfortunately for defendant, he bears the burden of proving that this evidence is <u>substantially more prejudicial than probative</u> – a burden he cannot carry.  While the evidence has a tendency to show that defendant is guilty of the crimes charged, that is not the kind of "unfair" prejudice that Rule 403 prohibits.  As the Ninth Circuit has stated, relevant evidence is inherently prejudicial.  <u>Hankey</u>, 103 F.3d at 1162.

Defendant's cited authority is unpersuasive.  <u>S.M. v. J.K.</u>, 262 F.3d 914, 918 (9th Cir. 2001) is neither controlling nor persuasive given that this case does not involve sexual assault and that the Court excluded evidence of an extramarital affair under the Rape Shield Provision of the Federal Rules of Evidence (i.e., Rule 412) as opposed to Rule 403.  Similarly, <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948) is inapplicable to this case.  The government is not seeking to introduce evidence of the escort services as character evidence, but instead as direct evidence bearing on an element of the crimes charged.  Simply put, the escort services were part of the stream of benefits, an item of value, that E.S. provided to defendant in exchange for official acts.  Given that Rule 403 favors admissibility and that defendant cannot prove that this evidence is

substantially more prejudicial than probative, this motion in limine must be denied.

### D.   MIL # 4-SA Carlos Feliciano Testimony

Defendant's argument again misses the mark.  While he is correct that the government is not alleging that defendant illegally used or accessed the TECs system, Felix Cisneros's TECs queries of Albers street, the name of the street on which E.S. lived at the relevant time, is relevant and highly probative because it corroborates E.S.'s anticipated testimony and establishes that E.S., John Balian, Felix Cisneros, and defendant were all participants in the conspiracy to protect E.S. from law enforcement scrutiny.

E.S. is expected to testify that he texted defendant and Felix Cisneros "Hovhannes Nazaryan" as well as Hovhannes Nazaryan's date of birth because he wanted to know whether he, E.S., might be criminally implicated given that Hovhannes Nazaryan was arrested around the time of the text messages.  Ultimately, E.S. told defendant that Felix Cisneros was handling the task.  Out of an abundance of caution, Felix Cisneros also searched the street E.S. lived on to see if he was under criminal investigation.  This corroborates E.S.'s anticipated testimony that he was bribing defendant and also explains the text from E.S. to defendant, as well as why defendant did not query the name in Sentinel.  Moreover, this demonstrates that defendant and Felix Cisneros were participants in the conspiracy to protect E.S. from law enforcement.  Accordingly, Special Agent Feliciano's testimony on Felix Cisneros's searches is relevant and probative.  Moreover, any prejudice to defendant is minimal and does not rise to the level of being substantially more prejudicial than probative so as to warrant exclusion pursuant to Rule 403.

**E.   MIL # 5-Testimony of Sentinel Technical Lead Ryan Cohan**

Defendant's motion is unclear.  The government notice for this witness says nothing about "content of the FBI files," and defendant is not clear.  This motion should be denied.

**F.   MIL # 6-Testimony of FBI Forensic Accountant Joan O'Dowd**

Defendant's attempt to preclude the government's summary financial testimony is misleading and incorrect.  He both over-simplifies and over-complicates the nature of the summary testimony. Defendant used at least eight bank and credit card accounts, including multiple corporate and personal bank accounts, and his parents' bank account to launder his bribe proceeds.  Summary financial testimony will assist the jury in understanding the bribe check payments, and the cash deposits to defendant's corporate bank accounts.  Moreover, tracing of those proceeds to defendant's personal expenses is relevant, direct evidence of the bribery conspiracy, bribery, and money laundering charges.  In addition, evidence of defendant's finances, and his use of the bribery proceeds to buy a Lake Tahoe vacation home, and pay other personal bills, is also admissible for demonstrating motive to commit a crime with financial gain.  (See Ex. 4 (chart showing cash deposits, $30,000 check deposit, multiple account transfers, purchase of Tahoe house.[3])

**G.   MIL # 7-Defendant's Hiring of Private Investigator to Surveil Termendzhyan (Overt Act 31)**

Contrary to defendant's assertion, defendant's act of attempting to hire to hire a private investigator is relevant and highly probative to the charges.  Indeed, as the First Superseding

---

[3] The attached chart has been revised to reflect exhibit numbers.

15

Indictment makes clear, defendant engaged in this act in furtherance of the conspiracy to protect E.S. from law enforcement scrutiny and in exchange for $10,000.  E.S. will testify that he instructed defendant to hire a private investigator to surveil Levon Termendzhyan and to falsely represent to the private investigator that the surveillance was being commissioned by the FBI.  Moreover, the government will call at least one witness, aside from E.S., who is expected to testify that defendant represented to him that the surveillance was in furtherance of an FBI investigation.

Defendant can hardly claim that falsely representing that the FBI is commissioning a private investigator for surveillance does not run afoul of his official duties.  Further, the government will introduce evidence that defendant was aware that Levon Termendzhyan, the person who the private investigator was supposed to surveil, was the target of an FBI investigation.  Accordingly, having Termendzhyan surveilled by a third party would be considered interference with an FBI investigation; defendant cannot seriously contend that would also not be considered a violation of his official duties.  Simply put, this incident is highly relevant and probative.  The Court should deny defendant's motion.

**H.   MIL # 8-Defendant's Offer to Remove People from the "No Fly List"**

Testimony about defendant's offer to remove people from a "no fly list," if the government chooses to introduce it, is inextricably intertwined with other evidence in this case.  It is relevant, direct evidence of the nature of the corrupt relationship between defendant and E.S. and the bevy of services with which defendant enticed E.S. This evidence is also closely intertwined with evidence that

16

defendant assured E.S. that the Qatar royal family member (QRFM), who
was wire transferring hundreds of thousands of dollars to E.S., was
not involved in terrorist financing.  Defendant was a National
Security FBI agent and E.S. reasonably believed defendant had
valuable abilities, whether defendant was truthful or not.  As
evidence to any crime or bad act evidence that are inextricably
intertwined with the criminal conduct for which defendant has been
charged, the Ninth Circuit has made clear that such acts are not
considered "other crimes" evidence that is subject to the Rule
404(b)(3) notice requirement.  See United States v. Williams, 989 F.2d
1061, 1070 (9th Cir. 1993).  Any prejudicial value is outweighed by
the probative value of this evidence.

### I.    MIL # 9-404(b) Notice, Defendant's Hunt for Gaddafi Money

Contrary to defendant's assertions, the government gave clear
notice that defendant's sharing of the FBI's confidential reporting
about the Gaddafi money, and plan to use E.S.'s jet to retrieve and
skim the money, is inextricably intertwined with the facts and
circumstances of this case.  (See Ex. 5 (Aug. 9, 2022 Notice Letter;
see also Dkts. 81 and 107.)  That is, the defendant's use and misuse
of governmental resources for personal financial gain, while acting
in concert and coordination with E.S., is inextricably intertwined
with the corrupt relationship between the defendant and E.S. and
occurred during their conspiracy.  As inextricably intertwined with
the charged criminal conduct it is not considered "other crimes"
evidence that is subject to the Rule 404(b)(3) notice requirement.
Williams, 989 F.2d at 1070.

In an abundance of caution, the government also gave 404(b)
notice. However, under any analysis, the evidence is admissible.

**J.   MIL # 10-12 Defendant's FBI Security Financial Disclosure Forms (Overt Acts 44, 60, and 62)**

FBI agents with security clearances are required to electronically submit annual financial disclosure forms for the very reason that the government is concerned with corruption.  Defendant's statements on his financial forms <u>during the conspiracy</u> are relevant to defendant's knowledge and state of mind.  His statements were intended to conceal (1) the financial relationship with E.S., and later (2) to conceal or disguise the true nature of his financial arrangement with E.S.  Defendant listed the Ducati on these forms and later, after being informed he was under investigation, defendant reported that he had a $30,000 "loan" from E.S., thus defendant's statements on these forms about items he received from E.S. are direct evidence of defendant's state of mind and to proving the bribery conspiracy.  At some point in the conspiracy, to conceal the bribery, defendant and E.S. agreed to make it appear that ES "loaned" money to defendant.  Thus, defendant's statements, or lack thereof, on his financial disclosure forms <u>during the conspiracy</u> about the Ducati and money he received from E.S. is relevant to proving the bribery conspiracy.  This is especially true for defendant's 2017 form, filed in 2018, where two and one-half years after the payment was made, defendant first reported a $30,000 "loan" from E.S.  This act was clearly in furtherance of the conspiracy and to conceal the true relationship between these men.  Although this statement was clearly made in furtherance of a conspiracy, it need not be the exclusive, or even primary, purpose of the declaration.  <u>United States v. Guyton</u>, 36 F.3d at 659 (7th Cir. 1994).

1   Presenting this testimony will be simple, straightforward and

2   will not entail a mini-trial.  Moreover, the United States v. Martin,

3   796. F.3d 1101 (9th Cir. 2015) tax prosecution case cited by defendant

4   is inapposite because it involved an improper attempt to introduce

5   404(b) "other act" evidence for propensity.  Defendant's financial

6   disclosure evidence here is direct evidence of his bribes, acts in

7   furtherance of the conspiracy, and is relevant to show defendant's

8   motive and intent.  Should defendant testify, the government will

9   cross-examine him about these disclosures as probative to his

10  truthfulness, among other areas of relevance.

### K.   MIL # 13-15-Defendant's Statements to Financial Institutions

In its case-in-chief, the government does not intend to introduce defendant's many false statements to financial institutions; however, the government will introduce defendant's submissions to a bank to explain the source of a $30,000 check from E.S. (MIL #14).  This check is the subject of overt acts (OAs 18, 21), a bribery count (Count 3), and a money laundering count (Count 5), thus any statements defendant made to others about this money is directly relevant to proving defendant's knowledge, intent, and the bribery conspiracy.  When a loan officer asked defendant about the source of the funds for the purchase his Lake Tahoe vacation home, to conceal the true purpose of the funds and thus the conspiracy, defendant provided the $30,000 check, and a letter explaining that he sold a boat to E.S. along with an alleged bill of sale. (See Ex. 6 (Letter, Bill of Sale and $30,000 check; Ex. 4 (summary chart tracing funds to escrow).)  Defendant's statements are admissions that the check, written from a Beverly Hills hair salon to defendant's hair

salon, (1) was defendant's personal money, and (2) connect E.S., whose name was not on the checks, as the source of the check. Defendant's acts to conceal and disguise the source of the funds are also relevant and probative.

The government does intend to introduce limited evidence that defendant's wife gave $10,000 cash to her cousin in the fall of 2016 as a repayment for checks the cousin wrote to defendant and his wife. This evidence is directly relevant to showing how much cash defendant had access to and to corroborate E.S.'s testimony that he paid defendant cash. Although it was actually a repayment of a fake lease arrangement created by defendant in order to qualify for the purchase of his primary residence, the government does not intend to introduce testimony of the falsity of the arrangement in its direct examination of defendant's cousin.

Should defendant testify, the government will cross-examine him about his many false statements to financial institutions as probative to his truthfulness.

**L.   MIL # 16 Defendant's Tax Returns**

The government does not intend to introduce defendant's tax returns in its case-in-chief at trial. If defendant somehow opens the door on this issue, however, the government may seek to introduce this evidence. Of course, should defendant testify, the government will cross-examine him about false statements on both his personal and corporate tax returns as probative to his truthfulness.

**IV.   CONCLUSION**

For the foregoing reasons, defendant's motions in limine should be denied.