STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
    1500/1100/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6077/7367/0304
    Facsimile:  (213) 894-0141
    E-mail:     ruth.pinkel@usdoj.gov
           michael.morse@usdoj.gov
           juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-224(A)-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  September 13, 2022 |
| BABAK BROUMAND, | Trial Time:  9:00 a.m. |
| | Location:  Courtroom 850 Roybal Federal Building |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel Michael J. Morse, and Juan M. Rodriguez, hereby submits its Trial

//

//

1

Memorandum in the above-captioned case.

Dated: September 8, 2022          Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


     */s/ Ruth C. Pinkel*
RUTH C. PINKEL
MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   STATEMENT OF THE CASE..........................................1

    A.   Summary of the Facts......................................1

    **B.   Overview of the Conspiracy**..................................2

    **C.   The Charges**.................................................3

    **D.   Origins of the Corrupt Relationship Between Defendant
        and E.S.**...................................................3

    **E.   Database Searches in Furtherance of the Conspiracy**........4

        1.   Levon Termendzhyan and Baran Korkmaz.................4

        2.   Sam Solakyan Search.................................5

        3.   C.P.................................................5

    **F.   The Ducati Motorcycle Bribe Payment**.......................5

    **G.   Cash And Check Bribe Payments**.............................5

        1.   Defendant Receives Regular Cash Bribe Payments
            and Two $30,000 Checks Between January 2015 and
            May 2016.............................................5

        2.   Analysis of Cash Deposits into Defendant's Bank
            Accounts............................................6

        3.   Defendant Receives $30,000 Bribe Checks In Money
            Laundering Transactions; False Statements to Bank
            To Conceal Bribe Proceeds...........................7

    **H.   Attempts to Falsely Portray E.S. as Source In
        Furtherance of Conspiracy**.................................8

    **I.   False Statements to Other FBI Agents In Furtherance of
        the Conspiracy**............................................8

    **J.   Defendant Conceals His Bribe Payments on Mandatory
        Financial Disclosure Forms**................................9

II.  SCHEDULING MATTERS.............................................9

    A.   The Government's Case-in-Chief............................9

    B.   Stipulations.............................................9

    C.   Potential Defenses......................................10

      D.   Motion in Limine and Jury Instructions....................10

III. CRIMINAL FORFEITURE.........................................10

IV.  LEGAL ISSUES................................................11

      A.   Aiding and Abetting......................................11

V.   EVIDENTIARY ISSUES.........................................12

      A.   Defendant's Statements, Adoptive Admissions, and Agent Admissions...............................................12

      B.   Co-Conspirator Statements...............................12

      C.   Defendant's Statements Inadmissible When Proffered by Defendant...............................................13

      D.   Business Records........................................14

      E.   Expert Testimony........................................17

      F.   Summary Charts..........................................18

      G.   Financial Evidence as Direct Evidence and As Proof Of Motive to Commit Crime..................................20

      H.   Impeachment.............................................21

      I.   Impeachment by Prior Convictions........................22

      J.   Truthfulness Provisions of a Proffer or Plea Agreement...23

      K.   Authentication and Identification.......................24

      L.   Photographs.............................................25

      M.   Duplicates..............................................25

      N.   Cross-Examination.......................................25

      O.   Inadmissibility of Defendant's Specific Prior Good Acts and Other Issues Regarding Character Evidence.......26

      P.   Cross-Examination of Defendant..........................29

      Q.   Discretion as to Order of Proof.........................30

      R.   Lack of Reciprocal Discovery............................31

VI.  CONCLUSION.................................................31

iv

# TABLE OF AUTHORITIES

CASES:                                                                PAGE(S)

Barsky v. United States,
     339 F.2d 180 (9th Cir. 1964) ................................... 20

Bourjaily v. United States,
     483 U.S. 171 (1987).................................... 12, 13, 15

French v. United States,
     232 F.2d 736 (5th Cir. 1956) ................................... 28

Gallego v. United States,
     276 F.2d 914 (9th Cir. 1960) ................................... 25

Hunter v. Bryant,
     502 U.S. 224 (1991) ............................................ 15

Kennedy v. Los Angeles Police Dep't,
     901 F.2d 702 (9th Cir. 1990) ................................... 15

La Porte v. United States,
     300 F.2d 878 (9th Cir. 1962) ................................... 16

Melendez-Diaz v. Massachusetts,
     557 U.S. 305 (2009) ............................................ 16

Michelson v. United States,
     335 U.S. 469 (1948) ................................... 26, 28, 29

Ohio v. Roberts,
     448 U.S. 56 (1980) ............................................. 16

Rosemond v. United States,
     134 S. Ct. 1240 (2014) ......................................... 11

Territory of Guam v. Ojeda,
     758 F.2d 403 (9th Cir. 1985) ................................... 14

U-Haul Int'l, Inc. v. Lumbermans Mutual Cas. Co.,
     576 F.3d 1040 (9th Cir. 2009)................................... 17

Williamson v. United States,
     512 U.S. 594 (1994) ............................................ 14

v

United States v. Aramula-Ruiz,
  987 F.2d 599 (9th Cir. 1993) ................................... 13

United States v. Avendano,
  455 F.2d 975 (9th Cir. 1972) ................................... 31

United States v. Baker,
  855 F.2d 1353 (8th Cir. 1988) ................................. 16

United States v. Barry,
  814 F.2d 1400 (9th Cir. 1987) ................................. 26

United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) ...................... 24, 29, 30

United States v. Blackwood,
  878 F.2d 1200 (9th Cir. 1989) ................................. 24

United States v. Bonallo,
  858 F.2d 1427 (9th Cir. 1988) ................................. 17

United States v. Camejo,
  929 F.2d 610 (9th Cir. 1991) ................................... 27

United States v. Catabran,
  836 F.2d 453 (9th Cir. 1988) ................................... 16

United States v. Childs,
  5 F.3d 1328 (9th Cir. 1993) ................................... 15

United States v. Chu Kong Yin,
  935 F.2d 990 (9th Cir. 1991) ................................... 24

United States v. Cuevas,
  847 F.2d 1417 (9th Cir. 1988) ................................. 18

United States v. De Peri,
  778 F.2d 963 (3d Cir. 1985) ................................... 19

United States v. Diaz,
  961 F.2d 1417 (9th Cir. 1992) ................................. 28

United States v. Dorsey,
  677 F.3d 944 (9th Cir. 2012) ................................... 23

United States v. Edwards,
  549 F.2d 362 (5th Cir. 1981) ................................... 29

United States v. Fernandez,
  839 F.2d 639 (9th Cir. 1988) ..................................... 14

United States v. Fowler,
  927 F.2d 611 (9th Cir. 1991) ..................................... 21

United States v. Garcia,
  400 F.3d 816 (9th Cir. 2005) ..................................... 11

United States v. Gardner,
  611 F.2d 770 (9th Cir. 1980) ..................................... 20

United States v. Gay,
  967 F.2d 322 (9th Cir. 1992) ..................................... 30

United States v. Harrington,
  923 F.2d 1371 (9th Cir. 1991) ............................... 24, 25

United States v. Hearst,
  563 F.2d 1331 (9th Cir. 1977) .................................... 30

United States v. Hedgcorth,
  873 F.2d 1307 (9th Cir. 1989) .................................... 27

United States v. Holden,
  625 F. App'x 316 (9th Cir. 2014) ................................ 21

United States v. Knigge,
  832 F.2d 1100 (9th Cir. 1987) amended,
  846 F.2d 591 (9th Cir. 1988).................................... 13

United States v. Lemire,
  720 F.2d 1327 (D.C. Cir. 1983) ................................. 20

United States v. May,
  622 F.2d 1000 (9th Cir. 1980) .................................. 25

United States v. Melton,
  739 F.2d 576 (11th Cir. 1984) .................................. 29

United States v. Meyers,
  847 F.2d 1408 (9th Cir. 1988) .................................. 19

United States v. Miranda-Uriarte,
  649 F.2d 1345 (9th Cir. 1981) .................................. 29

United States v. Monroe,
  943 F.2d 1007 (9th Cir. 1991) ................................... 23

United States v. Naranjo,
  634 F.3d 1198 (11th Cir. 2011) ................................. 16

United States v. Nazzaro,
  889 F.2d 1158 (1st Cir. 1989) .................................. 27

United States v. Norton,
  867 F.2d 1354 (11th Cir. 1989) ................................. 16

United States v. Oaxaca,
  569 F.2d 518 (9th Cir. 1978) ................................... 25

United States v. Ortega,
  203 F.3d 675 (9th Cir. 2000) ............................... 13, 14

United States v. Osazuwa,
  564 F.3d 1169 ................................................. 22

United States v. Perez,
  658 F.2d 654 ................................................. 30

United States v. Perry,
  857 F.2d 1346 (9th Cir. 1988) .................................. 22

United States v. Ray,
  930 F.2d 1368 (9th Cir. 1990) .............................. 15, 16

United States v. Reyes,
  660 F.3d 454 (9th Cir. 2011) ................................... 21

United States v. Rizk,
  660 F.3d (9th Cir. 2011) ...................................... 19

United States v. Rubino,
  431 F.2d 284 (6th Cir. 1970) ................................... 20

United States v. Saniti,
  604 F.2d 603 (9th Cir. 1979) ................................... 21

United States v. Santana-Camacho,
  931 F.2d 966 (1st Cir. 1991) ................................... 27

United States v. Scales,
  594 F.2d 558 (6th Cir. 1979) ................................... 19

<u>United States v. Schmit</u>,
  881 F.2d 608 (9th Cir. 198) ..................................... 13

<u>United States v. Schoneberg</u>,
  396 F.3d 1036 (9th Cir. 2005) ................................... 23

<u>United States v. Shaw</u>,
  829 F.2d 714 (9th Cir. 1987) ................................... 23

<u>United States v. Smith</u>,
  893 F.2d 1573 ............................................... 13, 25

<u>United States v. Soulard</u>,
  730 F.2d 1292 (9th Cir. 1984) ................................... 19

<u>United States v. Stearns</u>,
  550 F.2d 1167 (9th Cir. 1977) ................................... 25

<u>United States v. Turner</u>,
  528 F.2d 143 (9th Cir. 1975) ................................... 30

<u>United States v. Washington</u>,
  106 F.3d 983 ................................................... 26

<u>United States v. Weiner</u>,
  578 F.2d 757 (9th Cir. 1978) ................................... 26

<u>United States v. Weygandt</u>,
  681 F. App'x 630 (9th Cir. 2017) ............................... 21

<u>United States v. Yarborough</u>,
  852 F.2d 1522 (9th Cir. 1988) ................................... 13

<u>United States v. Zemek</u>,
  634 F.2d 1159 (9th Cir. 1980) ................................... 30

Statutes

18 U.S.C. § 201 ................................................... 3

18 U.S.C. § 371 ................................................... 3

18 U.S.C. § 1957 ............................................... 3, 4

Rules

Fed. R. Evid. 104(a), 1101(d)(1) ................................ 15

Fed. R. Evid. 608(b)..................................................22

Fed. R. Evid. 611(a)..................................................20

Fed. R. Evid. 611(b)..................................................25

Fed. R. Evid. 702.....................................................17

Fed. R. Evid. 703.....................................................17

Fed. R. Evid. 704.....................................................18

Fed. R. Evid. 801(d)(2)(A)............................................12

Fed. R. Evid. 801(d)(2)(C)............................................12

Fed. R. Evid. 801(d)(2)(E)............................................12

Fed. R. Evid. 803(6)(D)...............................................15

Fed. R. Evid. 901(a)..................................................24

Fed. R. Evid. 902(11).................................................15

Fed. R. Evid. 1003....................................................25

Fed. R. Evid. 1006.................................................18, 19

Federal Rules of Evidence 404.........................................26

Other Authorities

Federal Evidence § 609.20.............................................22

x

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. STATEMENT OF THE CASE

3

### A. Summary of the Facts

4      Defendant BABAK BROUMAND ("defendant") is a former Special Agent

5    of the FBI.  While working as an FBI Special Agent, defendant

6    monetized his access to sensitive law enforcement information for his

7    own personal gain.  Defendant conspired with an attorney, E.S., who

8    was connected to organized crime, who richly rewarded defendant with

9    cash, cashier's checks, escorts, a Ducati motorcycle, and hotel stays

10   in exchange for defendant querying sensitive law enforcement

11   databases and sharing the results with ES, in order to help E.S. and

12   his associates avoid prosecution and law enforcement monitoring.

13   (Dkt. 49, First Superseding Indictment ("FSI") ¶¶ 1-7; Dkt. 1,

14   Criminal Complaint ("Compl.") ¶¶ 5, 14-16.)

15      Beginning no later than January 2015 and continuing through at

16   least December 2018, defendant abused his federal employment for his

17   own personal profit.  More specifically, defendant conspired with

18   E.S., an attorney engaged in criminal conduct and associated with a

19   criminal organization to commit bribery of a public official.  In

20   exchange for cash, checks, private jet flights, hotel stays, meals,

21   and other items of value, defendant provided various services and

22   official acts for E.S.  For example, defendant regularly looked up

23   information in confidential law enforcement databases for E.S.  That

24   information ranged from determining whether individuals E.S.

25   associated with, or was contemplating associating with, were under

26   investigation to accessing information about and relaying information

27   to E.S. himself.

28

1

In sum, in exchange for things of value, defendant conducted law enforcement database inquiries to provide information to E.S. to help him avoid law enforcement detection and monitoring.

### B.   Overview of the Conspiracy

In a conspiracy beginning no later than January 2015, and continuing to at least December 2018, defendant Babak Broumand, then an FBI agent assigned to a National Security squad in San Francisco, California, provided "protection" to E.S, in exchange for $10,000.00 per month, and other benefits. (FSI ¶¶ 1-7; Compl. ¶¶ 5, 14-16.)

In exchange for cash and checks, totaling over $150,000, luxury hotel stays, "escort" services, a Ducati motorcycle, and other gifts, defendant accessed sensitive law enforcement databases at the behest of E.S., informing him of whether a person or entity was under investigation.  Defendant conducted or agreed to conduct database inquiries and use the results to shield E.S.'s (and defendant's) illegal activity from law enforcement scrutiny. (FSI ¶¶ 7a, b; FSI Overt Acts ("OA") 1-2, 4, 7, 9, 20, 22-27, 46-47, 51, 54-55.)

To conceal the money derived from his corrupt partnership with E.S., defendant deposited the bribe payments, including large sums of cash, into a corporate bank account he controlled, Love Bugs, LLC, and on at least one occasion laundered other bribery proceeds in the form of a $30,000 check through a bank account controlled by his parents.  (Id. ¶¶ 3, 8, OA 12, 15-18, 39, 41.)

To further conceal their corrupt relationship, defendant made false statements to financial institutions, the FBI and FBI agents, and conspired with E.S. to falsely portray E.S. as an FBI source.

(FSI ¶¶ 7 c, d, OA 21, 33-34, 44-45, 49, 53, 56, 59-63; Compl. ¶¶ 75-87, 99-101.)

**C.   The Charges**

On June 30, 2021, a grand jury charged defendant in a six-count First Superseding Indictment with conspiracy to commit bribery of a public official, in violation of 18 U.S.C. § 371 (Count One), with additional overt acts, bribery of a public official in violation of 18 U.S.C. § 201 (Counts Two, Three, and Four), monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (Counts Five and Six), and two forfeiture allegations. (Dkt. 49.)  (The original indictment was returned on June 12, 2020.)

**D.   Origins of the Corrupt Relationship Between Defendant and E.S.**

E.S. first met defendant in the Fall of 2014 through defendant's law school friend, H.M., who with A.K., was E.S.'s law partner at Beverly Hills law firm Pillar Law Group.  (Compl. ¶ 14.)

E.S. later invited defendant and others on a trip to Las Vegas where E.S. hosted a house party and rented a house for the weekend. E.S. noticed that defendant had expensive taste, was wearing a Rolex watch and Gucci belt, and saw an opportunity to recruit defendant to help E.S. evade law enforcement detection.  E.S. began cultivating a friendship with defendant.  E.S. asked defendant if he would be willing to "do something on the side" to make some additional money, an offer that defendant accepted. (Id.)

In early 2015, E.S. began paying defendant approximately $10,000 per month for information and protection.  E.S. initially asked defendant to search E.S.'s name in an FBI database.  If there was law

3

enforcement interest in E.S., E.S. requested that defendant attempt to "defuse" the interest in E.S.  (Id.)

**E.  Database Searches in Furtherance of the Conspiracy**

In furtherance of the conspiracy, defendant made numerous confidential law enforcement database searches including repeated searches of E.S.'s associate Levon Termendzhyan, Termendzhyan's business partner, Baran Korkmaz also known as Selgan Baran Korkmaz ("bk," "sbk,") and Termdenzhyan's companies, SBK Holdings and Noil Energy Group, E.S. and his law firm, Pillar law group, corrupt HSI agent Felix Cisneros, and E.S.'s associates C.P. and Sam Solakyan. (FSI Overt Acts 1-2, 4, 7, 9, 20, 22-27, 46-47, 51, 54-55.) Defendant then cryptically or directly shared with E.S. confidential information gleaned from those searches.  (FSI OA 3, 24, 26, 40, 42.)

1.   Levon Termendzhyan and Baran Korkmaz

E.S. worked for and with Termendzhyan.  Termendzhyan was ultimately prosecuted in U.S. District Court in the District of Nevada for a $500 million biofuels fraud scheme where he utilized the corporate entities Noil Energy Group, SBK Holdings, Inc. and SBK Holdings, USA.

Baran Korkmaz, Termendzhyan's business partner, is a Turkish citizen who ran Termdenzhyan's business in Turkey and allegedly laundered over $133 million of Termdenzhyan's fraud proceeds through Turkey.  He has been charged in the District of Utah and is pending extradition from Switzerland.  (Dkt. 72 at Exh 5 (Korkmaz press release).)

In furtherance of their conspiracy, and despite an actual Los Angeles FBI investigation into Termendzhyan, in February 2016, E.S.

4

requested that defendant hire private investigators to surveil Termendzhyan and to make it seem as though the FBI was requesting the surveillance.  (FSI, OA 32.)

        2.   Sam Solakyan Search

At the request of E.S., who was interested in going into business with Sam Solakyan, defendant searched the name "Sam Solakyan" in FBI databases, saw that Solakyan was then under investigation by the FBI in a San Diego-based health care fraud case, and told Individual A to "stay away" from Solaykan, and that he was "trouble."  (FSI OA 24-25; Compl. ¶ 27.)

        3.   C.P.

C.P. was a pornography producer with whom E.S. was in contact. In furtherance of the conspiracy, defendant searched her name in FBI databases.  (FSI OAs 23-24.)

**F.   The Ducati Motorcycle Bribe Payment**

E.S. bought defendant a Ducati motorcycle as a bribe payment for allegedly assuring that, one of E.S.'s customers, a Qatari royal family member ("QRFM") was not on a terrorist watch list. (FSI OA 14, Count Two.) E.S. assisted QRFM in purchasing expensive luxury vehicles and illegally purchasing Demerol, a controlled substance.

**G.   Cash And Check Bribe Payments**

        1.   Defendant Receives Regular Cash Bribe Payments and Two $30,000 Checks Between January 2015 and May 2016

Starting in approximately January 2015, E.S. paid defendant on average $10,000 a month, mostly in cash.  The payments, typically paid with $100 bills, $5,000 or $10,000 at a time, were made only when they saw each other in person when defendant traveled to Southern California.  (Compl. ¶ 14, 47-48.)

1   There were also two bribe payments in the form of $30,000

2 checks, which were laundered through defendant's corporate bank

3 account and his parents' bank account. (FSI, OAs  18, 39, Counts Five

4 and Six.)

5   The payments stopped after a May 2016 party celebrating E.S.'s

6 passing of the California Bar exam.  Cisneros, then a subject of an

7 active FBI undercover corruption investigation (now convicted of a

8 similar conspiracy with E.S.), was drunk and loud at the party

9 defendant attended in Beverly Hills.  Defendant then engaged in a

10 series of corrupt acts, including improper database queries of

11 Cisneros, confirming Cisneros was the subject of an investigation

12 handled by FBI SA Brian Adkins.  This resulted in defendant getting

13 in trouble with the FBI and telling E.S. they needed to "stop this."

14 (Compl. ¶¶ 47-48: FSI OA 46-49, 51-56.)

15    2. Analysis of Cash Deposits into Defendant's Bank
      Accounts

16

17   Analysis of defendant's Love Bugs bank accounts shows an unusual

 pattern of cash deposits during 2015 and 2016, corroborating E.S.'s

18 statements that he gave defendant cash on a regular basis.  The 2015

19 and 2016 deposits into defendant's bank accounts are markedly

20 different from both the pre-2015 and post-2016 time periods.  From

21 2012 to 2014, there were a total of 5 cash deposits for $7,700 total.

22 In 2015 there was $50,000 in cash deposits, ranging in amounts from

23 $5,000 to $14,000.  In 2016, there were over $32,000 in cash

24 deposits, ranging from $4,000 to $7,200.  Beginning in 2017 until

25 late 2018 cash deposits decreased in frequency and amount, totaling

26 $18,900 in nine deposits with only one deposit over $2,000. (Compl.

27 ¶¶ 47-55; FSI, various OA between 12-50.)

28

3.   <u>Defendant Receives $30,000 Bribe Checks In Money
Laundering Transactions; False Statements to Bank To
Conceal Bribe Proceeds</u>

a.   *First $30,000 Bribe Check and Statements to Bank*

On or about September 30, 2015, while in in Beverly Hills, California, E.S. gave defendant a $30,000 cashier's check payable from Andor'e Inc. to Love Bugs, because E.S. was making regular payments to defendant, and defendant told E.S. he needed it to "buy a house in the mountains." (Compl. ¶ 57; FSI OA 18, Counts Three and Five.)

Between September 30, 2015, and October 9, 2015, defendant deposited the $30,000 cashier's check in the Love Bugs LLC bank account and transferred the funds through two additional bank accounts in his and his wife's names.  Thereafter, defendant transferred the funds to a title company for purchase of a $1.3 million Lake Tahoe vacation house. (Compl. ¶¶ 58-60; FSI OA 18, Counts Three and Five.)

A loan officer asked questions about the source of the funds into escrow.  In response, defendant provided a copy of the $30,000 Andor'e check, and explanation letter, and created a fake bill of sale purportedly showing that he sold a speed boat to "Edgar Sargysian (sic)" for $30,000. (Compl. ¶¶ 99-101; FSI, OA 21.)  In reality, there was no sale to E.S. and the boat was sold months later for approximately $6,000 to a third-party defendant met through Craigslist. (<u>Id.</u> ¶ 101.)  To verify no pending criminal investigations, defendant ran E.S.'s name in FBI databases both before and after submitting his false statement to the bank. (FSI OAs 20, 22.)

                         **b.**    *Second $30,000 bribe check from straw entity laundered through defendant's parents' bank account back to Love Bugs LLC*

In March 2016, defendant solicited another $30,000 check from E.S., this time payable from ARCA Capital, a E.S. controlled entity, to defendant's mother, which was deposited into defendant's parents' bank account. Weeks later, $29,300 of the funds were transferred to the Love Bugs LLC bank account and used to make a payment on the Love Bugs American Express credit card, which defendant used for personal expenses. (Compl. ¶¶ 62-64; FSI OA 39, Counts Four and Six.)

**H.**    **Attempts to Falsely Portray E.S. as Source In Furtherance of Conspiracy**

Defendant and E.S. conspired to make it falsely appear that E.S. was a legitimate FBI "source" to protect E.S. from law enforcement and conceal the true nature of their corrupt relationship. (FSI ¶¶ 7 c, d, OA 10, 33-34, 45, 53, 59.)

**I.**    **False Statements to Other FBI Agents In Furtherance of the Conspiracy**

Among defendant's myriad false statements to conceal his corrupt relationship with E.S. were statements defendant made to the Los Angeles FBI agent in charge of the FBI's investigation of Termendzhyan. Early in the conspiracy, defendant arranged to travel to Los Angeles on a Friday morning purportedly to introduce the Los Angeles-based FBI agent to a "source," e.g. E.S. Instead, after meeting with the Los Angeles agent for a few minutes, defendant met with E.S., failed to answer phone calls from the Los Angeles Agent for hours, and then falsely told the agent he had already returned to San Francisco. In reality, defendant stayed the entire weekend at

the luxury Montage Hotel in Beverly Hills as E.S.'s guest in a room costing $1,500.  (Compl. ¶¶ 18-21; FSI OA 10-11.)

### J.    Defendant Conceals His Bribe Payments on Mandatory Financial Disclosure Forms

Because of his security clearances, defendant was required by Presidential Order and FBI policy to complete annual financial disclosure forms.  Defendant filed financial disclosure forms for 2015-2017, which failed to disclose E.S. gave him the Ducati, cash, and the two $30,000 checks.  It was only in 2018, shortly after the DOJ-OIG informed defendant that he was under investigation, in an attempt to further conceal the conspiracy that defendant finally reported the receipt of a $30,000 "loan" from E.S., albeit over 2 years late and falsely characterized as a "loan." (FSI OA 44, 60, 62.)

## II.   SCHEDULING MATTERS

### A.    The Government's Case-in-Chief

Jury trial is set for September 13, 2022, at 9:00 a.m. Excluding cross-examination, the government expects its case-in-chief to last four to six days.  The government plans to call approximately 25 witnesses, including multiple federal agents, summary witnesses for digital evidence, summary and/or expert testimony for defendant's database searches, summary and/or expert testimony for a database search performed by Felix Cisneros, Jr., which overlaps with the evidence in this case, and summary financial testimony.

### B.    Stipulations

Defendant has stipulated to the authenticity of bank, financial, and business records, thus largely obviating the need to call

document custodians.[1]  (Dkt. 165.)  Defendant has also stipulated to the fact that relevant financial institutions were engaged in, and conducted activities which affected, interstate or foreign commerce, a fact relevant to proving the money laundering counts (Counts Five and Six).  (Dkt. 177.)

### C.  Potential Defenses

Defendant has not given notice of any intent to rely on any defense of mental incapacity, alibi, or any other affirmative defense.  Therefore, to the extent defendant may attempt to rely on such a defendant, the government reserves the right to object and to move to preclude it.

### D.  Motion in Limine and Jury Instructions

The government has not filed any motions in limine.  Defendant has filed a motion in limine to preclude much of the government's evidence.  (Dkt. 173, Motion in Limine (#1-16).)  The government filed an opposition. (Dkt. 188.)

The government filed government's proposed jury instructions. (Dkt. 187)[2].  Defendant filed proposed jury instructions.  (Dkt. 189.) The government will submit an exhibit list on the first day of trial.

## III. CRIMINAL FORFEITURE

In addition to setting forth criminal charges, the First Superseding Indictment in this action contains criminal forfeiture allegations.  In the event that defendant is found guilty of one or

---

[1] The defense has reserved its right to object to the relevance of the business records.

[2] Over a four-week period, defendant repeatedly declined the government's request to meet and confer on jury instructions.

more charges associated with a forfeiture allegation, the Court must determine whether defendant's interest in the associated property should be forfeited.  The government intends to introduce all evidence relevant to forfeiture in the guilt phase of the trial.  The government will file a supplemental brief setting forth the relevant forfeiture procedures in the event of defendant's conviction on counts giving rise to forfeiture.

## IV.  LEGAL ISSUES

The elements of all charged offense are set forth in the government's proposed jury instructions filed September 6, 2022. (Dkt. 187.)  The following legal issues may also arise.

### A.  Aiding and Abetting

Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense.  United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005).  The defendant's conduct need not facilitate each and every element of the crime; a defendant can be convicted as an aider and abettor even if the defendant's conduct "relates to only one (or some) of a crime's phases or elements." Rosemond v. United States, 134 S. Ct. 1240, 1246-47 (2014).  The intent requirement is satisfied when a person actively participates in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense.  Id. at 1248-49. The government is not required to prove precisely which person actually committed the crime and which person aided and abetted.  Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed.).

## V.   EVIDENTIARY ISSUES

### A.   Defendant's Statements, Adoptive Admissions, and Agent Admissions

The government intends to admit statements made by defendant. Statements by a party opponent when offered against that party are excluded from the hearsay definition. Fed. R. Evid. 801(d)(2)(A). Thus, defendant's statements may be admitted against the defendant.

In addition, statements that defendant adopted or that were made by an agent of defendant on a matter within the scope of that agency relationship are similarly admissible. Fed. R. Evid. 801(d)(2)(C), (D).  Under this theory, statements made by defendant's co-workers in response to requests for information or assistance from defendant were adopted by defendant.

Moreover, as set out below, statements by a co-conspirator during and in furtherance of the conspiracy are admissible. Fed. R. Evid. 801(d)(2)(E).

### B.   Co-Conspirator Statements

The government will seek to introduce email and text message correspondence between defendant, E.S., and others, in 2015 to 2017, during and in furtherance of their bribery conspiracy, and in late 2014.  These statements will pertain to and help explain how the conspiracy started and operated.

A statement made by one co-conspirator or co-schemer during the course and in furtherance of the conspiracy or scheme may be used against another conspirator or co-schemer because such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987).  A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no

12

independent inquiry into reliability is needed. Bourjaily, 483 U.S. at 183-84; United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir. 1987), amended, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E) requires a foundation that: (1) the declaration was made during the life of the conspiracy; (2) the declaration was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and defendant's connection to it.  Bourjaily, 483 U.S. at 173, 181; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990).  These foundational requirements must be established by a preponderance of the evidence.  Bourjaily, 483 U.S. at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989).  To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  United States v. Aramula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v. Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988).

## C.   Defendant's Statements Inadmissible When Proffered by Defendant

The government intends to introduce certain statements made by the defendant.  Under Rule 801(d)(2), a defendant's prior statement is admissible if offered against him (or his co-conspirators, under Rule 801(d)(2)(E), as addressed above).  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (stating that "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay," but that "non-self inculpatory statements are inadmissible hearsay").  A statement of a party opponent is not hearsay if the statement is offered against a

party and is his own statement in either his individual or
representative capacity, and it relates to the offense in question.
Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).
Moreover, a statement need not be incriminating to be an admission.
Id. at 408.

However, a defendant may not offer their own statements, or the
statements of their co-conspirators.  Ortega, 203 F.3d at 682 (citing
Williamson v. United States, 512 U.S. 594, 599 (1994)); see also
United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)
(district court properly sustained government's hearsay objection to
defendant's attempt to solicit defendant's post-arrest statements
during cross-examination of FBI agent).

The Ninth Circuit held in Ortega that the defendant's non-self
inculpatory statements were inadmissible "even if they were made
contemporaneously with other self-inculpatory statements." Ortega,
203 F.3d at 682 (citing Williamson, 512 U.S. at 599).  The Ninth
Circuit held that "[i]f the district court [had] ruled in his favor,
[the defendant] would have been able to place his exculpatory
statements before the jury without subjecting [himself] to cross
examination, precisely what the hearsay rule forbids. Thus the
district court did not abuse its discretion when it limited [the
defendant's] ability to elicit his exculpatory hearsay statements on
cross-examination." Id. at 682 (internal punctuation and citation
omitted).

D. **Business Records**

The government will offer bank, credit card, hotel, auto
dealership, and casino records pursuant to Federal Rule of Evidence

14

803(6), which carves out an exception to the hearsay rule for business records.

Moreover, even if there were some dispute, the bank records are plainly admissible even without a stipulation.  A document is admissible under Rule 803(6) where the following foundation is laid: (1) the document was made or transmitted by a person with knowledge at or near the time of the incident recorded, (2) the document was kept in the course of a regularly conducted business activity, and (3) making that record was a regular practice of that activity. United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990); Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 717 (9th Cir. 1990), overruled on other grounds by Hunter v. Bryant, 502 U.S. 224 (1991). In determining if these foundational facts have been established, the court may consider hearsay and other evidence not admissible at trial. See Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United States, 483 U.S. 171, 178-79 (1987).

Business records are self-authenticating when accompanied by a written declaration of a "custodian or another qualified person" establishing the same requirements as Rule 806(6) as described in the paragraph above. Fed. R. Evid. 902(11) (citing Fed. R. Evid. 806(6)(A)-(C)).

In the absence of a 902(11) certificate, the foundation may also be established either through a custodian of records or "another qualified witness." Fed. R. Evid. 803(6)(D). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993) (quoting Ray, 930 F.2d at

1370) (internal quotation marks omitted).  The government does not
need to establish when and by whom the document was prepared.  Ray,
930 F.2d at 1370.

Challenges to the accuracy or completeness of the business
records ordinarily goes to the weight of the evidence and not its
admissibility.  See, e.g., La Porte v. United States, 300 F.2d 878,
880 (9th Cir. 1962).  Because Rule 803(6) represents a firmly rooted
hearsay exception, if non-testimonial evidence meets the requirements
for admission under the rule, no further showing of reliability is
necessary for admission under the Confrontation Clause.  See Ohio v.
Roberts, 448 U.S. 56, 66 n.8 (1980), overruled on other grounds by
Crawford v. Washington, 541 U.S. 36 (2004); Ray, 930 F.2d at 1371;
United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United
States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988); see also
Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S. Ct. 2527,
2539-40 (2009) ("[b]usiness and public records are generally
admissible absent confrontation not because they qualify under an
exception to the hearsay rules, but because—having been created for
the administration of an entity's affairs and not for the purpose of
establishing or proving some fact at trial—they are not
testimonial"); United States v. Naranjo, 634 F.3d 1198, 1213-14 (11th
Cir. 2011) (holding business records are "not testimonial").

Moreover, computer printouts that are compilations of data
regularly maintained by a business are admissible as records of
regularly conducted activity pursuant to Rule 803(6).  See United
States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question
as to the accuracy of the printouts, whether resulting from incorrect

16

data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility."); United States v. Bonallo, 858 F.2d 1427, 1436 (9th Cir. 1988) ("The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness. The mere possibility that the logs may have been altered goes only to the weight of the evidence not its admissibility."); U-Haul Int'l, Inc. v. Lumbermans Mutual Cas. Co., 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer records kept in the regular course of business activity properly admitted under Rule 803(6)).

**E.   Expert Testimony**

As stated above, the government has given notice of intent to elicit expert testimony regarding Sentinel from Ryan Cohan and TECS from SA Feliciano.  If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, an expert qualified by "knowledge, skill, experience, training or education" may provide opinion testimony on the issue in question, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principle and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case."  Fed. R. Evid. 702.

An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703. An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact however, no expert

witness testifying with respect to the mental state or condition of a defendant may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone. Fed. R. Evid. 704. The court has broad discretion to determine whether to admit expert testimony. See, e.g., United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir. 1988).

### F. Summary Charts

To streamline the presentation of evidence for the jury, the government intends to use charts to summarize defendant's: (1) relevant queries of the law enforcement databases, and other queries that he caused; (2) interactions and communications with co-conspirators, co-workers, and other FBI agents, including text messages, emails, phone calls; (3) defendant's travel, including GPS location data, hotel, and credit card bills; (4) defendant's official FBI travel; and (5) financial analysis, including tracing of bribe check payments, cash deposits, and other financial information. The government also intends to use a small chart to summarize a small number of database queries performed by then HSI Agent Felix Cisneros where there is overlap with evidence in the present case. Charts and summaries of evidence are governed by Federal Rule of Evidence 1006, which permits the introduction of charts, summaries, or calculations of voluminous writings, recordings, or photographs which cannot conveniently be examined in court. See Fed. R. Evid. 1006. Accordingly, a summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon

which the summary is based are voluminous, admissible, and available for inspection.  Id.; see also United States v. Rizk, 660 F.3d at 1125, 1130—31 (9th Cir. 2011).  All that is required for the rule to apply is that the underlying writings be voluminous and that in-court examination not be convenient.  United States v. Scales, 594 F.2d 558, 562 (6th Cir. 1979).  Although the materials underlying the summary must be "admissible," they need not themselves be "admitted" into evidence.  United States v. Meyers, 847 F.2d 1408,1412 (9th Cir. 1988).

In addition, the summary chart must be accurate, authentic, and properly introduced.  Scales, 594 F.2d at 563.  Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records upon which the chart is based and (2) have knowledge of the analysis of the records referred to in the chart.  Id.  Neither of these requirements necessitates any special expertise.  Id.  The person who supervises the compilation of the summary chart is the proper person to attest to its authenticity and accuracy.  Id. The use of other persons in the preparation of summary evidence goes to the weight of the evidence, not its admissibility. See United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984).

In addition, summary charts may be used by the government in its opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove." United States v. De Peri, 778

1   F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart);

2   United States v. Rubino, 431 F.2d 284, 289-90 (6th Cir. 1970) (same).

3       Also, apart from Rule 1006, a summary of evidence may be

4   presented to the jury with proper limiting instructions.  Rule 611(a)

5   recognizes that the trial court must "exercise reasonable control

6   over the mode and order of examining witnesses and presenting

7   evidence so as to: (1) make those procedures effective for

8   determining the truth; [and] (2) avoid wasting time . . ."  Fed. R.

9   Evid. 611(a); see also United States v. Gardner, 611 F.2d 770, 776

10  (9th Cir. 1980) (in tax case, use of chart summarizing defendant's

11  assets, liabilities, and expenditures "contributed to the clarity of

12  the presentation to the jury, avoided needless consumption of time

13  and was a reasonable method of presenting the evidence").

14      Finally, summary charts need not contain the defendant's version

15  of events. See United States v. Lemire, 720 F.2d 1327, 1349 (D.C.

16  Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir.

17  1964) (rejecting defendant's argument that summary should be excluded

18  because it did not contain his version of the case; accepting that

19  argument "would be to hold that if a defendant had an alibi, no

20  matter how improbable, then no expert could prepare a summary of the

21  evidence tending to prove guilt").

22      **G.   Financial Evidence as Direct Evidence and As Proof Of**
        **Motive to Commit Crime**

23

24      Financial evidence of the bribe check payments, cash deposits to

25  defendant's bank accounts, and tracing of those proceeds, is relevant

26  direct evidence of the bribery conspiracy, bribery, and money

27  laundering charges.

28

In addition, evidence of a defendant's finances, and living beyond his or her means is admissible for demonstrating motive to commit a crime with financial gain. "It is well-settled in the Ninth Circuit that financial difficulty is relevant to a defendant's motive to participate in a crime which results in financial gain." United States v. Fowler, 927 F.2d 611 (9th Cir. 1991) (unpublished); United States v. Saniti, 604 F.2d 603, 604 (9th Cir. 1979) ("Evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain."); see also United States v. Reyes, 660 F.3d 454, 463–64 (9th Cir. 2011) (government "allowed to introduce evidence about [defendant's] motivation for his involvement in the backdating scheme, his scienter, even if such evidence is generally not sufficient, standing alone, to prove intent to defraud." (citation omitted)); United States v. Holden, 625 F. App'x 316, 318 (9th Cir. 2014) (evidence of wealth admissible where "the district court allowed the evidence as relevant to motive); United States v. Weygandt, 681 F. App'x 630, 633 (9th Cir. 2017) (same).

### H.   Impeachment

Federal Rule of Evidence 608(a) permits attacks on a witness's credibility through testimony about the witness's general character or reputation for truthfulness or untruthfulness. Fed. R. Evid. 608(a).  However, extrinsic evidence (including testimony from third party witnesses) about the witness's specific instances of conduct for the purpose of attacking the witness's character for truthfulness or untruthfulness is prohibited, except in the case of prior

convictions.  Fed. R. Evid. 608(b).  Counsel may only probe specific instances of conduct probative of a witness's character for truthfulness or untruthfulness during cross-examination (without proffering extrinsic evidence) with respect to (1) the testifying witness or (2) other witnesses about whose character the witness has testified about.  Id.  Thus, counsel may not offer testimony or any other extrinsic evidence about specific instances of conduct for the purpose of attacking a testifying witness's credibility.

### I.   Impeachment by Prior Convictions

Certain witnesses' character for truthfulness may be attacked by way of prior convictions, pursuant to Federal Rule of Evidence 609. The scope of inquiry permitted when lodging such attacks are limited. "Absent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction. Generally, only the prior conviction, its general nature, and punishment of felony range are fair game . . . ." United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) (alterations adopted) (citations omitted) (internal quotation marks omitted).  Exceptional circumstances may include, for example, when a witness attempts to "explain away" prior convictions by offering their "own version of the underlying facts" that tend to create a false impression about the conviction.  See United States v. Perry, 857 F.2d 1346, 1352 (9th Cir. 1988).  Otherwise, the scope of examination regarding prior convictions should be limited to the "to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." Weinstein's Federal Evidence § 609.20[2] at 609-57-60.

**J.    Truthfulness Provisions of a Proffer or Plea Agreement**

The government will call a cooperating witness, who was charged in connection with their involvement in the bribery conspiracy but has pleaded guilty pursuant to a cooperation plea agreement.  The plea agreement includes a provision that requires that defendant to fully cooperate with the government, including by testifying as a witness if called upon to do so.  The plea agreement also includes a provision specifically requiring the cooperating witnesses to be honest and forthcoming, and to render truthful testimony.

"Eliciting testimony on direct examination that a witness entered into a plea agreement that requires truthful testimony may constitute vouching."[3]  United States v. Dorsey, 677 F.3d 944, 953 (9th Cir. 2012).  However, "referring to a plea agreement's mandate to be truthful does not constitute vouching for a witness if such references are 'made in response to an attack on the witness's credibility because of his plea bargain,' including an attack in defense counsel's opening statement." Id. (quoting United States v. Monroe, 943 F.2d 1007, 1013–14 (9th Cir. 1991)); see also id. at 954 ("Defense counsel implied in his opening statement that Fomby was a liar and that he was biased because he got 'a deal from the government.' The prosecutor permissibly responded to this attack by

---

[3] If such testimony is inadvertently elicited on direct examination before any attack on the cooperating witness's credibility in opening or otherwise, a curative instruction would be in order, see United States v. Shaw, 829 F.2d 714, 717–18 (9th Cir. 1987), and of course defense counsel must be permitted fulsome cross examination, see United States v. Schoneberg 396 F.3d 1036, 1043 (9th Cir. 2005) (finding error where truthfulness provision was elicited on direct examination, and defense counsel's cross examination "was cut off" in a manner that – when viewed alongside the language of the curative instructions – "vitiated" defense counsel's point).

eliciting testimony that Fomby's plea agreement required him to tell the truth. When the defense opens a door, it should not be surprised to see the prosecutor enter.").

Here, the government anticipates that the cooperating witness's credibility will be attacked in opening statement by defense counsel. If so, the government should be permitted to elicit testimony regarding the truthful testimony provision during direct examination.

### K.   Authentication and Identification

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Federal Rule of Evidence 901(a) requires that the government "make only a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  Once the government meets this burden, "[t]he credibility or probative force of the evidence offered is, ultimately, an issue for the jury." Black, 767 F.2d at 1342.

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. The court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion.  Id.  Factors the court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it.  Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

### L.    Photographs

Photographs are generally admissible as evidence.  See United States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977) (photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question. See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

### M.    Duplicates

"A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

### N.    Cross-Examination

The scope of a cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b).  The district court has broad authority to control the extent of cross-examination, and "in its discretion may limit cross-examination in order to preclude repetitive questioning, upon determining that a particular subject

1  has been exhausted, or to avoid extensive and time-wasting

2  exploration of collateral matters." <u>United States v. Weiner</u>, 578 F.2d

3  757, 766 (9th Cir. 1978).

4      **O.   Inadmissibility of Defendant's Specific Prior Good Acts and
            Other Issues Regarding Character Evidence**

5      This Court should preclude defendant from introducing,

6  attempting to introduce, or mentioning in opening statement any

7  evidence of prior "good acts," such as awards, community service or

8  involvement, positive performance evaluations, the absence of

9  complaints, or other specific acts relating to his job performance or

10  good character.  This evidence is improper character evidence under

11  Federal Rules of Evidence 404 and 405.[4]  The Supreme Court has

12  recognized that character evidence -- particularly cumulative

13  character evidence -- has weak probative value and great potential to

14  confuse the issues and prejudice the jury.  <u>Michelson v. United</u>

15  <u>States</u>, 335 U.S. 469, 480, 486 (1948).  The Court thus has given

16  trial courts wide discretion to limit the presentation of character

17  evidence.  <u>Id.</u> at 486.

18      Rule 404(a)(1) requires that character evidence must relate to a

19  "pertinent trait."  Evidence that defendant received awards or

20  commendations or certificates of appreciation or that he performed

21  good community service acts is not relevant to any pertinent trait at

22  issue in this case.  <u>See</u> <u>United States v. Washington</u>, 106 F.3d 983,

23  1000-01(D.C. Cir. 1997) (police officer's commendations were not

24

25      ───────────────
        [4] Much of this evidence, such as performance evaluations, may
26  also be inadmissible hearsay.  <u>United States v. Barry</u>, 814 F.2d 1400,
    1404 (9th Cir. 1987) (finding that evidence of prior acts pursuant to
27  Federal Rule of Evidence 404 and 405 must be offered in a form
    admissible under the Federal Rules; letters of commendation were
28  hearsay).

admissible because his performance as a police officer was neither "pertinent" to nor an essential element of the charged offenses, even where the government had introduced evidence of prior bad acts to prove knowledge, intent, and predisposition); United States v. Santana-Camacho, 931 F.2d 966, 967-68 (1st Cir. 1991) (affirming exclusion of evidence that defendant was a "kind person" and "good family man," because those traits were not pertinent to alien smuggling charges against defendant); United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1989) (finding that evidence of officer's prior commendations were properly excluded because "the traits which they purport to show -- bravery, attention to duty, perhaps community spirit -- were hardly 'pertinent' to the crimes [charged].").

Moreover, even if admissible, the form of the character evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods by which character evidence may be introduced. Rule 405(a) specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion. Accordingly, if a defendant wishes to introduce pertinent character evidence, he must do so through reputation or opinion testimony only. United States v. Camejo, 929 F.2d 610, 613 (9th Cir. 1991) (stating that evidence of specific instances is not admissible to prove the defendant's good character); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) (stating that testimony of defendant regarding his role as government intelligence operative, offered to show that he was a "patriotic," "pro-government" individual unlikely to engage in acts of terrorism and to prove his lawful character, was properly excluded

as an attempt to prove character by specific instances of conduct); French v. United States, 232 F.2d 736 (5th Cir. 1956) (stating that it is not permissible to show good character of the defendant by evidence of particular and specific facts as, for example, battle citations).

Furthermore, defendant may not introduce specific instances of his purported character to be law-abiding, even if the Court permitted defendant to offer reputation or opinion testimony on the subject. United States v. Diaz, 961 F.2d 1417, 1418 (9th Cir. 1992) (stating that it was proper for defendant's character witness to testify that defendant was law-abiding but improper for the witness to testify concerning defendant's specific character as being non-prone to committing drug deals); see Michelson, 335 U.S. at 476–77 (stating that while a defendant may show a character for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible).

If the Court permits defendant to introduce reputation or opinion testimony about his good character, the government must be allowed to rebut such testimony with evidence of defendant's prior bad acts. United States v. McGuire, 744 F, 2d 1197, 1204 (9th Cir. 1984) (stating that it is well-settled that "[o]nce the defendant has 'opened the door' by offering evidence as to his good character, the prosecution may rebut that evidence."). The government may do so through cross-examination of a defendant's witnesses or through its own rebuttal witnesses. For example, the government may elicit from rebuttal witnesses that the defendant has a bad character or reputation:

The prosecution may pursue the inquiry with contradictory

> witnesses to show that damaging rumors, whether or not
> well-grounded, were afloat -- for it is not the man that he
> is, but the name that he has which is put in issue.

Michelson, 335 U.S. at 479.  Similarly, if defendant introduced such reputation or opinion testimony as to his allegedly law-abiding nature, the government will be entitled to cross-examine by asking about specific instances indicating contrary tendencies of defendant. Such cross-examination is proper to test whether the witness truly has knowledge of a defendant's reputation and also to determine whether that knowledge influences his or her opinion in any way. United States v. Edwards, 549 F.2d 362, 367 (5th Cir. 1981).

Finally, if defendant decides to testify, the government may elect to produce character evidence as to defendant's veracity. United States v. Melton, 739 F.2d 576, 576-89 (11th Cir. 1984) ("By choosing to testify, [the defendant] placed his creditability in issue as does any other witness.").  The government's rebuttal evidence is equally governed by the rules discussed above.

**P.   Cross-Examination of Defendant**

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues the defendant puts in dispute. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." Id. at 1354.  Moreover, a defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.  United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

29

The scope of a defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); Black, 767 F.2d at 1341.  The extent of the waiver is determined by whether the question reasonably relates to subjects covered by defendant's direct testimony.  United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

If he chooses to testify, defendant's credibility and state of mind will be central.  As the Ninth Circuit has held, Federal Rule of Evidence 608(b) "specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility[,]" which is why "[e]vidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness." United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

**Q.   Discretion as to Order of Proof**

The order of proof is a matter committed to the discretion of the district court, which may conditionally introduce evidence or otherwise permit deviations from the natural order of a case.  E.g. United States v. Zemek, 634 F.2d 1159, 1169 (9th Cir. 1980); see also United States v. Perez, 658 F.2d 654, 658-59 (court may admit co-conspirator statement subject to motion to strike if foundation for admissibility not laid, so long as the motion to strike would cure any defect); United States v. Turner, 528 F.2d 143, 162 (9th Cir.

1975) ("The trial judge has wide discretion in supervising the order of proof in a conspiracy case."); <u>United States v. Avendano</u>, 455 F.2d 975, 975 (9th Cir. 1972) (calling witnesses out-of-order).

### R.    Lack of Reciprocal Discovery

The government has made requests for any reciprocal discovery to which the government was entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  Other than a short financial witness/expert witness disclosure, to date, defendant has not produced any other reciprocal discovery to the government.

## VI.    CONCLUSION

The government hereby respectfully requests leave to file supplemental trial memorandum before or during trial, as it may become appropriate.

31