STEVEN F. GRUEL (SBN213148)
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Phone: 415-533-6973
Email: attystevengruel@sbcglobal.net
www.gruellaw.com

Attorney for BABAK BROUMAND

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case Number: CR-20-224-RGK |
| Plaintiff, | |
| | **DEFENDANT BABAK BROUMAND'S NOTICE OF HEARSAY EXCEPTION DUE TO UNAVAILABLE SUBPOENAED DEFENSE WITNESS PURSUANT TO RULE 804(1); ADMISSIBLE UNDER RULES 804(b)(6); 807** |
| | **-and-** |
| | **SUPPORTING DECLARATION Of STEVEN F. GRUEL** |
| v. | |
| | **HONORABLE R. GARY KLAUSNER** |
| BABAK BROUMAND, | |
| Defendant. | **Trial Date: September 13, 2022 at 9:00 am** |

Defendant, Babak Broumand, by and through his attorney, Steven F. Gruel, hereby respectfully submits this DEFENDANT BABAK BROUMAND'S NOTICE OF HEARSAY EXCEPTION DUE TO UNAVAILABLE DEFENSE WITNESS PURSUANT TO RULE 804(1).

## NOTICE OF UNAVAILABLE SUBPOENAED DEFENSE WITNESS

A. **Statement of Facts**

H.M. is an attorney who worked with E.S. at Pillar Law Group. In the defense investigation in this case, undersigned defense counsel met with H.M. several times discussing the facts of this case as well as the charged and uncharged criminal activities of E.S.

Because of his role at Pillar Law Group and his relationship with E.S., H.M. is a percipient witness to many relevant facts in this case such as E.S.'s previous extravagant lifestyle such as buying expensive gifts for friends and his mistress, meetings at the Grand Havana Room, and trips to Las Vegas. H.M. introduced Babak Broumand to E.S. in approximately fall of 2014. Consequently, H.M. and Broumand were with E.S. on some of these Las Vegas trips and events at the Grand Havana Room.

H.M. also mentioned that E.S. was scamming Levon Termendzhyan of millions of dollars from a company called SBK Holdings USA. H.M. explained that E.S. created false "loan packages" for nonexistent loans and presented them to Termendzhyan for "hard money" loans. The loans were completely phony. Based on the false loan representations made by E.S., Termendzhyan would then wire funds from SBK to a Pillar trust account. This scam netted E.S. approximately $23,000,000.00.

H.M. also shared that E.S. had been involved in several insurance fraud schemes.

H.M. also informed the defense team that E.S. was involved in a law firm called Tribune Law Group. He provided the name of L.N. as someone who worked at Tribune Law Group that the defense should meet. Undersigned counsel directed an investigator to travel to the location for Tribune Law Group. She did photograph the law firm's sign outside the door.

On the early evening of August 11, 2022, undersigned counsel and an investigator next went to L.N.'s apartment dond spoke with her. She confirmed the existence of Tribune Law Firm

and E.S.'s association with that firm. L.N. said that to her knowledge E.S. was not practicing law but was the officer manager. She also said she worked part-time at Tribune Law Group because she worked at another firm. The defense was not informed that E.S. was working at a law firm (which may be in violation of his cooperation plea agreement) and, according to an FBI 302, E.S. was allegedly working at a hand sanitizer company owned by his father.

L.N. was served with and remains under a trial subpoena. However, she must have quickly went inside her apartment and notified E.S. of her unexpected guests and the subpoena. E.S. likely surmised that H.M. was the "source" who notified the defense about his role at Tribune Law Group because in less than 12 hours, the FBI served H.M. with a trial subpoena.

On the morning of August 12, 2022, H.M. informed defense counsel that he had been served by the FBI and was told that the prosecutors wanted to arrange an interview with him. The FBI never before showed an interest in interviewing H.M. and never in the 4 years of the investigation ever attempted to speak to him.

Later, the afternoon of that same day, August 12, 2022, defense counsel and the defense investigator met and interviewed H.M. at his office. The defense served H.M. with a trial subpoena.

On August 30, 2022, H.M. appeared at Court pursuant to the government's trial subpoena. H.M. informed defense counsel that no one from the prosecution was there to meet him at the Courtroom or explain that the trial was continued to September 13, 2022.

On September 9, 2022, the defense was contacted by attorney Stanley Friedman who said he represented witness H.M. who now suddenly intended to assert his 5th Amendment Rights and refuse to answer any questions at trial. I emailed the prosecutors about H.M.'s intentions to assert

his 5th Amendment Privilege and inquired whether the government was willing to provide H.M. with immunity. There has been no response to that inquiry.

On September 10, 2022, the government provided its 28th Production of discovery which indicated that it knew since September 1, 2022 that H.N. asserted his 5th Amendment Rights. BN 506,203.

### B. H.M. Is An Unavailable Witness Unless Granted Immunity

#### 1. The First Step

The first step is for the government to decide whether it will grant H.M. immunity. It seems reasonable to conclude that it will because it too subpoenaed H.M. Plus, because the government has never attempted to interview H.M. about this investigation or case in over 4 years it seems unlikely that he is a "target" on any wrongdoing.

The defense requests that the Court inquire if the government intends to grant immunity to H.M. If no immunity is granted, the defense then will seek a Court determination that H.M, is unavailable pursuant to Evidence Rule 804(a) and seek admissibility through the hearsay exceptions of Rules 804(b)(6) and 807.

#### 2. Rule 804(b)(6)

Rule 804(b)(6) provides:

(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability. A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result.

Here, it is highly probable that the government's trial subpoena to H.M. was the result of the interview and trial subpoena to L.N. This directly impacted the government's "star witness," E.S. Whether completely intentional or not, the government's sudden interest in H.M. certainly

unnerved him causing him to invoke the 5th Amendment. The government holds the "keys" to remedy this situation – it simply has to grant immunity and the 5th Amendment impediment disappears.

3. **Notice Pursuant Rule 807**

The Rule Provides:

Rule 807. Residual Exception

(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b) Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

Before moving to Rules 804(b)(6) or 807, we need to hear from the government on the issue of immunity.

Respectfully submitted,

Dated: September 11, 2022

By: /s/ Steven F. Gruel_____
STEVEN F. GRUEL, ESQ.
Attorney for BABAK BROUMAND

SUPPORTING DECLARATION OF STEVEN F. GRUEL

I, Steven F. Gruel, under penalty of perjury, declare and state as follows:

1. I represent defendant Babak Broumand in the above captioned matter.

2. I have meet H.M. who is an attorney who worked with E.S. at Pillar Law Group. In the defense investigation in this case, I met with H.M. several times discussing the facts of this case as well as the charged and uncharged criminal activities of E.S.

3. Because of his role at Pillar Law Group and his relationship with E.S., I believe that H.M. is a percipient witness to many relevant facts in this case such as E.S.'s previous extravagant lifestyle such as buying expensive gifts for friends and his mistress, meetings at the Grand Havana Room, and trips to Las Vegas. H.M. introduced Babak Broumand to E.S. in approximately fall of 2014. Consequently, H.M. and Broumand were with E.S. on some of these Las Vegas trips and events.

4. H.M. also told me and an investigator that E.S. was scamming Levon Termendzhyan of millions of dollars from a company called SBK Holdings USA. H.M. explained that E.S. created false "loan packages" for nonexistent loans and present them to Termendzhyan for "hard money" loans. The loans were completely phony. Based on the false loan representations made by E.S., Termendzhyan would then wire funds from SBK to a Pillar trust account. This scam netted E.S. approximately $23,000,000.00. H.M. also shared that E.S. had been involved in several insurance fraud schemes.

5. H.M. told me and an investigator that E.S. used H.M.'s address for his home as part of E.S.'s scam of phony hard money loans against Levon Termendzhyan.

6. H.M. also informed the defense team that E.S. was involved in a law firm called Tribune Law Group. He provided the me with the name of L.N. as someone who worked at

Tribune Law Group the defense should meet.  Undersigned counsel directed an investigator to travel to the location for Tribune Law Group.  She did photograph the law firm's sign outside the door.

7.   On the early evening of August 11, 2022, I along with an investigator next went to L.N.'s apartment and spoke with her. She confirmed the existence of Tribune Law Firm and E.S.'s association with that firm. L.N. said that to her knowledge E.S. was not practicing law but was the officer manager. She also said she worked part-time at Tribune Law Group because she worked at another firm.

8.   The defense was not informed that E.S. was working at a law firm (which may be in violation of his cooperation plea agreement) and, according to an FBI 302, E.S. was allegedly working at a hand sanitizer company owned by ES's father.

9.  L.N. was served with and remains under a trial subpoena. However, she must have quickly went inside her apartment and notified E.S. of her unexpected guests with the trial subpoena.

10.  E.S. likely surmised that H.M. was the "source" who notified the defense about his role at Tribune Law Group because in less than 12 hours, the FBI served H.M. with a trial subpoena. On the morning of August 12, 2022, H.M. informed me that he had been served by the FBI and was told that the prosecutors wanted to arrange an interview with him.  It is my understanding that the FBI never in the 4 years of the investigation ever attempted to speak to H.M.

11. Later, the afternoon of that same day, August 12, 2022, defense counsel and the defense investigator met and interviewed H.M. at his office. The defense served H.M. with a trial subpoena.

12. On August 30, 2022, H.M. appeared at Court pursuant to the government's trial subpoena. H.M. informed me that no one from the prosecution was there to meet him at the Courtroom or explain that the trial was continued to September 13, 2022.

13.  On September 9, 2022, the defense was contacted by attorney Stanley Friedman who said he represented witness H.M. who now suddenly intended to assert his 5th Amendment Rights and refuse to answer any questions at trial. I emailed the prosecutors about H.N.'s intentions to assert his 5th Amendment Privilege and inquired whether the government was willing to provide H.M. with immunity. There has been no response to that inquiry.

14.  On September 10, 2022, the government provided its 28th Production of discovery which indicated that it knew since September 1, 2022 that H.N. asserted his 5th Amendment Rights.  BN 506,203.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration is executed this 11th day of September, in San Francisco, California.

/*Steven F. Gruel*
STEVEN F. GRUEL