STEVEN F. GRUEL (SBN213148)
315 Montgomery Street, 10th Floor
San Francisco, CA 94104
Phone: 415-533-6973
Email: attystevengruel@sbcglobal.net
www.gruellaw.com

Attorney for BABAK BROUMAND

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | Case Number: CR-20-224-RGK |
| Plaintiff, ) | |
| ) | **DEFENDANT BABAK BROUMAND'S NOTICE OF MOTION AND MOTION REGARDING ADMISSION OF TESTIMONY HEARSAY EXCEPTION DUE TO UNAVAILABLE SUBPOENAED DEFENSE WITNESS AND PURSUANT TO RULE 804(1); ADMISSIBLE UNDER RULES 804(b)(6); <u>NOTICE</u> UNDER 807; IN LIGHT OF <u>GOVERNMENT'S DECISION TO NOT GRANT H.M. IMMUNITY</u> TO TESTIFY AT TRIAL** |
| v. ) | |
| BABAK BROUMAND, ) | **HONORABLE R. GARY KLAUSNER** |
| Defendant. ) | **Trial Date: September 20, 2022 at 9:00 am** |
| _____ ) | |

Defendant, Babak Broumand, by and through his attorney, Steven F. Gruel, hereby respectfully submits this DEFENDANT BABAK BROUMAND'S MOTION AND NOTICE OF

*DEFENDANT BABAK BROUMAND'S NOTICE*

1

MOTION AND NOTICE IN LIGHT OF GOVERNMENT'S DECISION NOT TO GRANT H.M. IMMUNITY TO TESTIFY AT TRIAL.

DEFENDANT'S MOTION AND NOTICE TO PERMIT STATEMENT
FROME UNAVAILABLE WITNESS

### 1. Brief Statement of Facts

On September 9, 2022, the defense learned that subpoenaed defense witness H.M. intended to invoke his 5th Amendment Rights and not testify in this upcoming trial. As stated in the September 11, 2022 Notice (Dkt. #200) first mentioning this issue, H.M. has shared numerous times relevant information regarding his onetime "law" partner E.S. with the defense.

On August 12, 2022, less than a half day of the defense talking with L.N., a paralegal H.M. mentioned was associated with E.S.'s new law firm called Tribune Law Group, the FBI suddenly subpoenaed H.M.  Given that the FBI or the United States Attorney had never spoken with H.M. during the nearly 5 years of the investigation, this sudden interest by the FBI clearly unnerved H.M.   By invoking the 5th Amendment, H.M. has become an unavailable witness due to the government's actions.

Also, on September 9, 2022, the defense inquired with the prosecution whether it planned to give H.M. immunity.  This last Saturday, (September 17, 2022), the government finally replied that it did not intend to grant immunity to H.M.

Therefore, the government has elected to put in play the exceptions to the hearsay rule for an unavailable witness. As seen in the law outlined in the previously filed Notice (Dkt. # 200), fully incorporated here, the investigator should be allowed to testify as to the statements H.M. made to her on August 12, 2022.  Defense counsel was present with the investigator during this August 12, 2022 interview with H.M.  Defense counsel's Rule 807 Notice and proffer of H.M.'s statements are as follows:

<u>NOTICE OF H.M. STATEMENT FOR TRIAL FROM THE INVESTIGATOR</u>

The attorney proffer outlined below is what H.M. told undersigned counsel and the case investigator on August 12, 2022, in his law office:

H.M., A.K. and E.S. started Pillar Law Group in July, 2012. E.S. was registered as a foreign attorney. A.K. had five percent ownership, H.M. had five percent ownership, and E.S. held 90% ownership of Pillar Law Group. A.K. and A.M. had been partners for years with their own firm in Burbank. H.M. knew E.S. worked in the area as a "capper."

**Government Databases**

E.S. never told H.M. that Babak Broumand ("Broumand") ran names for him through government databases. H.M. believes that E.S. met John Balian (Balian") and Felix Cisneros ("Cisneros") through Levon Termendzhyan ("Termendzhyan"). Balian often came to their law firm and H.M. also met Cisneros at the Grand Havana two or three times for fundraisers, and they also went together to Las Vegas, Nevada. E.S. told H.M. that when Cisneros was attempting to get his brother-in-law into the United States, that Cisneros was going to designate E.S. as a confidential informant or something similar.

**Credit Card Fraud**

E.S. told E.M. that he worked "busting-out people's credit cards" and then set up their bankruptcy cases. E.S. said these clients were usually elderly, Armenian, or immigrants "who wanted some money… they go to E.S. he'd tell them 'Okay, I'll bust-out your credit card, you will get $100,000 in cash.'" Meanwhile, E.S. was making two, three hundred thousand." E.S. told H.M. has been doing this ever since he moved to the United States in 2004. E.S. also told H.M. that E.S. and an unnamed co-conspirator had an apartment on Central in Glendale, where they ran all "these things, computers…," but stopped this when he teamed up with Termendzhyan and began making millions around 2014.

**Termendzhyan at Sargsyan Office**

Termendzhyan shared their office space and paid part of the lease. Termendzhyan met with A.C. at the office, as well as some Mexican Senators. E.M. said A.C. (once with the U.S. Secret Service) and Termendzhyan were very close. E.M. E.S. and A.K. sat in on many of the above meetings both in the office and at Grand Havana Room, because Termendzhyan wanted the appearance of having attorneys behind him. E.M. was not allowed to talk to Termendzhyan, because "everything had to go through E.S."

**Sargsyan applied to Homeland Security**

In 2013 to 2014, while they were starting Pillar, E.S. attempted to become a Homeland Security agent. E.M. remembers this because the three partners argued about it because they had just invested $300,000 to $400,000 into the Beverly Hills location and E.S. all of a sudden wanted to become an agent for Homeland Security only making $50,000. E.M. stated that E.S "just wanted the power that came with the title. E.S. was declined because they saw an investigation into a credit card scheme involving E.S. opened in 2006 or 2007. Although it never went anywhere, they declined because there had been an investigation." E.S. heard about the investigation from an independent source at Homeland Security and told H.M. about it in 2014.

**E.S. Stole Termendzhyan's Money Through Bridge Loans Scheme**

E.S. presented bridge loan options to Termendzhyan. If Termendzhyan authorized the loan, Termendzhyan told his son or someone else in his group to release the money from their accounts to Pillar. The loan was due within a year and usury terms. They were usually only given to homes where there was good equity. The funds came from a hard money lender, and E.S. reportedly received 20 percent of the accrued interest as his payment. E.M. believes that in 2013 or 2014, E.S. Balian, and N. A. of Titus Realty started planning to steal from Termendzhyan from these loan deals. Balian was then on leave from the Glendale Police Department because he was suing them for racial discrimination, and Balian talked E.S. into stealing Termendzhyan's money. N.A. forged the loan documents.

SBK Holdings was also a client of Pillar's, where they had a trust account. Termendzhyan's stolen funds from Utah went into SBK's bank account. E.M. said that money going to Pillar's trust account came from SBK's bank account, which E.S. could not access. Per Mosesi, it was controlled only by Termendzhyan and his son. Because E.S. could not access Pillar's trust account, he told H.M. that he set up fake bridge loans to present to Termendzhyan. When Termendzhyan approved the disbursements, the disbursements were wired to Pillar's trust account and paid to whomever the instructions identified. Some of those payments went into ARCA, another one of E.S.'s businesses. The fake real estate documents were put together by N.A.

**E.S. bought a jet with Termendzhyan's Money But Put it In Sargsyan's Name**

E.S. bought a jet with a cashier's check from ARCA. E.S. told H.M. he and N.A. were doing a side business together with ARCA. H.M. said E.S. told Termendzhyan that Termendzhyan owned the jet.

**Termendzhyan Found Out E.S. Stole His Money**

E.S. and his girlfriend M.T., G.M. (the hairdresser), and H.M. were in a car together when E.S. got a call and heard Termendzhyan found out money was missing, and the jet was purchased and owned by E.S. E.S. called A.K. and told him to go to the office and to get those loan documents, saying that if Termendzhyan gets those loan documents, "I'm dead, my life is over." A.K. went to the office but could not find the loan documents.

The following Monday at around 6:00 or 7:00 p.m., H.M. A.K. and E.S. were in the office, and E.S. was screaming and kicking saying, "You guys fucked me. I'm dead. If he finds out about those loan documents, I'm dead. Those are fake loans. A.K. you're a fucking idiot." A few days later, E.S. apologized and told H.M. and A.K. the documents were in his desk. This led H.M. to believe Termendzhyan already got to the documents, made copies, and then put them back in E.S.'s desk.  E.S. then stopped coming to the office and hid in a hotel room. Termendzhyan and his "goons" came to the office trying to find him, declaring "war."

Earlier, E.S. told H.M. he had been plotting to steal $50,000,000 with more bridge loans from Termendzhyan and leave the country. When they were served with the civil lawsuit, E.S., H.M., A.K. and M.N. who was also a member of the Grand Havana Room, had a meeting. M.N. was going to represent all of them, and they talked about possible theories to explain how E.S. got Termendzhyan's money. They agreed on the story that the loans were done by Termendzhyan and E.S. received a commission or interest from the loan payments.

**FBI Parking Placard**

H.M. saw it and said it did not even look official, describing that it was not laminated and just looked like cardboard, and was bent and crooked. Broumand once gave A.K. a gag FBI badge that was obviously fake, so it made sense to H.M. that Broumand gave E.S. an unofficial placard.

**Gifts and Girls**

Broumand went on a few weekend "boy's trips" to Las Vegas, Nevada. Once, E.S. and others had a "boys trip, lying to the wives," where they rented a house in Las Vegas, a private chef, had two party buses full of girls, and H.M. was the deejay. H.M. said the girls were not brought just for Broumand, they were for everyone.

On another trip to Las Vegas, Broumand went to his hotel room by himself and slept while everyone else went and drank and danced. H.M. has only ever seen one woman show up to dinner with Broumand, and he did not see them hug, kiss, or hold hands. When we asked if Broumand was the only one being given gifts of financial significance, H.M. said "absolutely not, every dinner, trip, and even was paid for by E.S. H.M. said E.S. bought gifts for everyone." When H.M. had a financially hard time, E.S. let him drive one of his Mercedes, so H.M. did not have a car payment for about a year.  E.S. gave A.K. an expensive watch, but H.M. did not remember the name or model. E.S. gave M.N. his Mercedes S65. When they all went out, it was always paid for by E.S.

**Gifts to Broumand, Attorneys, and Government Officials**

E.S.'s dream was to become a cop, and he loved being around officers and government officials, including Balian, Cisneros, and others. When asked about the photographs with California politicians officials in the lobby, H.M. said those were in E.S.'s office.  H.M. called it the "wall of shame." After Termendzhyan left, or "we" kicked him out," E.S. came back to the office and took over Termendzhyan's side of the office and did another complete renovation. This was when Termendzhyan was in jail.

Sargsyan put up his pictures with many national and state politicians. This included H. C., A.S., K.D.L. and G.N.   In fact, E.S. told H.M. him that when G.N. was down in Los Angeles, the CHP shut down Rodeo Drive just so he could meet with E.S. at the Pillar office at 150 S. Rodeo Drive. E.M. said that was just a meeting and no donation was made then.

**K.D.L. swore E.S. into the California State Bar**.

E.S. donated $250,000 to H.C. that H.M. said was "stolen money." They went to a fundraiser for H.C. held in a home in Beverly Hills. Fox News caught wind of that donation citing

some "Armenian organized crime figure." H.M. said Pillar fielded calls for comment, which they did not give.

Prior to H.M. leaving Pillar Law Group, A.W. set up a meeting with B.O. at a fundraiser for G.N.  H.M. said it was his idea to have a fundraiser for G.N.  but A.W. was the one who called people. He believes E.S. and A.W. met in Sacramento and that is how they knew each other. H.M. said A.W. has a lot of connections in the political arena.

Around 2014, E.S. was at the Grand Havana Room and sent A.S. a glass of Macallan 25. A.S. thanked E.S. and complimented his ring.  E.S. then took it off and gave it to A.S. who initially declined it but then accepted. A day later, he got a call from the A.S.'s assistant inviting him to a poker tournament fundraiser for an after-school program. The buy-in was $10,000. E.S. had an identical diamond ring made to give to A.S. so he could get his original ring back. H.M. saw the ring and valued it at around $50,000.

E.S. lost the poker game to hang out with A.S., and then presented him with the new ring. A.S. gave a ring with the State of California seal on it. E.S. became really close with A.S. H.M. said that E.S. also told him that at another fundraiser, A.S. gifted E.S. a large metal watch made from the metal of a tank in Austria or Germany when A.S. was in the army.

**Montage Beverly Hills Hotel Meeting**

H.M. was invited to a meeting in the Macallan Room in the Montage Beverly Hills Hotel. When H.M. arrived, Termendzhyan, E.S. and Broumand were there, and he guessed they had already been there for approximately one hour.  A.K. was also invited and attended the meeting but traveled separately from H.M.  H.M. described the meeting as very "tense."
Broumand was reportedly there just to have drinks, but E.S. told H.M. days after the meeting he put Broumand and Termendzhyan together so Broumand, "could investigate the Armenian mafia [organized crime]."  H.M. later said E.S. may have told Broumand about Termendzhyan and "sparked his interest," and Broumand wanted to meet Termendzhyan and possibly open an investigation into Armenian organized crime.

**Insurance Fraud**

H.M. said E.S. committed insurance fraud in the water damage claim he made on his home. E.S. told H.M. something to the effect of "you leave some water source open, leave the house, come back and act shocked." H.M. believed E.S, got $1,000,000 in the insurance claim adding, "that's why he loves water damage." E.S. said he had a crew that could do the inspection, the claim work, and also repair damage from insurance fraud for other people's losses. One in his repair crew was an Armenian general contractor.

### The Rules of Evidence Permit Admission of H.S.'s Statement

2. **Rule 804(b)(6)**

Rule 804(b)(6) provides:

(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability. A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result.

Here, it is obvious that the government's trial subpoena to H.M. was the result of the prior day's interview and trial subpoena to L.N. Whether completely intentional or not, the government's sudden interest in H.M. certainly unnerved him causing him to invoke the 5th Amendment. The government held the "keys" to remedy this situation – it has refused to grant immunity and the 5th Amendment assertion renders H.M. unavailable. Consequently, the investigator should be able to present H.M.'s statement to the Jury.

3. **Rule 807**

The Rule Provides:

Rule 807. Residual Exception

(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b) Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

      Here, the H.M. statement satisfies all the sections seen in Rule 807. It has sufficient guarantees of trustworthiness and is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts (i.e. direct knowledge of more instances that directly show E.S.'s lack of credibility). The substance of the statement is outlined in detail above. As the government well knows, the declarant is H.M. – the person the FBI served a subpoena on August 12, 2022.

Respectfully submitted,

Dated: September 19, 2022

By: */s/ Steven F. Gruel*_____
STEVEN F. GRUEL, ESQ.
Attorney for BABAK BROUMAND

## **SUPPORTING DECLARATION OF STEVEN F. GRUEL**

I, Steven F. Gruel, under penalty of perjury, declare and state as follows:

1. I represent defendant Babak Broumand in the above captioned matter.

2. I fully incorporate by reference my Declaration dated September 11, 2022, filed in support of the defense Notice regarding the unavailability of H.M. as seen in Docket #200.

3. I was present on August 12, 2022, when the case investigator and I interviewed H.M. in his law offense.  This was the same day that the FBI served H.M. with a trial subpoena after, on August 11, 2022, when we spoke with L.N. about E.S.'s involvement with Tribune Law Group. It is my understanding that the FBI and the United States Attorney had not attempted to interview H.M. in the entire duration of the investigation in this case.

4. I composed the above attorney proffer of the testimony of H.M. from my review of the investigator's report / notes taken during the August 12, 2022 interview of H.M. in his law office.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration is executed this 19th day of September, in Los Angeles, California.

/*Steven F. Gruel*
STEVEN F. GRUEL