E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal. Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
     1500/1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077/7367/0304
     Facsimile: (213) 894-7631
     E-mail:    ruth.pinkel@usdoj.gov
                michael.morse@usdoj.gov
                juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-224(A)-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 AND MOTION FOR NEW TRIAL PURSUSANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE (Dkt. 244) |
| v. | |
| BABAK BROUMAND, | |
| Defendant. | |
| | HONORABLE R. GARY KLAUSNER |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel, Michael J. Morse, and Juan M. Rodriguez, hereby files its opposition to defendant's renewed motion for judgment of acquittal pursuant to

1

Rule 29 and motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Dkt. 244.)

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 26, 2022        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

      /s/
RUTH C. PINKEL
MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...................................1
I.    INTRODUCTION......................................................1
II.   LEGAL STANDARD....................................................3
      A.    Rule 29......................................................3
      B.    Rule 33......................................................4
III.  RELEVANT FACTUAL BACKGROUND........................................5
      A.    Evidence Shown at Trial......................................5
      B.    Jury Instructions Regarding "Official Duty" Given by
            the Court....................................................9
IV.   EVIDENCE AT TRIAL ESTABLISHED DEFENDANT CONSPIRED TO COMMIT
      BRIBERY OF A PUBLIC OFFICIAL IN VIOLATION OF OFFICIAL DUTY,
      COMMITTED BRIBERY OF A PUBLIC OFFICIAL IN VIOLATION OF
      OFFICIAL DUTY, AND ENGAGED IN A MONETARY TRANSACTION IN
      PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY...............9
V.    CONCLUSION.......................................................13

TABLE OF AUTHORITIES

CASES:                                                                    PAGE(s)

Harris v. Rivera,
   454 U.S. 339 (1981) ............................................... 3

Jackson v. Virginia,
   443 U.S. 307 (1979) ............................................... 3

United States v. Alarcon-Simi,
   300 F.3d 1172 (9th Cir. 2002) ..................................... 4

United States v. Alston,
   974 F.2d 1206 (9th Cir. 1992) ............................... 2, 4, 5

United States v. Avila-Macias,
   577 F.2d 1384 (9th Cir. 1978) .................................... 11

United States v. Corona-Verbera,
   509 F.3d 1105 (9th Cir. 2007) ..................................... 3

United States v. Hicks,
   217 F.3d 1038 (9th Cir. 2000) .................................. 9, 10

United States v. Hinton,
   222 F.3d 664 (9th Cir. 2000) ...................................... 3

United States v. Liew,
   856 F.3d 585 (9th Cir. 2017) ..................................... 10

United States v. Lombera-Valdovinas,
   429 F.3d 927 (9th Cir. 2005) ...................................... 3

United States v. Lopez,
   903 F.2d 969 (9th Cir. 1986.) ..................................... 5

United States v. Nevils,
   598 F.3d 1158 (9th Cir. 2010) .................................. 3, 4

United States v. Pimentel,
   654 F.2d 538 (9th Cir. 1981) ...................................... 4

United States v. Powell,
   469 U.S. 57 (1984) ................................................ 2

United States v. Rocha,
   598 F.3d 1144 (9th Cir. 2010) ..................................... 3

TABLE OF AUTHORITES (Continued)

CASES:                                                              PAGE(s)

United States v. Rodriguez,
  971 F.3d 1005 (9th Cir. 2020) ..................................... 10

United States v. Rojas,
  554 F.2d 938 (9th Cir. 1977) ....................................... 4

United States v. Terry,
  911 F.2d 272 (9th Cir. 1990) ....................................... 3

Statutes

18 U.S.C. § 201(b)(2)(C) ......................................... 1, 10

18 U.S.C. § 371 ..................................................... 1

18 U.S.C. § 1957(a) ................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

After an 11-day trial, a federal jury found defendant BABAK BROUMAND ("defendant") guilty of Conspiracy to Commit Bribery of a Public Official, in violation of 18 U.S.C. § 371; two counts of Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(2)(C); and one count of Monetary Transaction in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957(a).[1]  As proven at trial, defendant conspired with another to bribe a public official, himself; committed bribery of a public official; and engaged in a monetary transaction in criminally derived property of a value greater than $10,000 knowing that the funds involved represented the proceeds of some form of unlawful activity.

Defendant now renews his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29, which he originally filed on October 3, 2022 (Dkt. 222), and moves this Court to grant a new trial, pursuant to Rule 33.  (Dkt. 244.)  In it, defendant recycles arguments previously made to, and rejected by, this Court at trial and in pretrial motions.  Although defendant's motions are fashioned as a renewal of his Rule 29 motion, and a motion for new trial under Rule 33, instead, they substantially focus on a laundry list of complaints about this Court's pretrial rulings not properly brought under Rule 29 or 33.  As with his previous Rule 29 motion, defendant fails to explain why a rational jury could not

---

[1] Defendant was acquitted of Counts Four and Six charging defendant with Bribery of a Public Official and Monetary Transactions in Property Derived from Specified Unlawful Activity, respectively, involving a $30,000 check payable to his mother.

have found guilt when the evidence is viewed in the light most favorable to the prosecution.

His motion for new trial is similarly flawed, as it fails to demonstrate that "the evidence [at trial] preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992). The legal standard under Rule 33 has nothing to do with pretrial motions the defendant wishes had gone his way.[2] Rather, this Court's Rule 33 analysis should focus on the evidence that was presented at trial.

Defendant's arguments to the contrary (Motion at 1), the jury's mixed verdict in this case is most assuredly not a basis for a new trial. United States v. Powell, 469 U.S. 57 (1984). It is well settled that a defendant cannot attack a jury's conviction on the basis that the jury acquitted on another count. A mixed verdict, even if inconsistent or irrational, is valid and does not provide a basis to attack a jury's conviction on other counts. Id. at 68-69. Here, the jury could have easily felt sympathy for, believed, or was confused by testimony from defendant's widowed mother regarding the $30,000 check E.S. wrote to defendant's mother which formed the basis of bribery and money laundering counts in Counts Four and Six.[3] The Supreme Court has long recognized that a jury is entitled to find a defendant not guilty for improper reasons and has repeatedly

---

[2] The government maintains, as it has in previous pretrial filings and during trial, that this Court's rulings were correct then and are correct now, notwithstanding defendant's gripes.

[3] Similarly, the jury's verdict on the forfeiture of the defendant's interest in the Tahoe house was most likely the result of lenity, and sympathy for defendant's wife who attended every day of trial and sat in the front row.

recognized "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." (Powell at 63, quoting Harris v. Rivera, 454 U.S. 339, 346 (1981)).

In sum, there is no basis to grant defendant a new trial, nor is there a basis for a judgment of acquittal. Defendant's motions are without merit. They should be denied.

## II. LEGAL STANDARD

### A. Rule 29

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010) (explaining that the test to be applied for a Rule 29 motion is the same as for a sufficiency challenge). "The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." United States v. Terry, 911 F.2d 272, 278 (9th Cir. 1990).

Under Rule 29, a court must "review the evidence presented against defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See United States v. Lombera-Valdovinas, 429 F.3d 927, 920 (9th Cir. 2005); United States v. Hinton, 222 F.3d 664, 669 (9th Cir. 2000). Any "[c]onflicting evidence is to be resolved in favor of the jury verdict." See United States v. Corona-Verbera, 509 F.3d 1105, 1117 (9th Cir. 2007) (cleaned up). Accordingly, the Court "may not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (quoting Jackson v. Virginia,

443 U.S. 307, 319 (1979)). The question is only whether "all rational fact finders" would have voted to acquit. Id. at 1165. As such, the Court considers whether the defendant has "pointed to evidence so supportive of innocence that no rational trier of fact could find guilt beyond a reasonable doubt." Id. at 1169. A jury's determination should be upset only on those "rare occasions in which a properly instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Id. at 1164 (cleaned up).

In ruling on a Rule 29 motion, the Court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977). In other words, "it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion." United States v. Alarcon-Simi, 300 F.3d 1172, 1176 (9th Cir. 2002).

**B.   Rule 33**

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "A motion for a new trial is directed to the discretion of the district judge." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981). In exercising its discretion, a court is entitled to weigh the evidence and evaluate the credibility of witnesses. United States v. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992). In general, a court should grant a new trial under Rule 33 "only in exceptional cases in which the evidence preponderates

heavily against the verdict that a serious miscarriage of justice may have occurred." Id. The authority to grant a new trial "should be exercised sparingly and with caution." United States v. Lopez, 903 F.2d 969, 977 (9th Cir. 1986.) Reviewing courts determine only whether a district court "clearly and manifestly abused its discretion" in deciding whether to grant a new trial. Alston, 974 F.2d at 1211.

**III. RELEVANT FACTUAL BACKGROUND**

    **A. Evidence Shown at Trial**

At trial, E.S. testified about the corrupt nature of his relationship with defendant, including that he paid defendant approximately $10,000.00 a month on average, and gave him other items of value, in exchange for protection. E.S. testified that defendant provided protection to E.S. by, *inter alia*, accessing sensitive law enforcement databases at E.S.'s request, and attempting, or purporting to, enroll E.S. as an FBI confidential human source. Additionally, E.S. provided specific testimony regarding items of value he gave the defendant in exchange for the defendant agreeing to engage in acts that violated his official duties as a federal law enforcement officer.

For example, E.S. testified that in April 2015, E.S. was illegally providing a Qatar royal family member with Demerol, a federally controlled narcotic substance, in exchange for monetary compensation in the hundreds of thousands. E.S. asked the defendant to query the individual in a law enforcement database to find out whether the individual had ties to terrorism. The defendant told E.S. it was "okay" to do business with this individual. As a "bonus" to the regular monthly bribe payments E.S. had been providing to the

5

defendant, on April 29, 2015, E.S. purchased a motorcycle for the defendant, paying over $36,000.00. The government introduced Trial Exhibit 33, the motorcycle bill of sale, corroborating that E.S. purchased the motorcycle on April 29, 2015. E.S. testified that at some point he needed a new source of supply for Demerol, and asked the defendant if he could help. The defendant offered to provide Demerol in "non-liquid form" to E.S. in furtherance of the illicit drug transactions E.S. had been conducting with the Sheikh. In corroboration of E.S.' testimony, the government introduced Trial Exhibit 261, a June 2, 2015, text message between the defendant and E.S. In it, the defendant says his "guy has the medicine in non-liquid form, should I get it?" Both E.S. and the defendant testified that the "medicine" referred to by defendant was, in fact, Demerol.[4]

    E.S. also testified that in April 2016, a criminal associate of E.S., H.N., was arrested. E.S. became concerned a criminal investigation of H.N. may implicate E.S., since E.S. and H.N. had engaged in credit card fraud for over a decade at that point. E.S. testified that he contacted defendant, then-corrupt Glendale Police Department narcotics detective John Balian; and then-corrupt Department of Homeland Security ("DHS") federal agent Felix Cisneros. The government also introduced Exhibit 210, a summary chart of text messages between E.S. and the three men listed above. In it, starting with defendant, E.S. provides all three men with H.N.'s personally identifying information. E.S. testified he did this so

---

[4] The defendant testified that, although his text message referred to and offered E.S. Demerol, defendant did not in fact have any plans to provide E.S. with Demerol. Nonetheless, the text message provides corroboration that defendant was on notice of some of the services E.S. was providing for the Sheikh, and that defendant offered his assistance in this illegal drug transaction.

that the three men could run H.N. in a law enforcement database to gather information and potentially interfere in any investigation that could implicate E.S. E.S. testified that he initially thought the FBI was handling the investigation. E.S. testified that he later told the defendant that, because DHS was handling the H.N. investigation, he would have Cisneros intervene instead of the defendant.

Evidence at trial also showed the defendant, on several occasions, violated his official duties in exchange for cash, checks, and other things of value, by, *inter alia*, querying confidential law enforcement databases without a legitimate law enforcement purpose (Overt Acts ("OA") 1, 4, 7, 9, 20, 22, 23, 25, 27, 30, 47-47, 51-52, 54-55); disseminating confidential information obtained from law enforcement databases to individuals involved in criminal activity (OAs 1, 24, 26), which also helped criminals avoid detection and law enforcement monitoring; drafting and submitting FBI reports that contained false or misleading information (OAs 6, 48, 56); lying to other FBI agents in the course of defendant's duties as an FBI agent about matters concerning ongoing FBI criminal investigations (Kusin, Adkins, Kelly); falsely representing to an off-duty Beverly Hills Police Department Officer that the FBI needed a private investigator to assist in an FBI investigation (OA 31); making contact with individuals defendant knew to be subjects of ongoing criminal investigations without notifying the FBI (Levon Termendzhyan and Sam Solakyan); and engaging in criminal activity with E.S., including accepting and having sex with paid escorts, furnished by E.S.

Additionally, through government witness FBI Special Agent Michael Torbic, the government presented the jury with extensive

7

timeline evidence detailing defendant and his co-conspirators' communications, defendant's many corrupt acts, including database searches on behalf of E.S., and the payments clearly made in exchange for those acts (Trial Exs. 212, 213, 214 (2015, 2016, and 2017 Timeline Summary Charts); see also Trial Exs. 201-203, 205 (Cash and Check Deposit Summary Charts prepared by FBI Forensic Accountant Joan O'Dowd)). The government also introduced a $30,000.00 check executed at the direction of E.S. for the benefit of the defendant, which the defendant then funneled through his "Lovebugs" business checking account in an effort to disguise the true nature of the criminal proceeds. (See Trial Ex. 156.) (Similar evidence was introduced regarding the $30,000 check payable to Zahra Ansari.)

The government also presented evidence regarding the official duties of FBI agents through the testimony of various FBI special agents, including that of Special Agent Steve Kusin; Assistant Special Agent in Charge Akil Davis; Special Agent Brian Adkins; and Special Agent Jeff Horner. Several FBI agents testified that FBI Special Agents have, *inter alia*: (1) the duty to only use law enforcement databases for legitimate law enforcement activity; (2) the duty to refrain from sharing information from law enforcement databases with others to help criminals avoid detection and law enforcement monitoring; (3) the duty to faithfully investigate potential criminal activity; and (4) the duty of candor. That is, to communicate with their colleagues verbally and through written reports truthfully on matters pertaining to criminal investigations and other FBI related matters.

### B. Jury Instructions Regarding "Official Duty" Given by the Court

At trial, the Court instructed the jury regarding "official duty" as follows:

""Official duty" for a federal agent means an official or formal responsibility or obligation imposed on the federal agent and falling within the federal agent's official job duties or function." (Dkt. 229, at 29.) This instruction contained language that both parties submitted. While it did not contain all language submitted by either party, the Court has considerable latitude in fashioning jury instructions. United States v. Hicks, 217 F.3d 1038, 1045 (9th Cir. 2000).

### IV. EVIDENCE AT TRIAL ESTABLISHED DEFENDANT CONSPIRED TO COMMIT BRIBERY OF A PUBLIC OFFICIAL IN VIOLATION OF OFFICIAL DUTY, COMMITTED BRIBERY OF A PUBLIC OFFICIAL IN VIOLATION OF OFFICIAL DUTY, AND ENGAGED IN A MONETARY TRANSACTION IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY

In his motion, defendant argues the government failed to prove the elements of conspiracy, bribery of a public official and money laundering. (Mot. at 6.) He also incorrectly claims the government failed to identity the duty or duties defendant violated and that the jury instructions "failed to require the jury to identify the specific alleged official duty." (Id.)[5] A district court's formulation of jury instructions is reviewed for an abuse of

---

[5] Defendant also makes the incomprehensible argument that the jury should have been required to decide "that the [bribery] offense was 'completed' upon the 'moment of [the corrupt] agreement.'" (Mot at 6 (bracketed language added by government).) However, no law requires such a finding and defendant's proposed instructions contained no such proposal. Equally misleading is defendant's claim that his proposed jury instructions tracked the FSI. Defendant's instructions incorrectly stated the bribery law and confusingly combined allegations from both the conspiracy count and substantive bribery counts into the substantive bribery count instructions (Dkt.
*(footnote cont'd on next page)*

discretion. See United States v. Rodriguez, 971 F.3d 1005, 1017 (9th Cir. 2020); United States v. Hicks, 217 F.3d 1038, 1045 (9th Cir. 2000) ("The trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented." (internal quotation marks and citation omitted)). "The relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." United States v. Liew, 856 F.3d 585, 596 (9th Cir. 2017). The instruction given to the jury correctly defined an "official duty" for a federal agent, as required for conviction under 18 U.S.C. § 201(b)(2)(C). In short, the jury instructions were neither misleading nor inadequate.

Moreover, defendant's proposed "official duty" instruction (Dkt. 189 at 19) contained incorrect statements of bribery law and was confusing. For example, the defendant's proposed "official duty" instruction included repeated references to "quid pro quo," which is not required under the violation of official duty bribery statute charged here. (Id.) Defendant's proposed instruction conflated language relevant to the conspiracy charge with language relevant only to the substantive bribery counts, is rife with typographical errors, and would have confused the jury.

Defendant claims the government "improperly enlarged" the conspiracy alleged in the First Superseding Indictment ("FSI") by presenting statements made by E.S., John Balian, and Felix Cisneros pursuant to Federal Rule of Evidence 801(d)(2)(E). (Mot. at 2.) Not so. As an initial matter, defendant's focus on the charged crimes in the FSI is misguided. Under Federal Rule of Evidence 801(d)(2)(E),

---

189 at 13-18). Defendant made similarly confusing proposals for the money laundering instructions. (Id. at 21-27.)

it is not necessary that a conspiracy be charged in the indictment <u>at all</u>, let alone that the government name each co-conspirator. <u>United States v. Avila-Macias</u>, 577 F.2d 1384, 1388 (9th Cir. 1978). Further, defendant was aware that the government intended to introduce statements of E.S., Felix Cisneros, and John Balian, pursuant to Rule 801(d)(2)(E), since this very issue was litigated after the defendant filed a motion to exclude that evidence. (Dkt. 173 at 6.) The Court properly denied that motion. (Dkt. 196.) At trial, the government laid sufficient foundation that E.S., Felix Cisneros, John Balian and the defendant took actions and made statements in furtherance of their common goal to "protect" E.S. from law enforcement. Thus, defendant's argument conflates Rule 801(d)(2)(E) with what he calls a "variance" and "enlargement" of the conspiracy.[6] Rather, defendant filed a motion to exclude evidence, which was denied. He cannot now express his disagreement with the Court's ruling under the guise of Rule 29 or 33.

Defendant also again references testimony regarding H.N. and defendant's offer to procure Demerol for E.S. Defendant is similarly mistaken. There was no constructive amendment, no variance, and no notice issues. As stated above, the evidence introduced at trial, which the Court properly received, was either directly discussed in the FSI, was corroboration of E.S.'s testimony-a crucial issue since his credibility was attacked by defendant in the Opening Statement and throughout the trial, and/or was corroboration of the charges and overt acts detailed in the FSI.

---

[6] In any event, the FSI states "defendant Broumand, and others known and unknown to the Grand Jury, conspired with [E.S.] to commit bribery of a public official." (Dkt. 49 at 3.)

11

For example, allegations regarding H.N. were specifically alleged in Overt Act 40 of the FSI.[7] The conduct which followed not only corroborated E.S., but it provided further corroboration and context for defendant and E.S.'s behavior over the next several weeks. H.N.'s arrest caused E.S. to persist in requesting a "marriage certificate" with defendant (i.e. to be signed up as defendant's FBI source) (see Overt Act 45), because E.S. believed this could protect him from criminal liability. Moreover, defendant cannot seriously claim the government violated notice requirements since he filed discovery motions demanding discovery regarding H.N., which clearly shows he was aware of this issue. (See Dkt. 88-1, at 16.)

Similarly, the Demerol defendant admitted to offering E.S. was corroborative of E.S.'s testimony of the many services he was offering the Qatar Sheikh, defendant's knowledge that E.S. was providing those services, of overt acts relating to E.S.'s purchase of the Ducati for defendant (see Count Two), and defendant's concealment from the FBI of E.S.'s connection to the Ducati. (See Overt Act 44).[8]

---

[7] Overt Act 40 provides: On April 14, 2016, Individual A sent a text message to defendant BROUMAND with the name and birthdate of Individual A's associate, H.N., on whose home law enforcement served a search warrant that day, and told defendant BROUMAND "your moral support is priceless."

[8] Defendant was on notice of the Demerol purchases from allegations in the Criminal Complaint (Dkt. 1, ¶ 24) and discovery in this case. Moreover, on August 23, 2022, following the CIPA § 6 hearing, defendant and his counsel were informed in-person of the recent discovery of defendant's Demerol text messages which are contained in Trial Exhibit 261. Further, defendant incorrectly argues that the Demerol related text message exchange between defendant and E.S. occurred in 2016. Not so. That text message exchange occurred on June 2, 2015, just over a month from the date E.S. purchased the Ducati motorcycle for defendant. (See Trial Exhibits 33 and 261.)

12

As discussed above, the government introduced ample evidence that defendant conspired to commit bribery of a public official, committed bribery of a public official, and engaged in a monetary transaction in property derived from specified unlawful activity.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motions.