E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
MICHAEL J. MORSE (Cal. Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
TARA B. VAVERE (Cal. Bar. No. 279470)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5901
    Facsimile: (213) 894-0142
    E-mail:   Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BABAK BROUMAND, <br><br> Defendant. | No. 2:20-cr-00224-RGK-1 <br><br> APPLICATION FOR ENTRY OF MONEY JUDGMENT OF FORFEITURE AGAINST DEFENDANT BABAK BROUMAND; DECLARATION OF TARA B. VAVERE; EXHIBITS |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, and Assistant United States Attorney Tara B. Vavere respectfully submits this Application for Entry of a Money Judgment against defendant Babak Broumand in the amount of $137,859.64.

///

This Application is based upon the attached memorandum of points and authorities, the accompanying Declaration of Tara B. Vavere and exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 16, 2022        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys
General Crimes Section

       /s/
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On October 4, 2022, after an eleven-day trial, the jury returned its verdict finding defendant Babak Broumand ("defendant") guilty of Conspiracy to Commit Bribery of a Public Official, in violation of 18 U.S.C. § 371; two counts of Bribery of a Public Official, in violation of 18 U.S.C.§ 201(b)(2)(C); and one count of Monetary Transaction in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §1957(a).[1]  Dkt. No. 228.  Defendant's sentencing is scheduled for January 30, 2023.  Id.

Pursuant to the forfeiture allegations in the First Superseding Indictment ("FSI"), the government respectfully submits that as part of the financial component of defendant's sentence in this case, the Court should enter a money judgment of forfeiture in the amount of $137,859.64.  This amount reflects financial benefits received by defendant in return for the criminal conduct for which he was convicted, as established through the evidence admitted at trial. This money judgment is necessary and appropriate in order to forfeit illegal payments defendant received based on his participation in the offenses of conviction in this case.

///

---

[1] Defendant was acquitted of Counts Four and Six, charging defendant with Bribery of a Public Official and Monetary Transactions in Property Derived from Specified Unlawful Activity, respectively. These chages specifically involved a $30,000 cashier's check drawn on an account held in the name of ARCA Capital, Inc., and payable to defendant's mother.  Based on defendant's acquittal of Counts Four and Six, this $30,000 is excluded from this application and is not included in the Proposed Money Judgment of Forfeiture.

1

## II. STATEMENT OF FACTS

### A. Relevant Allegations in the FSI

The FSI charged defendant in Count One with conspiring with an individual, namely E.S., to commit bribery of a public official, himself, from about January 2015 to at least December 18, 2018, in violation of 18 U.S.C. 371.  Specifically, defendant accepted cash payments, and among other things, luxury hotel stays from E.S. in exchange for providing "protection" to E.S. in the form of information that defendant obtained from sensitive law enforcement databases, case files and agents.  Dkt. No 49, 1-12.  In Counts Two and Three, the FSI charged defendant with bribery of a public official in violation of 18 U.S.C. § 201(b)(2)(C).  Id. at 13-14.  Counts Two and Three were based on defendant's acceptance of a Ducati motorcycle and accessories valued at approximately $36,100 from E.S. on or about April 29, 2015, and defendant's acceptance of a $30,000 cashier's check, purchased by Andor'e, Inc., an entity controlled by E.S., on or about September 30, 2015.  Id.  In Count Five, the FSI charged defendant with transactional money laundering in violation of 18 U.S.C. § 1957 (a), specifically, the deposit of the $30,000 Andor'e, Inc. cashier's check into a bank account held in the name of LoveBugs, LLC ("LoveBugs"), which was a was a lice-removal hair salon business owned by defendant and his wife.

The FSI also contained two forfeiture allegations pursuant to 18 U.S.C. § 981(a)(1)(C), 982 and 28 U.S.C. § 2461(c).  In relevant part, the government provided notice that in the event of defendant's conviction under Counts One, Two or Three, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and under Count Five pursuant to 18 U.S.C. § 982 (a)(1), the government would seek forfeiture as

part of any sentence.  The government gave notice of its intent to forfeit any and all property, real or personal, constituting, or derived from, any proceeds traceable to the underlying violation, as well as any and all property, real or personal, involved in the underlying violation.  Id. at 17-19.  The government also gave notice that it may seek a judgment for a sum of money equal to the total amount of money involved in each offense of which defendant was convicted.  Id.

### B. Evidence Presented at Trial Established that Defendant Received at least $137,859.64 in Proceeds from the Offenses of Conviction

At trial, the government presented evidence through fourteen witnesses and proved beyond a reasonable doubt that defendant conspired with E.S. to bribe a public official, committed bribery of a public official, and engaged in a monetary transaction in criminally derived property of a value greater than $10,000 knowing that the funds involved represented the proceeds of some form of unlawful activity.  The government introduced evidence of bribe payments of at least $137,859.64 paid directly or indirectly to the defendant in either cash, check or through valuable gifts and/or services which constituted proceeds of the criminal conduct for which defendant was convicted.

At trial, E.S. testified about the corrupt nature of his relationship with the defendant, including that E.S. paid defendant approximately $10,000.00 a month in cash, and gave defendant other items of value, in exchange for protection.  E.S. testified that defendant provided protection to E.S. by accessing sensitive law enforcement databases at E.S.'s request, and attempting, or

3

purporting to, enroll E.S. as an FBI confidential human source. Joan O'Dowd, a forensic accountant for the FBI, testified about her analysis of bank records in this case and prepared a summary exhibit that was admitted at trial detailing $76,500 in cash deposits made to the defendant's LoveBugs businesss bank accounts between February 2015 and June 2016.[2] Attached as Exhibit A to the declaration of Tara B. Vavere (the "Vavere Declaration") is a true and correct copy of Trial Exhibit 201-3, a Cash Deposit Summary Chart.

E.S. testified that in April 2015, E.S. was illegally providing a Qatar royal family member with Demerol, a federally controlled narcotic substance, in exchange for monetary compensation in the hundreds of thousands. E.S. asked the defendant to query the individual in a law enforcement database to find out whether the individual had ties to terrorism. The defendant told E.S. it was "okay" to do business with this individual. As a "bonus" to the regular monthly bribe payments E.S. had been providing to the defendant, on April 29, 2015, E.S. purchased a 2015 Ducati Panigale Motorcycle and accessories valued at approximately $36,100 for the defendant. Attached to the Vavere Declaration as Exhibit B is a true and correct copy of Trial Exhibit 33, the motorcycle bill of sale.

In September of 2015, E.S. gave defendant a $30,000 cashier's check executed at the direction of E.S. for the benefit of the defendant, which the defendant then funneled through his LoveBugs business checking account in an effort to disguise the true nature of

---

[2] The government's witness determined that part of the $14,000.00 deposited on April 27, 2015, could have come from a withdrawal made from the same account a few days before. Therefore, the proposed Money Judgment of Forfeiture excludes the $7,000 traced to this cash withdrawal.

the criminal proceeds.  Attached to the Vavere Declaration as Exhibit C is a true and correct copy of Trial Exhibit 156, the Andor'e Cashier's Check.

E.S. Testified that in January and September 2015, defendant accepted luxury hotel room stays at the Montage Beverly Hills valued at $2,259.64.  Attached to the Vavere Declaration as Exhibit D are true and correct copies of Trial Exhibits 190 and 191, the Montage Hotel Invoices.

Together, the cash payments, the cashier's check, the motorcycle, and the luxury hotel rooms amount to $137,859.64.  This amount reflects financial benefits received by defendant in return for the criminal conduct for which defendant was convicted.

    **C.   The Jury's Verdict Convicting Defendant on Four of Six Counts**

On October 4, 2022, the jury returned its verdict in this case. Dkt. No. 228.  The jury found defendant guilty of Count One, conspiracy to commit bribery of a public official; Counts Two, and Three, Bribery of a Public Official; and Count Five, Monetary Transaction in Property Derived from Specified Unlawful Activity. Dkt. No. 228.

**III. LEGAL STANDARD**

When the government has given notice in the indictment of its intent to seek forfeiture, the Court may enter a judgment of forfeiture as part of defendant's sentence.  See Fed. R. Crim. P. 32.2(a).  "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."  Id. at 32.2(b)(1)(A).

///

5

The Ninth Circuit has held that Rule 32.2 "does not permit the district court to do anything other than 'determine the amount of money that the defendant will be ordered to pay,' in an amount determined by statute." United States v. Phillips, 704 F.3d 754, 771 (9th Cir. 2012). "Those proceeds need not be in defendant's possession at the time of sentencing; in fact, imposition of forfeiture is still necessary even if defendant has no assets to forfeit." Id.; see also United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (forcing a defendant to disgorge his ill-gotten gains, "even those already spent," ensures that defendants do not benefit from their crimes); United States v. Misla-Aldarondo, 478 F.3d 52, 73-74 (1st Cir. 2007) ("If the government has proven that there was at one point an amount of cash that was directly traceable to the offenses, and that thus would be forfeitable…, that is sufficient for the court to issue a money judgment, for which the defendant will be fully liable whether or not he still has the original corpus of tainted funds – indeed, whether or not he has any funds at all.").

A forfeiture order must be entered at or before sentencing. Fed. R. Crim P. 32.2(b)(2). The order becomes final as to the defendant at sentencing and must be included in the oral pronouncement of sentence and noted in the judgment and commitment order. Id., at 32.2(b)(4).

///

**IV. ARGUMENT**

    **A.    The Entry of a Money Judgment of Forfeiture is Appropriate in this Case Pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, and 28 U.S.C. § 2461**

The proposed money judgment of forfeiture accompanying this application is warranted based on defendant's convictions of the offenses listed in Counts One, Two, Three and Five of the FSI.

First, defendant's convictions for violations of 18 U.S.C. § 371 and 201 (Counts One through Three), give rise to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c),[3] which provides for forfeiture of "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of… any offense constituting 'specified unlawful activity' [as defined in 18 U.S.C. § 956(c)(7)]." See 18 U.S.C. § 981(a)(1)(C).[4]

Second, defendant's conviction for violation of 18 U.S.C. § 1957(a) (Count Five) gives rise to forfeiture pursuant to 18 U.S.C. § 982 (a)(1), which states that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the

///

---

[3] While 18 U.S.C. § 981 references civil forfeiture, pursuant to 28 U.S.C. § 2461(c), where a defendant is charged in a criminal case with a violation for which the civil forfeiture of property is authorized, "the Government may include notice of the forfeiture in the indictment [and] [i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure."

[4] 18 U.S.C. § 201 is incorporated into 18 U.S.C. § 1956(c)(7) through subsection 18 U.S.C. § 1956(c)(7)(A), which includes all offenses identified in 18 U.S.C. § 1961(1).

7

United States any property, real or personal, involved in such offense, or any property traceable to such property."

The entry of a money judgment of forfeiture is therefore appropriate here. Defendant was the direct or indirect recipient of illegal proceeds of the offenses for which he was convicted, namely at least $137,859.64 in funds, gifts or services received pursuant to his corrupt agreement with E.S. See United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (forcing a defendant to disgorge his ill-gotten gains, "even those already spent," ensures that defendants do not benefit from their crimes).

**B.     The Court Should Enter a Money Judgment of Forfeiture in the Amount of $137,859.64**

In determining the amount of the money judgment, the Court may rely upon evidence admitted at trial and already in the record. See Fed. R. Crim. P. 32.2(b)(1)(B). The government has the burden of establishing the amount of the money judgment by a preponderance of the evidence. See United States v. Christensen, 828 F.3d 763, 822 (9th Cir. 2015) (district court or jury need only find facts warranting forfeiture by a preponderance of the evidence); see also Fed. R. Crim. P. 32.2, Committee Notes (2000) (explaining that "the government must establish the forfeitability of the property by a preponderance of the evidence").

The evidence admitted at trial more than meets the preponderance standard and establishes that defendant directly and indirectly received bribe payments in the amount of at least $137,859.64, based on his corrupt agreement with E.S., a sum which is directly traceable to the Counts of his conviction. As described above and detailed further in the government's Opposition to defendant's Motion for

Acquittal, the evidence admitted at trial showed that defendant accepted corrupt bribes from E.S. in the form of cash payments, a cashier's check, a motorcycle, and among other things, luxury hotel room stays, which totaled at least $137,859.64.  See generally Dkt. No. 247.

As such, the proceeds of defendant's convictions on Counts One, Two, Three and Five are no less than $137,859.64.  This is the amount that the defendant should be ordered to forfeit as part of his sentence in this case.

### C. An Evidentiary Hearing is Unnecessary

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(B), a court's determination on forfeiture "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable" and "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty."

A defendant's right to a hearing, however, is not license to relitigate evidence already admitted into the record.  In United States v. Harris, the Ninth Circuit held that a defendant may not use a hearing on potential money judgment of forfeiture as an opportunity for a second chance at challenging evidence already admitted at trial.  See 842 F. App'x 28, 32 (9th Cir. 2020) ("The district court held that expert testimony was unnecessary because the government's forfeiture calculations rested on the trial evidence, not extrapolation or sampling, and that Harris sought to challenge the trial evidence improperly. . . . Thus, the district court did not abuse its discretion by refusing to hold an evidentiary hearing on

forfeiture."). Here, the government relies on evidence already entered into the record, and thus, like in Harris, an evidentiary hearing is neither necessary nor appropriate.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's Application and requests that the Court enter the Proposed Money Judgment lodged contemporaneously with the application.

Dated: December 16, 2022      Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys
General Crimes Section

          /s/
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA